Robert G. Wing (4445) *rwing@parrbrown.com*
Thomas M. Melton (4999) *tmelton@parrbrown.com*
Jonathan O. Hafen (6096) *jhafen@parrbrown.com*
Kade Olsen (17775) *kolsen@parrbrown.com*
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Vanessa R. Walsh (16180) *vwalsh@agutah.gov*
Assistant Utah Attorneys General
SEAN D. REYES (7969)
**UTAH ATTORNEY GENERAL**
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100

*Attorneys for Defendants Utah School and*
*Institutional Trust Lands Administration and*
*Michelle McConkie*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>    Plaintiff,<br><br>  vs.<br><br>DAVID URE, MICHELLE MCCONKIE, MICHAEL STYLER, SPENCER COX, UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION,<br><br>    Defendants. | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:23-cv-295<br><br>Honorable David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

SPECIFIC RELIEF SOUGHT AND GROUNDS ........................................................ 1

RELEVANT BACKGROUND ....................................................................................... 2

ARGUMENT ................................................................................................................. 3

1. The Tribe fails to state a claim under federal civil rights laws. ................................... 3

   1.1    The Tribe is not a "person" or "citizen" entitled to sue under the Civil Rights Acts. ....... 4

   1.2    SITLA is not a "person" capable of being sued under §§ 1981–85. ............................... 5

   1.3    The Tribe fails to state a claim under Title VI. ............................................................ 7

   1.4    "Specific Performance" is not a remedy available to the Tribe. ................................... 9

2. The Tribe's state law claims fail because the Tribe did not file the requisite
notice of claim ................................................................................................................. 10

3. The Complaint's state law counts should be dismissed because the Tribe cannot
prevail on them. .............................................................................................................. 11

   3.1.   The Tribe cannot sue to remedy a breach of trust. .................................................... 11

   3.2    The Complaint fails to allege a conspiracy. ............................................................... 12

   3.3    The Complaint fails to plead fraud with particularity as required  by Rule 9(b). ......... 15

   3.4    The Complaint's Fifth Count, for Breach of Contract/Estoppel/Equitable Conversion,
should be dismissed because there was no contract. ...................................................... 18

       3.4.1   Promissory estoppel and/or equitable estoppel do not apply against the
government. ................................................................................................ 19

       3.4.2   Equitable conversion does not apply ....................................................... 20

4. The Tribe's claims are barred by the statute of limitations. ...................................... 21

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Denver Pub. Sch. Bd.*,
  928 F.2d 978 (10th Cir. 1991) ................................................................. 6

*Auman v. Kansas*
  No. 17-cv-2069, 2018 WL 587232, (D. Kan. Jan. 29, 2018) ..................... 22

*Baker v. Bd. of Regents of Kan.*,
  991 F.2d 628 (10th Cir. 1993) ................................................................ 7, 8

*Bear v. Lifemap Assurance Company*,
  2021 UT App 129, 503 P.3d 507 ............................................................. 18

*Broadbent v. Board of Educ.*,
  910 P.2d 1274 (Utah Ct. App. 1996).) ..................................................... 12

*Buckner v. Kennard*,
  2004 UT 78, 99 P.3d 842 ......................................................................... 12

*Celebrity Club, Inc. v. Utah Liquor Control Comm'n*,
  602 P.2d 689 (Utah 1979) ........................................................................ 19

*Chemehuevi Indian Tribe v. McMahon*,
  934 F.3d 1076 (9th Cir. 2019) .................................................................. 5

*Christensen v. Utah State Tax Comm'n*,
  2020 UT 45, 469 P.3d 962 ................................................................... 14, 20

*Conn v. Gabbert*,
  526 U.S. 286, 290 (1999) .......................................................................... 6

*Conner v. Dep't of Com.*,
  2019 UT App 91, 443 P.3d 1250 .............................................................. 12

*Cook v. Zion's First Nat'l Bank*,
  645 F.Supp. 423 (D. Utah 1986) .............................................................. 16

*CVB, Inc. v. Corsicana Mattress Co.*
  604 F. Supp. 3d 1264 (D. Utah 2022) ...................................................... 16

*David v. Midway City*,
  No. 20-cv-66, 2021 WL 6927739 (D. Utah Dec. 14, 2021) ...................... 10

*Davis v. Utah*,
  No. 20-4042, 2021 WL 3930277 (10th Cir. Sept. 2, 2021) ....................... 19

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ........................................................................................ 9

*Ellis v. Univ. of Kansas Med. Ctr.*,
    163 F.3d 1186 (10th Cir. 1998) ...................................................................... 6

*Fogle v. Pierson*,
    435 F.3d 1252 (10th Cir. 2006) .................................................................... 22

*Foster v. Michigan*,
    573 F. App'x 377 (6th Cir. 2014) ................................................................. 9

*Fratus v. Deland*,
    49 F.3d 673 (10th Cir. 1995) ....................................................................... 22

*GeometWatch Corp. v. Hall*,
    No. 14-cv-60, 2017 WL 1136946 (D. Utah Mar. 27, 2017) .................................... 14

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
    130 F.3d 1381 (10th Cir. 1997) .................................................................... 2

*Harris v. Champion*,
    51 F.3d 901 (10th Cir. 1995) ......................................................................... 6

*Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*,
    2017 UT 75, 416 P.3d 401 ........................................................................... 14

*Humood v. City of Aurora, Colorado*,
    No. 12-cv-02185, 2014 WL 4345410 (D. Colo. Aug. 28, 2014) ............................ 8

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ..................................................................................... 9

*In re Ayers*,
    123 U.S. 443 (1887) ................................................................................... 10

*Inyo County v. Paiute-Shoshone Indians<*
    538 U.S. 701 (2003) ..................................................................................... 4

*Jamul Action Comm. v. Simermeyer*,
    974 F.3d 984 (9th Cir. 2020) ....................................................................... 10

*Jones v. City of Cottonwood Heights*,
    No. 22-cv-302, 2002 WL 10052834 (D. Utah Oct. 17, 2022). ............................. 10

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ............................................................... 16, 17

*Manzanares v. Reyes*,
    No. 14-cv-40, 2015 WL 5821413 (D. Utah Oct. 5, 2015 .................................... 6

*Marks v. Santa Rosa City Sch.*,
748 F. App'x 159 (9th Cir. 2019) ................................................................. 9

*Monarrez v. Utah Dep't of Transp.*,
368 P.3d 846 (Utah 2016)........................................................................... 19

*Moniz v. Cox*,
512 F. App'x 495 (6th Cir. 2013) ................................................................. 6

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*,
611 F.3d 1222 (10th Cir. 2010) ................................................................... 4

*Palacios v. Salt Lake City Police Department*,
No. 20-cv-714, 2021 WL 1192536 (D. Utah Mar. 30, 2021)...................... 18

*Patterson v. Am. Fork City*,
2003 UT 7, 76 P.3d 466 ............................................................................. 10

*Perez v. Ellington*,
No. 03-cv-361, 2004 WL 7337662 (D.N.M. June 28, 2004) ....................... 6

*Quern v. Jordan*,
440 U.S. 332, 341 (1979) ............................................................................. 5

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008)............................................................. 6, 14

*Rudder Holding Co., LLC v. Christensen*,
No. 17-cv-678, 2021 WL 1171781 (D. Utah Mar. 28, 2021)..................... 14

*Sasser v. Salt Lake City Corp.*,
No. 15-cv-606, 2017 WL 5991732 (D. Utah Dec. 1, 2017),...................... 22

*Schwartz v. Celestial Seasonings, Inc.*,
124 F.3d 1246 (10th Cir. 1997). ................................................................ 17

*Seid v. Univ. of Utah*,
No. 19-cv-112, 2020 WL 6873833 (D. Utah Nov. 23, 2020) ...................... 8

*Shebley v. United Cont'l Holdings, Inc.*,
357 F. Supp. 3d 684 (N.D. Ill. 2019)........................................................... 7

*Sierra Club v. Two Elk Generation Partners*,
646 F.3d 1258 (10th Cir. 2011)................................................................... 5

*Sikkengo v. Regence BlueCross BlueShield of Utah*,
472 F.3d 702 (10th Cir. 2006). ................................................................. 17

*South Weber City v. Cobblestone Resort LLC*,
2022 UT App 63, 511 P.3d 1207 .............................................................. 19

*SMS Fin., LLC v. CBC Fin. Corp.*,
  2017 UT 90, 417 P.3d 70 .................................................................... 21

*Thomas v. Lewis*,
  2001 UT 49, 26 P.3d 217 ..................................................................... 10

*Tilghman v. Kirby*,
  No. 13-cv-CIV-73, 2013 WL 6092529 (W.D. Okla. Nov. 19, 2013) (§ 1985). ......................... 6

*United States ex rel. Snapp, Inc. v. Ford Motor Co.*,
  532 F.3d 496 (6th Cir. 2008) ............................................................... 16

*Va. Off. for Prot. & Advoc. v. Stewart*,
  563 U.S. 247 (2011) ...................................................................... 9, 10

*Venkatraman v. REI Sys., Inc.*,
  417 F.3d 418 (4th Cir. 2005) ................................................................ 8

*Vicom, Inc. v. Harbridge Merchant Servs.*,
  20 F.3d 771 (7th Cir. 1994) ................................................................ 16

*Webb v. Swensen*,
   663 F. App'x 609 (10th Cir. 2016) ........................................................... 7

*Whitehat v. Coll. of E. Utah*,
  111 F. Supp. 2d 1161 (D. Utah 2000) ........................................................ 22

*Whitehead v. Marcantel*,
  766 F. App'x 691 (10th Cir. 2019) ........................................................... 6

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) .......................................................................... 5

*Wyo-Ben Inc. v. Haaland*,
  63 F.4th 857 (10th Cir. 2023) .............................................................. 21

**Statutes**

42 U.S.C § 1981 ........................................................................ 4, 5, 6

42 U.S.C § 1982 ........................................................................ 4, 5, 6

42 U.S.C. § 1983 .................................................................... 4, 5, 6, 22

42 U.S.C. § 1985 .......................................................................... 4, 6

42 U.S.C. § 2000d ........................................................................ 4, 7

Utah Code § 53C-1-102 ..................................................................... 2

Utah Code § 53C-1-103 ..................................................................... 2

Utah Code § 53C-1-201 ................................................................................................ 5

Utah Code § 53C-1-304 .............................................................................................. 12

Utah Code § 53C-1-305 .............................................................................................. 12

Utah Code § 63G-7-101 .............................................................................................. 13

Utah Code § 63G-7-102 .............................................................................................. 13

Utah Code § 63G-7-201 ........................................................................................11, 13

Utah Code § 63G-7-202 .............................................................................................. 13

Utah Code § 63G-7-401 ...............................................................................................11

Utah Code § 63G-7-402 .............................................................................................. 10

Utah Code §78B-2-305 ............................................................................................... 22

Utah Code §78B-2-307 ............................................................................................... 22

Utah Code §78B-2-309 ............................................................................................... 22

Utah Enabling Act. Act of July 16, 1894, ch. 138, 28 Statutes at Large 107................................. 2

**Rules**

Fed. R. Civ. P. 8............................................................................................... 2, 21

Fed. R. Civ. P. 9........................................................................................ 2, 14, 15, 16

Fed. R. Civ. P. 12.............................................................................................. 1, 21

**Regulations**

Utah Admin. Code R. 850............................................................................................ 20

Utah Admin. Code R. 850............................................................................................ 15

**Other Authorities**

U.S. Const. amend XIV .............................................................................................. 7

# INTRODUCTION

The Utah School and Institutional Trust Lands Administration and Michelle McConkie (collectively, except where context suggests otherwise, "SITLA") move to dismiss the Complaint filed by the Ute Indian Tribe of the Uintah and Ouray Indian Reservation ("the Tribe").

The Tribe brings suit because it submitted a bid for a piece of land, held in trust by the State of Utah, which the state ultimately elected not to sell. Attempting to overcome SITLA's statutory right to suspend the bidding process, the Tribe offers unfounded allegations of racial animus and asks the Court to force SITLA to sell the Tribe the land that the Tribe desires. The Tribe cannot be allowed to usurp SITLA's broad discretion in managing lands for the benefit of its beneficiaries—Utah's schoolchildren and schools—particularly when the Tribe already has access to the land and already owns the mineral rights.

## SPECIFIC RELIEF SOUGHT AND GROUNDS

SITLA asks this Court to dismiss all five Counts of the Tribe's Complaint, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following 4 grounds:

1. The Tribe fails to state a claim under federal civil rights laws. Neither the Tribe nor SITLA are persons or citizens as required by the federal statutes the Tribe cites, the claims are barred as a matter of law, SITLA does not receive federal funding, and finally, the Tribe cannot receive specific performance.

2. The Court lacks subject matter jurisdiction because the Tribe failed to file a notice of claim.

3. The Tribe cannot prevail on the state law claims because it cannot sue to remedy a breach of trust, it fails to state a claim for conspiracy, it fails to plead fraud with particularity as

required by Rule 8 and 9(b), and there was no contract.

4.      The Tribe' claims are untimely.

## RELEVANT BACKGROUND[1]

1.      SITLA is the Utah state entity established to manage lands that Congress granted to Utah for the support of common schools and other beneficiaries. Utah Code § 53C-1-103(1)(a).

2.      When Utah was admitted as a state, Congress passed the Utah Enabling Act. Act of July 16, 1894, ch. 138, 28 Statutes at Large 107. Utah's common schools were the largest beneficiaries under the Enabling Act, but there are eleven other beneficiaries as well. *Id*.

3.      The Utah Legislature created SITLA in 1994 as an independent agency of state government. Utah Code § 53C-1-102(1)(a).

4.      SITLA administers the land the state of Utah holds in trust for the exclusive benefit of the trust beneficiaries. It is charged with managing the lands in the most prudent and profitable manner possible. In doing so, SITLA must consider the interests of both income for current beneficiaries and the preservation of assets for future beneficiaries. § 53C-1-102(2).

5.      SITLA's "beneficiaries do not include other governmental institutions or agencies, the public at large, or the general welfare of this state." § 53C-1-102(2)(d).

6.      In 2019, the Legislature created the Land Trusts Protection and Advocacy Office. § 53D-2-201. That office is tasked with representing the beneficiary interests of the school and

---

[1]     Some of the factual statements in this section are taken from the Tribe's Complaint. SITLA does not admit these facts but includes them because well-pleaded factual allegations are accepted as true at the pleading stage. Conclusory allegations are not. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

institutional trust. *Id.*

7.      David Ure was the director of SITLA from about January 2016 until March 2022. (Compl. ¶ 11.)

8.      Michelle McConkie is the current director of SITLA. (*Id.* ¶ 12.)

9.      The Tribe brought this action on its own behalf and on behalf of its members, asserting *parens patriae* status. (*Id.* ¶¶ 8–9.)

10.     This suit involves land north of Highway 40, south of Tabiona, and north of Fruitland, Utah. (*Id.* ¶ 31.) The Complaint and this memorandum refer to the land as "Tabby Mountain."

11.     The state of Utah holds title to the surface of Tabby Mountain. (*Id.* ¶ 42.)

12.     In December 2018 SITLA issued a public notice that it planned to sell Tabby Mountain. (*Id.* ¶ 60.)

13.     On December 19, 2018, the Tribe expressed to SITLA its interest in bidding on Tabby Mountain. (*Id.* ¶ 61.)

14.     SITLA provided information regarding the bidding process, including notice that "[a]ll sales will be finalized on SITLA's standard certificate of sale." (*Id.* ¶¶ 67–71.)

15.     On February 22, 2019, SITLA issued a press release, providing public notice that its Board had voted to suspend the Tabby Mountain sale. (*Id.* ¶ 93.)

## ARGUMENT

### 1.      The Tribe fails to state a claim under federal civil rights laws.

The Tribe's first and second causes of action assert violations of (1) various post-Civil-War civil rights statutes (42 U.S.C. §§ 1981–85) and (2) Title VI of the 1964 Civil Rights Act.

None provides a basis for relief. *First*, says the Complaint, the Tribe is a "federal recognized sovereign Indian Tribe" that brought this action as "*parens patriae*" for its members. (Compl. ¶¶ 7–8.) But the statutes the Tribe relies on protect "persons" and "citizens," not sovereign entities. *Second*, and for a similar reason, Utah and McConkie are not "persons" subject to under §§ 1981–85. And the Tribe failed to allege any facts suggesting, let alone plausibly pleading, that McConkie violated any of those statutes. *Third*, the Tribe cannot state a claim under Title VI because (a) the Tribe has not (and cannot) alleged that SITLA receives any federal financial assistance, and (b) Title VI does not provide a right of action against individuals like McConkie. *Finally*, the Tribe's demand for specific performance would run roughshod over the Eleventh Amendment.

## 1.1 The Tribe is not a "person" or "citizen" entitled to sue under the Civil Rights Acts.

Each of the statues the Tribe invokes protects "persons" or "citizens."[2] The Tribe is neither. In *Inyo County v. Paiute-Shoshone Indians*, the Supreme Court explained that section "1983 was designed to secure private rights against government encroachment," not "advance a sovereign's prerogative." 538 U.S. 701, 711–12 (2003). And for that reason, the Tribe does not qualify as a "citizen" or "person" under § 1983. *Id.* Applying the same logic, the Tenth Circuit held that when, as here, a tribe's complaint "refer[s] on multiple occasions" to its "sovereign status," a tribe does not "constitute a 'person' entitled to bring suit." *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1234–36 (10th Cir. 2010). Though *Inyo* and *Muscogee* considered claims brought under § 1983, their logic applies with equal force to the remainder of

---

[2]      *See* 42 U.S.C. § 1981 ("All persons"); 42 U.S.C. § 1982 ("All citizens"); 42 U.S.C. § 1983 ("any citizen of the United States or other person"); 42 U.S.C. § 1985 ("any person"); 42 U.S.C. § 2000d ("No person").

the Tribe's federal claims. Each aims to protect individuals from discrimination and the violation of their private rights.

The Tribe itself claims that it brought this action as "*parens patriae* ('parent of the country')" because "the Tribe represents the interest of all its members and raises claims which affect all of its members." (Compl. ¶ 9.) But the "doctrine of *parens patriae*," by its nature, requires the Tribe to have a "quasi-sovereign interest" that is "apart from the interest of particular private parties." *Sierra Club v. Two Elk Generation Partners*, 646 F.3d 1258, 1268 (10th Cir. 2011). That quasi-sovereign "*parens patriae*" status "is inconsistent with a § 1983 action: quasi-sovereign interests are not individual rights." *Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076, 1082 (9th Cir. 2019). The Tribe accordingly is not a "person" or "citizen" entitled to sue under the federal civil rights laws.

### 1.2    SITLA is not a "person" capable of being sued under §§ 1981–85.

The Tribe's §§ 1981–85 claims are also barred as a matter of law against SITLA and fail to state a claim for relief against McConkie. Starting with SITLA, the administration falls "within the state government." Utah Code § 53C-1-201(1)(a). That spells the end of the Tribe's claims. The Supreme Court has held time and again that "a State is not a person within the meaning of § 1983" in part because "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Following that logic, the Tenth Circuit explained that "[n]either the state nor a governmental entity that is an arm of the state" counts as "a 'person' within the meaning of § 1983." *Harris v. Champion*, 51 F.3d 901, 905–906 (10th Cir. 1995); *Coleman v. Utah State Charter Sch. Bd.*, No 2:10-cv-1186-TC, 2011 WL

4527421, at * 2–3 (D. Utah. Sept. 28, 2011) (dismissing § 1983 claims against the Utah State Charter School Board, with prejudice, because the board is not a "person" for the purpose of § 1983). The Tenth Circuit has held the same for claims arising under §§ 1981, 1982, and § 1985. *See, e.g., Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1195–96 (10th Cir. 1998) (same for "42 U.S.C. §§ 1981, 1983 and 1985"); *see also Manzanares v. Reyes*, No. 14-cv-40, 2015 WL 5821413, at *4 (D. Utah Oct. 5, 2015) (same logic applies to § 1982).

As to McConkie, the Complaint alleges no facts suggesting she is personally liable under §§ 1981–85. To state a claim under those statutes, a plaintiff must offer more than "mere conclusory statements" that a defendant "personally participated in a violation of [the plaintiff's] constitutional rights." *Whitehead v. Marcantel*, 766 F. App'x 691, 702 (10th Cir. 2019) (§ 1983).[3] That is especially true for McConkie, a state officer entitled to qualified immunity. *E.g.*, *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).[4] When "government actors" are "sued in their individual capacities" it becomes "particularly important" that "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

The Tribe does not clear that low hurdle. McConkie's name appears once in the Complaint, where the Tribe says that she "is the current director of SITLA." (Compl. ¶ 12.) That

---

[3]    So too under §§ 1981, 1982, and 1985. *See, e.g.*, A*llen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (§ 1981); *Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013) (§ 1982); *Tilghman v. Kirby*, No. 13-cv-73, 2013 WL 6092529, at *2 (W.D. Okla. Nov. 19, 2013) (§ 1985).

[4]    Government officials are also entitled to the same qualified immunity defense for claims brought under §§ 1981 and 1982. *See, e.g.*, *Perez v. Ellington*, No. 03-cv-361, 2004 WL 7337662, at *15 (D.N.M. June 28, 2004), *aff'd*, 421 F.3d 1128 (10th Cir. 2005)

is far from explaining how she *personally* discriminated against or violated the Tribe's constitutional rights.[5]

### 1.2 The Tribe fails to state a claim under Title VI.

The Tribe fails to state a Title VI claim against McConkie and SITLA (1) because neither is a governmental entity that receives federal funding and (2) because the Tribe does not allege either engaged in discrimination. Title VI prohibits "discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To succeed on a claim under that statute, a plaintiff must plead and then prove (1) that "the entity engaging in discrimination is receiving federal financial assistance" and (2) "that there is racial or national origin discrimination." *Baker v. Bd. of Regents of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993). The Tribe's claim founders on both elements.

*First*, the Title VI claim against McConkie fails because she is a government employee, not an entity that receives federal financial assistance. And "individual employees of such entities are not liable under Title VI." *Webb v. Swensen,* 663 F. App'x 609, 613 (10th Cir. 2016). The claim against SITLA faces a similar problem: The Tribe does not "plausibly allege that" SITLA "received 'federal financial assistance' within the meaning of Title VI." *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 693 (N.D. Ill. 2019) (dismissing complaint). The Complaint comes closest to satisfying that element by saying that the Utah Department of

---

[5]     The Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To succeed with the equal protection claim, the Tribe must offer evidence that shows that the defendant was aware of, and acquiesced to, racial harassment or that they themselves engaged in racial classifications. The Tribe offers a history lesson, however there are no allegations against McConkie that she herself exhibited any animus or knew of any animus.

Natural Resources' ("DNR") bid for the land (which SITLA did not accept) was "contingent upon DNR accessing and transferring millions of dollars of federal funds to SITLA." (Compl. ¶ 87.) At most, the Tribe alleged that SITLA *could have* been indirectly paid with "federal funds," which does not mean SITLA "*is* receiving federal financial assistance." *Baker*, 991 F.2d at 631 (emphasis added). But even if SITLA had accepted DNR's bid, and DNR paid with "federal funds," the Tribe still could not state a claim: receiving "compensation" for property is not the same as "financial assistance." *See, e.g.*, *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 421 (4th Cir. 2005) (explaining the difference).

*Second*, the Tribe has not plausibly alleged that McConkie or SITLA engaged in racial discrimination. Title VI, "contrary to other provisions in the 1964 Civil Rights Act," prohibits "only intentional discrimination." *Seid v. Univ. of Utah*, No. 19-cv-112, 2020 WL 6873833, at *4 (D. Utah Nov. 23, 2020). To satisfy that element, a plaintiff "must come forward with well-pled facts that would show the" government entity "engaged in intentional discrimination *because of* Plaintiff's national origin" or race. *Humood v. City of Aurora, Colorado*, No. 12-cv-02185, 2014 WL 4345410, at *13 (D. Colo. Aug. 28, 2014) (emphasis in original.)

The Complaint includes no such facts. Again, McConkie's name appears once in the Complaint, where the Tribe identifies her current title. And for SITLA, the Complaint's allegations are nothing if not conclusory. The Complaint insists that "Defendants' conspiracy was unlawful discrimination" (Compl. ¶ 102), that undefined SITLA officers' wanted to "keep[] the land away from Indians" (*id.* ¶ 105), and that events of "1905-1910 established a historical pattern" of "racial animus." (*Id.* ¶ 38.) These "conclusory allegations of racial discrimination" do not support a "reasonable inference" that SITLA's conduct was "racially motivated." *Marks v.*

*Santa Rosa City Sch.*, 748 F. App'x 159, 160–61 (9th Cir. 2019). At bottom, the Tribe alleges that it "belongs" to a "suspect class," which standing alone "do[es] not state a claim of racially motivated discrimination." *Foster v. Michigan*, 573 F. App'x 377, 388–89 (6th Cir. 2014).

### 1.3 "Specific Performance" is not a remedy available to the Tribe.

The Tribe's second count asks for "declaratory and injunctive relief" to remedy a "violation of equal protection and due process." (Compl. p. 22.) That relief appears to be "the sale that would have been completed but for Defendants' unlawful discrimination." (*Id.* ¶ 150.) Sovereign immunity bars the claim.

To be sure, in *Ex parte Young*, the Supreme Court recognized a narrow exception to states' sovereign immunity, allowing federal courts to prevent state officials from enforcing laws that are contrary to federal law. 209 U.S. 123, 159–160 (1908). But *Ex parte Young* does not "permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). What matters is not the "mechanics of captions and pleading," *id.*, but whether the "the relief requested is 'properly' characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief." *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007).

Following that test, the Supreme Court has held that *Ex parte Young* "cannot be used to obtain" an "order for specific performance of a State's contract." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256–57 (2011). Even if such relief "may be labeled equitable in nature," sovereign immunity bars actions seeking "specific performance of a contract to which the State was a party." *Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974) (citing *In re Ayers*, 123 U.S. 443 (1887)). So too for claims that are the "functional equivalent of a quiet title suit" that would

"extinguish" a "State's control over a vast reach of lands and water." *Stewart*, 563 U.S. at 257 (quoting *Coeur d'Alene*, 521 U.S. at 282). Those remedies, "which disturb a sovereign title to property," lie "directly against the sovereign even when styled as a claim for injunctive relief against an individual governmental officer." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 995 (9th Cir. 2020).

The Tribe's requested relief falls outside *Ex parte Young*'s narrow sovereign immunity exception. The Tribe asks not only for "specific performance" against the State as restitution for an alleged prior wrong, but the Tribe also insists that SITLA dispose of a "vast reach of lands and water." *Stewart*, 563 U.S. at 257.

> **2.      The Tribe's state law claims fail because the Tribe did not file the requisite notice of claim.**

Before filing suit against a governmental entity, an injured party must first file a notice of claim with that entity within one year after the claim arises, and the suit itself must be filed within a year after the claim is denied. Utah Code § 63G-7-402; *David v. Midway City*, No. 20-cv-66, 2021 WL 6927739, at *9 (D. Utah Dec. 14, 2021). Failure to comply with the notice of claim provision deprives the trial court of subject matter jurisdiction. *David*, 2021 WL 6927739, at *9 (citing *Patterson v. Am. Fork City*, 2003 UT 7, ¶10, 76 P.3d 466); *see also Thomas v. Lewis*, 2001 UT 49, ¶13, 26 P.3d 217 ("The notice of claim provisions of the Governmental Immunity Act are jurisdictional."). The Governmental Immunity Act (the "GIA") bars federal courts from granting relief on state-law claims unless a plaintiff satisfies its requirements. *Jones v. City of Cottonwood Heights,* No. 22-cv-302, 2002 WL 10052834, at *3 (D. Utah Oct. 17, 2022).

The Complaint does not allege compliance with the notice provisions of the GIA. Indeed, the Tribe did not comply, *see* the Declaration of R. Franklin Pratt Declaration, and the time to

provide one or file suit has long passed. The Tribe alleges that on February 22, 2019, SITLA issued a press release providing public notice that it had voted to suspend proceedings on the proposed sale. (Compl. ¶ 93.) The Complaint also alleges that SITLA sent a letter informing the Tribe of the suspension. And, the Complaint says, on February 26, 2019, Luke Duncan, the Tribe's Chairman, sent a letter to SITLA demanding that SITLA honor the Tribe's right to purchase the property. (Compl. ¶ 104.) Mr. Duncan's letter, see Exhibit A to the Declaration of Lisa Wells, said that the Tribe had reviewed SITLA's actions; determined that SITLA had acted contrary to Utah law; and then threatened suit for breach of contract, breach of trust, and abuse of administrative authority. (Compl. ¶ 104.)

Whether the Tribe's claim arose on February 22, 2019 or February 26, 2019 the one-year deadline for filing a notice of claim has long since elapsed.

The GIA similarly protects Utah's governmental entities and "each employee of a governmental entity." Utah Code § 63G-7-201(1). This protection applies to the notice of claim provision. Utah Code § 63G-7-401(2). The Tribe's claims against both SITLA and McConkie therefore should be dismissed.

**3.      The Complaint's state law counts should be dismissed because the Tribe cannot prevail on them**.

**3.1.      The Tribe cannot sue to remedy a breach of trust.**

The Tribe's third count for "Breach of Trust," at bottom, claims that SITLA breached its "duties to the trust and to SITLA's trust beneficiaries." (Compl. ¶ 154.) Although the Tribe claims that SITLA is "subject to suit for violation of" some undefined "federal and state laws," (*id.* ¶ 155), SITLA's duties, obligations, and existence are proscribed by the School and Institutional Trust Lands Management Act. *See* Utah Code Title 53C-1-101 *et seq.*

The same statute identifies who may bring an action on behalf of Trust beneficiaries: the Attorney General. Section 305 provides that the "attorney general may institute actions against any party to enforce this title or to protect the interests of the trust beneficiaries." Utah Code § 53C-1-305(2). That same section provides that the Attorney General may bring actions against "state officers or executive department agencies" on behalf of beneficiaries. § 53C-1-305(4). In contrast, an "aggrieved party to a final action by the director or administration," § 53C-1-304, may seek administrative review and then judicial review under Utah's Administrative Procedure Act. *Id.*

Missing from any Utah statute is a private right of action authorizing an aggrieved party —to say nothing of a third party purporting to represent one of SITLA's beneficiaries—to sue SITLA or its directors for breach of their fiduciary duties. This spells the end of the Tribe's claim. As a "matter of statutory interpretation," Utah courts do not "imply[] a right of action based upon state law, absent some specific direction from the Legislature." *Conner v. Dep't of Com.*, 2019 UT App 91, ¶¶ 27–30, 443 P.3d 1250, 1258–59 (quoting *Broadbent v. Board of Educ.*, 910 P.2d 1274, 1278 (Utah Ct. App. 1996).) Indeed, Utah "courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Buckner v. Kennard*, 2004 UT 78, ¶ 43, 99 P.3d 842. In the end, when "the Utah Legislature has intended to establish a private right of action, it has done so expressly." *Conner*, 2019 UT App 91, ¶ 28.

### 3.2    The Complaint fails to allege a conspiracy.

The Tribe alleges the Defendants participated in a conspiracy to have SITLA violate federal and state law, and also to discriminate based on protected categories. (Compl. ¶¶ 4,102, 136–138). That claim is barred because SITLA retains immunity under the GIA. The GIA

"governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." Utah Code § 63G-7-101. It applies to any acts that "occur[] during the performance of an employee's duties, within the scope of employment, or under color of authority." § 63G-7-202(3)(a).

The GIA provides immunity to "each governmental entity and each employee of a governmental employee" from" suit for any injury that results from the exercise of a governmental function" unless immunity is expressly waived. § 63G-7-201(1). The State has not waived immunity for the Tribe's state tort claims. The GIA reserves immunity for any claim if the injury "arises out of or in connection with, or results from," among other things, the "abuse of process . . . interference with contract rights . . . or *violation of civil rights.*" § 63G-7-201(4)(b), (c). An injury "arises out of or in connection with, or results from" something when "(a) there is some causal relationship between the conduct or condition and the injury; (b) the causal relationship is more than any causal connection but less than proximate cause; and (c) the causal relationship is sufficient to conclude that the injury originates with, flows from, or is incident to the conduct or condition." § 63G-6-102(1).

Even if SITLA had waived immunity (it did not), to succeed on a civil conspiracy claim under Utah law, a plaintiff must allege "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 70, 416 P.3d 401, 425. And the Tenth Circuit has been "particularly critical" of conspiracy claims that "mentioned no specific time, place, or person

involved in the alleged conspiracies." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). For the Tribe's "conspiracy to commit fraud" claim (Count IV), the Tribe must also satisfy Rule 9(b)'s particularity requirement. *Rudder Holding Co., LLC v. Christensen*, No. 17-cv-678, 2021 WL 1171781, at *10 (D. Utah Mar. 28, 2021). The Tribe has failed to allege the elements, and even if it had, it fails on its merits.

*First*, the Tribe's alleged injury, not being awarded a bid, "originates with, flows from, or is incident to" the alleged violation of civil rights. Accordingly, the GIA bars Plaintiffs tort claims.

*Second*, the Tribe has not alleged who comprises "the combination of two or more persons" that putatively engaged in the alleged conspiracy. The Tribe must show who specifically SITLA allegedly conspired with. It offers only that "Defendants" conspired and acted in concert, and in concert with others outside State Government" (Compl, ¶ 142). But "lump[ing]" together "all of the" defendants fails to does not even suggest "any of kind of agreement or understanding." *GeometWatch Corp. v. Hall*, No. 14-cv-60, 2017 WL 1136946, at *17 (D. Utah Mar. 27, 2017).

*Third*, the Tribe has not alleged facts demonstrating that there was a meeting of the minds on the object or course of action. "A complaint must contain facts that show a meeting of the minds rather than conclusory statements that 'simply imply that this element is satisfied.'" *Rudder*, 2021 WL 1171781, at *10. The only allegation of a "meeting of the minds" is the rote allegation that unidentified "Defendants" created a "conspiracy" at some unidentified location and time. (Compl. ¶¶ 82–92.) Rules 8 and 9(b) require more. *Id.*

*Fourth*, the Tribe has not alleged any unlawful act. The governing regulations allow SITLA to suspend a sale prior to the finalization of the certificate of sale. Here, SITLA drafted an "Offer to Purchase" and required bidders to execute that Offer as a condition to submit a valid bid. That Offer stated the sale would be completed on SITLA's standard certificate of sale. (Compl. ¶¶ 68–70). Utah Admin. Code R. 850-80-700(3) is clear that SITLA "may terminate a negotiated sale for any reason prior to the finalization of the certificate of sale." SITLA exercised that discretion to address the trust beneficiaries' concern regarding the appraisal and the length of time the property was advertised. (Compl. ¶ 93). The Tribe cannot overcome that by making conclusory allegations that the sale was suspended based on its perception of a history of general government discrimination.

*Finally*, the Tribe cannot show damages. The Tribe holds the mineral rights to Tabby Mountain. (Compl. ¶ 43). The Tribe, and its members, were, and still are, allowed to recreate on the land. That recreation includes hunting. Indeed, they have been hunting on the land "since time immemorial." The only thing the Tribe lost as a result of not purchasing the property is the right to exclude the public from enjoying the benefits of the land.

### 3.3 The Complaint fails to plead fraud with particularity as required by Rule 9(b).

The Complaint, though prolix, fails to meet Rule 9(b)'s requirement that fraud be pleaded with particularity. Rule 9(b) is not a legal technicality. Pleading fraud claims with particularity protects a defendant's reputation from harm caused by "spurious charges of immoral and fraudulent behavior," prevents strike suits and "fishing expeditions," and provides notice of the claim to the adverse party. *Vicom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 777 (7th Cir. 1994); *see also United States ex rel. Snapp, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir.

2008). In cases involving multiple defendants like this one, Rule 9(b) takes on even greater importance. *Cook v. Zion's First Nat'l Bank,* 645 F.Supp. 423, 424 (D. Utah 1986) (Rule 9(b) "is especially important in cases involving multiple defendants."). Fraud must be pleaded with particularity against each defendant, setting forth the "who, what, when, where and how of the alleged fraud." *CVB, Inc. v. Corsicana Mattress Co.,* 604 F. Supp. 3d 1264, 1274 (D. Utah 2022).

Statements such as "Defendants conspired to commit fraud against the Tribe, and the Tribe expects that discovery in this matter will establish that others in the Utah Executive Branch and Legislative Branch and others outside of State government were part of that conspiracy to commit fraud" (Compl. ¶ 166) do not meet the fraud pleading requirements. Indeed, this statement underscores the Complaint's deficiency through its claim that others may have made misstatements attributable to the defendants. The Complaint does not identify which defendants engaged in the conspiracy, much less the acts each defendant engaged in to further the conspiracy. Paragraphs 80–91 refer only to "Defendants" engaging in a conspiracy to defraud the Plaintiff. This does not satisfy the Tribe's obligation to identify *who* made an alleged misrepresentation of fact. *Koch v. Koch Indus., Inc*., 203 F.3d 1202, 1237 (10th Cir. 2000) (requiring same). This principle was underscored in *Shah v. Intermountain Healthcare, Inc.,* 2013 UT App. 261, ¶ 12, 314 P.3d 1079 (holding that fraud claims were not pleaded with particularity, in part, because the plaintiffs failed to explain which defendants made what statements). Fundamentally, the Tribe "cannot base claims of fraud on speculation and conclusory allegations." *United States ex rel. Sikkengo v. Regence BlueCross BlueShield of Utah,* 472 F.3d 702, 728 (10th Cir. 2006). The Tribe merely speculates that discovery may unearth evidence to support a fraud claim.

For example, the Complaint alleges that "Defendants made false allegations and hid facts for the purpose of inducing the Tribe not to challenge the suspension of the sale." (Compl. ¶ 169). This ignores the principle that in cases involving multiple defendants, the plaintiff is required to set forth separately the facts complained of by each defendant. *Koch*, 203 F.3d at 1237. Critical here, the Complaint makes no reference to McConkie, other than in paragraph 12 which identifies her as the current director of SITLA. According to the Complaint, at the time the events identified in the Complaint occurred, David Ure was the director of SITLA. (Compl. ¶ 11). Ure is represented separately and will address the inadequacy of the Tribe's allegations against him. But absent any specific allegations against McConkie, the Complaint should be dismissed as to her.

The same is true of SITLA. In its Complaint, the Tribe routinely conflates Director Ure with SITLA. For example, paragraph 93 alleges that "SITLA Director Ure sent a letter informing the Tribe that SITLA's Board of Trustees voted to suspend the proposed sale and falsely stated that the reason for the suspension was for SITLA to address the trust beneficiaries' concerns regarding the accuracy of the appraisal and the length of time that the property was advertised." This contrasts with paragraph 98 which attributes the misrepresentation to SITLA. At a bare minimum, and leaving aside that the allegation is insufficient to state a claim, a plaintiff must plead "the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The Complaint lacks any specificity in denominating which of the Defendants made which statements, or even what statements were misleading. SITLA is entitled to know which statements the Plaintiff is attributing to it, and those that are being attributed to someone else.

The Tribe accordingly fails to allege fraud against McConkie and SITLA with particularity. The Complaint should be dismissed as to these two parties.

### 3.4 The Complaint's Fifth Count, for Breach of Contract/Estoppel/Equitable Conversion, should be dismissed because there was no contract.

The Tribe acknowledges that SITLA did not accept its bid (Compl. ¶176), alleging instead that SITLA would have accepted its bid but for its breach of fiduciary duties. (*Id*. ¶ 179.) The Tribe also alleges that it provided $1,000,000 in earnest money (which was subsequently returned) and that it *would* pay the remainder "upon acceptance of its bid." *Id*. ¶183. The Tribe's admission that SITLA never accepted its bid spells the end of its contract claim. "An enforceable contract consists of the terms of a bargained-for exchange between the parties. And the terms of the bargain are defined by the meeting of the minds of the parties—through an offer and acceptance upon consideration." *Bear v. Lifemap Assurance Company*, 2021 UT App 129, ¶29, 503 P.3d 507, 517. The Complaint's conclusory assertion in paragraph 174 that there was a "contract" does not save the claim. "When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts in the complaint are presumed, but conclusory allegations need not be considered." *Palacios v. Salt Lake City Police Department*, No. 20-cv-714, 2021 WL 1192536, at *1 (D. Utah Mar. 30, 2021).

Recognizing this deficiency, the Tribe forwards alternative theories—promissory estoppel, equitable estoppel, and equitable conversion—to "provide the missing elements of contract formation." (Compl. ¶ 174.) As a matter of law, none of these equitable doctrines suffice.

### 3.4.1 Promissory estoppel and/or equitable estoppel do not apply against the government.

Because SITLA is a government entity, the usual rules of estoppel do not apply against it. Courts must be cautious in applying equitable estoppel against the state. *Davis v. Utah*, No. 20-4042, 2021 WL 3930277, at *13 (10th Cir. Sept. 2, 2021) (citing *Monarrez v. Utah Dep't of Transp.*, 368 P.3d 846, 859 (Utah 2016)). The few cases in which Utah courts have permitted estoppel against the government have involved very specific written representations, such as a letter expressly telling a liquor-license applicant that it had satisfied a particular requirement that the licensing commission later said had not been met. *Monarrez*, 368 P.3d. at 860; *see also South Weber City v. Cobblestone Resort LLC*, 2022 UT App 63, ¶ 27, 511 P.3d 1207 (estoppel claim against the government fails absent a specific statement or written representation). And "estoppel is applied against the state only if necessary to prevent manifest injustice, and the exercise of governmental power will not be impaired as a result." *Monarrez*, 368 P.3d at 860 (quoting *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979)).

SITLA's bid instructions to the public do not qualify as a "*very specific* written representation.*" Davis*, 2021 WL 39930277, at *13 (emphasis in original). The Tribe alleges SITLA represented that sale to the highest bidder would be completed. (Compl. ¶ 177.) Even if true, that representation to the public would not be enough as a matter of law. A generally applicable document does not meet the exacting "very specific" standard. *Davis*, 2021 WL 3930277, at *13 (holding that government could not be estopped from enforcing a statute of limitations absent "a specific, written representation directly related to that issue, such as a statement that [plaintiff] had satisfied the GIA's requirements or that the government would not assert the defense in litigation").

In fact, SITLA's administrative rules make clear that a bid is only one step in the contract formation process. There must also be a certificate of sale which "shall be signed by the director after it has been signed by the purchaser and returned to the agency. The certificate shall not be final and no rights shall vest in the purchaser until the certificate is executed by the director." Utah Admin. Code R. 850-80-615(3). Because "state administrative rules are implemented pursuant to statutory authority and have the force and effect of law," Utah courts consider them as they "would statutory sources." *Christensen v. Utah State Tax Comm'n,* 2020 UT 45, 469 P.3d 962, 967 n.12. The Complaint does not allege that SITLA executed a certificate, because it did not.

The Complaint acknowledges the February 22, 2019 press release constituted public notice that SITLA had suspended proceedings. (Compl. ¶ 93.) As of that date, there was no certificate. SITLA's rules provide that "[t]he agency reserves the right to cancel a sale of trust land for any reason prior to execution of the certificate by the director." Utah Admin. Code R. 850-80-615(3). Based on the public notice and the Rule, the Complaint fails to state a claim that SITLA represented without qualification that it would accept the high bid.

The Tribe also alleges that it and its members reasonably relied upon the expectation that SITLA's representation to the public and to the Tribe was truthful. Expectation does not constitute the very specific written representation required for estoppel against the state.

### 3.4.2   Equitable conversion does not apply.

Count V of the Complaint references equitable conversion but fails to do so in sufficient detail. It alleges only that the Tribe's bid should have been accepted because equity regards that as done which ought to have been done. (Compl. ¶ 178.) This is not enough. This principle of

equity is governed by the same reasoning as equitable estoppel: it can only be applied to the state where there is a very specific written representation.

The doctrine of equitable conversion protects the rights of the parties to a real estate transaction while the agreement is executory. After a contract is formed by offer and acceptance, but before the transaction closes, a buyer may invoke equitable conversion to enforce the contract if the buyer can show there was a contract. But equitable conversion should only be applied when it serves to carry out the apparent intent of the parties. *SMS Fin., LLC v. CBC Fin. Corp.*, 2017 UT 90, ¶ 10, 417 P.3d 70, 74. Equitable conversion cannot supply missing elements of a contract claim, which is what the Tribe requests. It applies only when the contract becomes capable of specific performance. *Id.* at ¶11. There must be a "clear duty on the part of the seller" to convey the property. *Id.* at ¶13. In this case, SITLA had no duty to convey the property. Administrative Rule 850-80-700 makes clear that SITLA may terminate a negotiated sale for any reason prior to finalization of the certificate of sale. Where there is a unilateral right to terminate, there can be no specific performance.

In *Davis*, the District Court dismissed Davis's complaint and refused to allow him to amend. The Tenth Circuit affirmed because his equitable estoppel claim lacked merit. *Davis*, 2021 WL 39930277, at *14. SITLA asks this Court to do likewise.

**4.      The Tribe's claims are barred by the statute of limitations.**

A court may resolve a statute of limitations defense on a Rule 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished. *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 866 (10th Cir. 2023) (citing cases). The Complaint in this case was filed on May 5, 2023. SITLA issued its press release providing public notice that it had

suspended the proposed sale on February 22, 2019. The Complaint was thus filed more than four years after the alleged conduct occurred.

Utah's four-year residual statute of limitations governs suits brought under § 1983, *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). Section 1981 has the same four-year limitations period, *Sasser v. Salt Lake City Corp.*, No. 15-cv-606, 2017 WL 5991732, at *3 (D. Utah Dec. 1, 2017), as do claims under § 1982 and § 1985. *Auman v. Kansas,* No. 17-cv-2069, 2018 WL 587232, at *4 (D. Kan. Jan. 29, 2018). Title VI claims also have a four-year statute of limitations. *Whitehat v. Coll. of E. Utah*, 111 F. Supp. 2d 1161, 1163 (D. Utah 2000). The statute of limitations for fraud claims is three years. Utah Code § 78B-2-305. A claim for breach of an oral contract must be filed within four years, Utah Code § 78B-2-309, as must a breach of fiduciary duty claim. Utah Code § 78B-2-307.

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006).

As explained with respect to the notice of claim issue, the Tribe knew of the facts that supported its causes of action no later than February 26, 2019, when it sent its second letter acknowledging that it was considering a suit. The Complaint was not filed until May 5, 2023. The statute of limitations for all claims had expired.

**CONCLUSION**

For the foregoing reasons, the Tribe's causes of action against SITLA and McConkie should be dismissed.


DATED this 28th day of August 2023.

PARR BROWN GEE & LOVELESS, P.C.

By: */s/ Robert G. Wing*
    Robert G. Wing
    *Attorneys for Defendants Utah School and Institutional Trust Lands Administration and Michelle McConkie*


UTAH ATTORNEY GENERAL

By: */s/ Vanessa R. Walsh*
    Sean D. Reyes
    Vanessa R. Walsh
    *Attorneys for Defendants Utah School and Institutional Trust Lands Administration and Michelle McConkie*