J. Preston Stieff (4764)
J. PRESTON STIEFF LAW OFFICES, LLC
311 South State Street, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 366-6002
Email: jps@Stiefflaw.com

Jeremy J. Patterson, *Pro Hac Vice Admission*
Linda F. Cooper, *Pro Hac Vice Admission*
Michelle E. Long, *Pro Hac Vice Admission*
PATTERSON EARNHART REAL BIRD & WILSON LLP
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 926-5292
Facsimile: (303) 926-5293
Email: jpatterson@nativelawgroup.com
Email: lcooper@nativelawgroup.com
Email: mlong@nativelawgroup.com

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>David Ure, Michelle McConkie, Michael Styler, Spencer Cox, Utah School and Institutional Trust Lands Administration<br><br>Defendants. | **RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT URE**<br><br>Civil Case No. 2:23-CV-00295<br><br>Jude David B. Barlow<br><br>Magistrate Judge Daphne A. Oberg |

i

# **CONTENTS**

INTRODUCTION .................................................................................................................... 1

I.    The Tribe is a person under 42 U.S.C. § 1983. ..................................................................... 2

    A.    Because the right to purchase land and to not be discriminated against when purchasing land is not a sovereign right, the Tribe is a person under 1983 for its claim of unlawful discrimination................................................................................................................. 2

    B.    Whether a tribe can bring a suit under parens patriae depends on the claim that the Tribe seeks to assert, and here, the claim can be brought by the tribe under parens patriae. ............... 3

II.    Defendant Ure is a person under 1983................................................................................ 5

III.    Defendant Ure's argument that the Tribe did not meet Rule 8's minimal pleading standard is frivolous. .................................................................................................................. 6

IV.    The Tribe has Pleaded with Particularity Sufficient Facts Supporting its Claims for Conspiracy Committed by the Defendants, Including Defendant Ure ........................................... 8

V.    Defendants' cursory argument that the Tribe was required to submit some unspecified claims to the State before filing suit in this Court should be rejected or tabled pending state review of the allegedly required state notice of claim. .......................................................................... 12

|  | Page(s) |
|---|---|

Cases

*Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*,
  868 F.3d 1199 (10th Cir. 2017) ................................................................................................ 2
*Chemehuevi Indian Tribe v. McMahon*,
  934 F.3d 1076 (9th Cir. 2019) ............................................................................................. 4, 5
*Cheyenne & Arapaho Tribes v. First Bank & Tr. Co.*,
  560 F. App'x 699 (10th Cir. 2014) ........................................................................................... 3
*Church of Scientology of California v. Cazares*,
  638 F.2d 1272 (5th Cir. 1981) .............................................................................................. 2, 5
*Confederated Tribes of Colville Rsrv. v. Anderson*,
  903 F. Supp. 2d 1187 (E.D. Wash. 2011)................................................................................ 3
*Hafer v. Melo*,
  502 U.S. 21 (1983) ................................................................................................................... 5
*Inyo County v. Paiute Shoshone Indians of the Bishop Community of the Bishop Colony*,
  538 U.S. 701 (2003) ................................................................................................................. 2
*Israel Pagan Est. v. Cannon*,
  746 P.2d 785 (Utah Ct. App. 1987).................................................................................. 10, 11
*Merrion v. Jicarilla Apache Tribe*,
  617 F.2d 537 (10th Cir. 1980) ................................................................................................. 5
*Muscogee (Creek) Nation v. Okla. Tax Comm'n*,
  611 F.2d 1222 (10th Cir. 2010) ............................................................................................... 2
*Native Vill. of Curyung*,
  151 P.3d 388 (Alaska 2006) ................................................................................................ 3, 4
*Oglala Sioux Tribe v. Van Hunnik*,
  993 F. Supp. 2d 1017 (D.S.D. 2014) ....................................................................................... 3
*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................................. 5

Statutes

42 U.S.C. § 1983................................................................................................................*passim*

## INTRODUCTION

Since early 2019, the Utah School and Institutional Trust Lands Administration (SITLA), Utah Department of Natural Resources (DNR), officers of each, and the political branches in the State of Utah have been engaged in an ongoing conspiracy to discriminatorily prevent the Ute Indian Tribe (Tribe) from purchasing a parcel of land on the Tribe's Uintah and Ouray Reservation (Reservation).  This suit seeks to properly remedy that ongoing wrong.

Early in 2018, SITLA's Board unanimously determined that it was in the best interest of SITLA and its trust beneficiaries to sell the portions of the surface estate in Tabby Mountain which SITLA owned (hereinafter Tabby Mountain).

But when the Tribe was the high bidder for that property, the State Executive Branch and SITLA worked behind the scenes to 1) prevent the sale of the property to the Tribe, and 2) concoct a public-facing record through which they, knowingly falsely, misled the Tribe and SITLA's trust beneficiaries by claiming that they were "suspending" the sale to address two non-discriminatory concerns.

Based upon information from a state whistleblower, they were caught.

Now, each of the defendants in this case submits a shotgun motion to dismiss.  Many of the defendants' innumerable arguments are no more than a sentence or two, often misstating immaterial legal rules, and for every one of their arguments, they are misstating the Tribe's claims.

In his motion to dismiss, Defendant Ure primarily relies upon his open misstatement of the Tribe's claims against him.  He worked with other state officers to discriminate against the Tribe regarding the sale of land, to hide that fact by issuing false public-facing documents, and he set in motion the discriminatory plan to prevent sale of the land, a plan that SITLA and the State continue to this day.

I.  **THE TRIBE IS A PERSON UNDER 42 U.S.C. § 1983.**

   A.  **BECAUSE THE RIGHT TO PURCHASE LAND AND TO NOT BE DISCRIMINATED AGAINST WHEN PURCHASING LAND IS NOT A SOVEREIGN RIGHT, THE TRIBE IS A PERSON UNDER 1983 FOR ITS CLAIM OF UNLAWFUL DISCRIMINATION**

The Tribe has a right to bring a claim because its civil rights were violated. *E.g., Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1279 (5th Cir. 1981).

Defendant Ure's first argument for attempting to dismiss the Tribe's claims that he and other Defendants wrongly discriminated based upon race, national origin, ethnicity, and religion is to (correctly) assume that each of the Defendants did wrongfully discriminate but to assert that the Tribe cannot obtain a remedy under § 1983. M. at 4-5. He is wrong. Other Defendants incorporate his argument by reference, and they are wrong also.

In his brief in support of its motion to dismiss, Defendant Ure correctly notes that the binding Tenth Circuit case law holds that whether a tribe is a "person "depends on whether the Tribe's asserted right is of a sovereign nature." M. at 5 (citing *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 868 F.3d 1199 (10th Cir. 2017) and *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.2d 1222, 1234 (10th Cir. 2010). *See also Inyo County v. Paiute Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701 (2003) (same).[1]

But Defendant Ure does not apply that binding legal standard. Instead of discussing, as required by the binding Tenth Circuit cases, whether the right that the Tribe asserts here (to be free from discrimination when seeking to purchase real property) is a sovereign right, Ure claims that his assumed racial and other discrimination against the Tribe is non-actionable because the Tribe

---

[1] After the Supreme Court issued its decision in *Inyo County*, some district courts interpreted the decision to broadly bar tribes from bringing any 1983 claims. But that broader interpretation subsequently withered on the vine, and as noted, even the Defendants here admit that in this Circuit, the Tribe can bring a §1983 claim unless it is asserting a right that is based upon a tribe's sovereign status.

pled (as is relevant as both background and for some purposes relevant to the complaint) that it is a sovereign. His argument is contrary to *Becker* and *Muscogee (Creek) Nation*. This Court must focus on whether the right asserted is or is not a right that the Tribe has as a sovereign—not whether the Tribe is a sovereign.

Here, the asserted right to be free from racial discrimination when attempting to buy property is not a sovereign right. Defendant does not argue to the contrary, nor could he.

### B. WHETHER A TRIBE CAN BRING A SUIT UNDER PARENS PATRIAE DEPENDS ON THE CLAIM THAT THE TRIBE SEEKS TO ASSERT, AND HERE, THE CLAIM CAN BE BROUGHT BY THE TRIBE UNDER PARENS PATRIAE.

On page 5 of his brief, Defendant provides a one-paragraph assertion that the Tribe cannot bring claims under parens patriae. Defendant's sole argument is that the Tribe cannot bring any claim under parens patriae. He does not make any argument that if the Tribe can bring a parens patriae claim, it should not be allowed to in the current case, and the Tribe therefore will limit its discussion to the issue Defendant presents.

Where, as here, the Tribe is asserting a violation of the rights of its members which do not arise from sovereignty, the Tribe can bring the action under parens patriae. *Alaska v. Native Vill. of Curyung*, 151 P.3d 388, 393 (Alaska 2006); *Oglala Sioux Tribe v. Van Hunnik*, 993 F. Supp. 2d 1017 (D.S.D. 2014), *rev'd on other grounds sub nom. Oglala Sioux Tribe v. Fleming*, 904 F.3d 603 (8th Cir. 2018); *Cheyenne & Arapaho Tribes v. First Bank & Tr. Co., aff'd sub nom. Cheyenne & Arapaho Tribes v. First Bank & Tr. Co.*, 560 F. App'x 699 (10th Cir. 2014), and *aff'd sub nom. Cheyenne & Arapaho Tribes v. First Bank & Tr. Co.*, 560 F. App'x 699 (10th Cir. 2014) (citing *Native Village of Curyung* for the distinction between parens patriae suits based upon sovereign and non-sovereign rights, and holding that the Cheyenne & Arapaho Tribe's claim, based upon sovereign immunity, could not be brought under parens patriae); *Confederated Tribes of Colville Rsrv. v. Anderson*, 903 F. Supp. 2d 1187, 1195 (E.D. Wash. 2011) (citing with approval *Native*

*Village of Curyung* for the distinction between parents patriae claims based upon sovereign rights and non-sovereign rights).

In *Native Village of Curyung*, the Alaska Supreme Court provided a lengthy and well-reasoned analysis of this exact legal issue. It noted that a tribe brings a suit under Parens Patriae in a quasi-sovereign capacity, but that the issue under 42 U.S.C. § 1983 and the holding in *Inyo County* is whether the underlying right that the tribe is asserting on behalf of its members is a private right.

The Court first described the holding of the state superior court that was under review.

> The superior court noted the differences between the right asserted in *Inyo County* and the right asserted here. In *Inyo County,* the tribe claimed that sovereign immunity protected it from a district attorney's efforts to investigate welfare fraud. The tribe therefore "attempted to use its status to undermine an otherwise legal investigation." But the court determined that here the villages "attempt to bring a claim as *parens patriae* for the exact reason § 1983 was enacted: to secure private rights against the wrongful acts of the government." The court therefore determined that the villages' suit was not an attempt to vindicate their sovereign rights, that *Inyo County* did not control the present case, and that the villages could therefore pursue their claim.

*Id.* at 394.  The Court then provided its detailed analysis of *Inyo County* and of the doctrine of Parens Patriae, and the relationship between tribes and tribal members, and it affirmed the superior court's holding quoted above.

In his one-paragraph "argument," Ure claims that *Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076, 1082 (9th Cir. 2019) prohibits tribes from bringing 1983 suits on behalf of members.  Defendant's expansive interpretation of *Chemehuevi Indian Tribe* is likely wrong, but if Defendant's expansive interpretation were not wrong, *Chemehuevi Indian Tribe* would be unpersuasive because it is contrary to the Tenth Circuit's analysis of *Inyo County*, and this Court should adopt the analysis of the Alaska Supreme Court.

4

In contrast to the Alaska Supreme Court's detailed and reasoned legal analysis, the Ninth Circuit, in *Chemehuevi Indian Tribe*, did not conduct any analysis whatsoever. Instead, it provided only a single sentence conclusory assertion, that does not cite *any* legal authority.

Another path to the same result is to apply the standard for representational standing.

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1279 (5th Cir. 1981) (quoting and applying *Warth v. Seldin*, 422 U.S. 490, 511 (1975) for civil rights claim and a defamation claim). Tribes are, of course, "more than private voluntary associations," *Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537 (10th Cir. 1980), but Defendant does not provide any argument for why the Tribe would not have authority to bring a claim based upon the same type of representational standing that other entities have.

The Tribe can bring claims for harm to its members. Defendants' argument to the contrary must be rejected.

## II. DEFENDANT URE IS A PERSON UNDER 1983.

A government official in the role of a personal-capacity defendant is a "person" subject to suit for damages under § 1983 for actions taken in her official capacity. *Hafer v. Melo*, 502 U.S. 21 (1983).

**III.** **DEFENDANT URE'S ARGUMENT THAT THE TRIBE DID NOT MEET RULE 8'S MINIMAL PLEADING STANDARD IS FRIVOLOUS.**

In Section 3 of his brief, Defendant Ure argues that the Tribe has not pled claims of discrimination against him.

In its response to Defendants Cox and Styler's similar motion to dismiss for failure to state a claim for discrimination, the Tribe provided a detailed discussion of the low legal standard the Tribe has to meet to survive a motion to dismiss. The Tribe incorporates that legal discussion by reference and incorporates its application of that standard to the facts contained in that brief.

As the Tribe discussed in that brief, the Tribe easily meets the pleading standard regarding to Governor Cox and Director Styler. It yet more easily meets it with Defendant Ure. The Tribe's complaint alleges facts that show that Defendant Ure was the architect of the conspiracy. That is why he was chosen as the lead defendant. It is possible that later discovery, particularly depositions of the various rogue actors under oath, will show that those above him had as much or more responsibility—that he was only "following orders" from Executive Branch officers or others--but the complaint in this case vastly exceeds the minimal standard for pleading a claim of wrongful discrimination by Defendant Ure.

The Tribe's Complaint alleges that Defendant Ure played a key and pivotal role in the illegal discrimination aimed at the Tribe. Specifically, in ¶ 11, the Tribe's Complaint notes that Defendant Ure "was the Director of SITLA from about January 2016 until March 2022, and took actions related to this matter under color of the law of the State of Utah." The sequence of events leading up to and including SITLA's discriminatory decision not to sell Tabby Mountain to the Tribe occurred from 2018-2019—all within the time period that Defendant Ure served as SITLA's Director. The Tribe's Complaint at ¶¶ 62 and 64 details how "[o]n December 20, 2018, Margaret Bird (in a role as a consultant and also on behalf of two state university realty officers) sent a

memo to SITLA Director Ure regarding the proposed sale. She did not question whether selling the land was in the Trust's best interests, but did question the prudence of the proposed plan for marketing the property. … In that same memo and related communications, *Ms. Bird expressed her view that Director Ure had structured the sale process with the goal of selling the land to DNR, instead of with the goal of maximizing the income to the trust*." (Emphasis added). Throughout the bidding process, it was Defendant Ure who sent communications to the Tribe (and presumably, to other bidders). *E.g.*, Tribe's Complaint at ¶ 74 ("On Tuesday, February 19, 2019, SITLA Director Ure sent a letter to Ute Business Committee Chairman Luke Duncan notifying him that SITLA had received the Tribe's bid."). After the Tribe won the bid, it was "Director Ure [who] responded that the decision had been made not to contact the Tribe." Tribe's Complaint at ¶ 78. In furtherance of the conspiracy to keep the land out of the hands of the Indians, it was "Director Ure [who] sent a letter to the Tribe stating that DNR countered the Tribe's bid with a higher bid of $50,000,000.00. At the time Director Ure sent that letter, Defendants knew the bid of $50,000,000 was a sham." Tribe's Complaint at ¶ 88. Further, "[c]onsistent with the conspiracy, after receiving DNR's sham bid," it was "SITLA and Director Ure [that] postponed the sale indefinitely without giving the Tribe or anyone else an opportunity to question DNR's sham bid and without giving the Tribe an opportunity to increase its bid. On February 22, 2019, SITLA issued a press release, providing public notice that it had voted to "temporarily suspend proceedings on a proposed sale." SITLA Director Ure sent a letter informing the Tribe that SITLA's Board of Trustees voted to suspend the proposed sale, and falsely stating that the reason for the suspension was for SITLA to address the trust beneficiaries' concerns regarding the accuracy of the appraisal and the length of time that the property was advertised." Tribe's Complaint at ¶¶ 92, 93.

Defendant Ure's argument that the Tribe has failed to allege discrimination on his part, both as an individual actor and as a member (indeed, likely a principal architect) of the conspiratorial scheme designed to keep Tabby Mountain out of the Tribe's hands cannot stand in light of the facts extracted from the Tribe's Complaint and highlighted above. Not only has the Tribe shown circumstantial and direct evidence of discrimination, but it has highlighted Defendant Ure's participation in that discrimination clearly and directly.

IV. **THE TRIBE HAS PLEADED WITH PARTICULARITY SUFFICIENT FACTS SUPPORTING ITS CLAIMS FOR CONSPIRACY COMMITTED BY THE DEFENDANTS, INCLUDING DEFENDANT URE**

Defendant Ure asserts that the Tribe has failed to plead sufficient facts supporting allegations of conspiracy against him. Motion to Dismiss at § 4. This section of Defendant Ure's motion to dismiss is brief and conclusory. It starts by mentioning that the Tribe's Complaint "alleges the Defendants participated in the conspiracy to have SITLA violate federal and state law, and to discriminate based on race, ethnicity, national origin, and religion." Next, Defendant Ure lists the elements of conspiracy, noting that an unlawful act is one of its essential elements. Then, the motion to dismiss makes a conclusory assertion that "[t]he Tribe cannot show an unlawful act."[2]

Section 4 of Defendant's brief is wholly dependent on that broad assertion, but as the Tribe discussed above, the assertion is plainly wrong, and in fact, Defendant does not provide any argument in support of his assertion—at most he only claims that he will be able, on the merits, to defeat one of the Tribe's claims of his many unlawful acts, and his argument on the merits of that issue is based upon anemic sophistry. He claims:

---

[2] Defendant Ure makes the exact same merits argument, without even attempting to disguise that he is arguing the merits, in section 5 of his brief. His argument in section 5 must be rejected for the same reason as his argument in Section 4 must be rejected.

> The governing regulations allow SITLA to suspend a sale prior to the finalization of the certificate of same. SITLA, through former Director Ure, exercised that discretion to address the trust beneficiaries concern regarding the appraisal and the length of time the property was advertised."

That would be a merits argument for Defendant (and not a very strong merits argument at that) -- that Defendant Ure had SITLA claim they suspended the sale based on facially legitimate reasons—even though the Tribe alleges, based upon strong evidence, that those reasons were pretext. Defendant's flimsy merits argument is not a basis for dismissal. Contrary to Defendant's implicit assertion, the state regulation must be read in conjunction with the United State and State Constitution and the state and federal laws which bar discrimination. Even if SITLA has "discretion," (which it does not here, for reasons also described in the Tribe's complaint) it cannot exercise that "discretion" upon discrimination based upon race, national origin, ethnicity, or religion.

The Tribe's Complaint alleges multiple unlawful acts, including but not limited to civil rights and Constitutional violations based on intentional discrimination (discussed at length above), breach of contract, breach of trust, and fraud. Defendant Ure does not make any attempt to discredit the Tribe's specific allegations, instead just generally asserting that the Tribe does not allege <u>any</u> unlawful act in its Complaint. Defendant Ure's naked assertion that SITLA was permitted to suspend the sale in order to "address the trust beneficiaries concern" is the very excuse the Tribe's Complaint takes care to point out was a pretext to hide illegal, discriminatory animus— a common tactic utilized by civil rights defendants (as discussed at length above). In addition to alleging multiple unlawful acts arising from this intentional discrimination, the Tribe's Complaint alleges all other elements of conspiracy, as discussed below.

**A. The Tribe's Complaint, in Addition to Pleading Multiple Unlawful Acts on the Part of the Conspiratorial Actors, Pleaded the Remaining Elements of Conspiracy**

9

In Utah, "[t]o prove a civil conspiracy, plaintiff must show the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Israel Pagan Est. v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

The Tribe's Complaint alleges each of these elements with particularity. Specifically, for each of the following:

- "a combination of two or more persons[;]"

The Tribe's Complaint at ¶ 2 alleges that multiple "State of Utah…officers and SITLA officers," upon learning that the Tribe had won the bid, "did not want to sell the land to Indians, and they immediately began working behind the scenes to try to figure out a way to stop the sale to Indians." The Tribe's Complaint at ¶ 3 alleges that all named Defendants, including Defendant Ure, "worked together to concoct a public record to hide their discrimination based upon race, ethnicity, national origin, and religion. … SITLA, DNR, and others who were in on the conspiracy knew DNR's bid was a sham, because DNR did not have sufficient money to meet the required and primary bidding condition—that the bidder could pay the amount bid." Paragraphs 4 and 105 explain how a whistleblower came forward in 2022 and confirmed that all Defendants named in the Tribe's Complaint (i.e., a combination of two or more persons) were in on the conspiracy.

- "an object to be accomplished[;]"

The Tribe's Complaint at ¶¶ 2 and 3 alleges that the object of the Defendants' conspiracy was to keep Tabby Mountain out of the hands of the highest and only legitimate bidder because they were Indians. Paragraphs 56, 64, 73, 79, 96, and 108 allege that the correlative object was to ensure DNR got the land, such that it remained in state possession, regardless of whether the transfer to DNR would be supported by adequate consideration and regardless of whether it was in the trust beneficiaries' best interests.

10

- "a meeting of the minds on the object or course of action;"

For this element of conspiracy, "it is not necessary…to prove that the parties actually came together and entered into a formal agreement to do the acts complained of by direct evidence. Instead, conspiracy may be inferred from circumstantial evidence, including the nature of the act done, the relations of the parties, and the interests of the alleged conspirators." *Israel Pagan Est. v. Cannon*, 746 P.2d 785, 791 (Utah Ct. App. 1987) (internal citations omitted). The Tribe's Complaint, taken as a whole, and in particular at ¶¶ 2, 3, 13, 15, 51, 52, 56, 64, 73, 76, 79, 80, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 96, 97, 102, 107, 108, 166, and 169, create the strong inference that the Defendants—as soon as they figured out who the high bidder was—met in mind to create a scheme, reaching up to the highest levels of state government, designed to keep Tabby Mountain out of the hands of the Indians. Confirming this strong inference created by circumstantial evidence is the direct evidence of this fact alleged in ¶¶ 4 and 105, which explains how, in 2022, a whistleblower came forward who confirmed that there was a meeting of the minds to conspire against the Tribe from acquiring Tabby Mountain. This whistleblower was a witness to the events alleged in the Tribe's complaint, and "[o]n August 30, 2022, … filed a formal complaint alleging that the bid sale was rigged from the beginning to prevent the Tribe from acquiring Tabby Mountain." Tribe's Complaint at ¶ 105. The Tribe's Complaint at ¶ 106 alleges that the next day, "[o]n August 31, 2022, the Utah Land Trust Protection and Advocacy Office, retaliated against [whistleblower] by firing him," further solidifying that there was indeed a meeting of the minds which he had exposed.

- "one or more unlawful, overt acts[;]"

The Tribe alleges the following unlawful acts: (i) intentional and illegal discrimination, (ii) violation of civil rights, (iii) violation of Constitutional rights, (iv) breach of contract, (v) fraud, and (vi) breach of trust.

11

- "and damages as a proximate result thereof."

Finally, the Tribe's Complaint at ¶¶ 23, 24, 25, 26, 27, 28, 29, 30, 41, 42, 43, 112, 113, 114, 115, 116, 144, 145, 146, and 171 describe how the Tribe lost something even beyond and in addition to monetary damages as a result of the conspiratorial scheme to deprive it of its aboriginal homelands. It lost the irreplaceable opportunity to practice its religious and spiritual beliefs at Tabby Mountain, to hunt, forage, and collect natural resources, and the unique realty itself. It lost the opportunity to unite the mineral estate—which it owns—with the surface estate, which it fairly purchased—but for the Defendants' racist scheme to prevent that reunification. It also lost the opportunity to add a parcel of land—teaming with life—to its communally held resources, held in trust by the United States and designed to benefit all Tribal members equally.

V. **DEFENDANTS' CURSORY ARGUMENT THAT THE TRIBE WAS REQUIRED TO SUBMIT SOME UNSPECIFIED CLAIMS TO THE STATE BEFORE FILING SUIT IN THIS COURT SHOULD BE REJECTED OR TABLED PENDING STATE REVIEW OF THE ALLEGEDLY REQUIRED STATE NOTICE OF CLAIM.**

In Section 6 of this brief, Defendant argues that the Tribe was required to submit some claims as state tort claims before the Tribe filed suit, and the claims should be dismissed because, he asserts, the claims would be barred by the statute of limitations if submitted now. Other defendants make the same argument. For the reasons discussed above, the claims regarding ongoing state wrongs would not be barred if submitted now. The Tribe does not agree that any of significant claim had to be submitted, but to eliminate this issue, the tribe will submit them. As is obvious from all three briefs of Defendants, , the State will deny the claims. The Tribe's position is that the Court should hold in abeyance any decision on those claims pending submission and rejection of the claims.

Dated: October 16, 2023.

PATTERSON EARNHART REAL BIRD

         & WILSON LLP

         */s/ Michelle E. Long*
         Michelle E. Long
         1900 Plaza Drive
         Louisville, Colorado 80027
         Phone: (303) 926.5292
         Facsimile: (303) 926.5293
         Email: mlong@nativelawgroup.com

J. PRESTON STIEFF LAW OFFICES, LLC

         */s/*
         J. Preston Stieff (4764)
         110 South Regent Street, Suite 200
         Salt Lake City, Utah 84111
         Telephone: (801) 366-6002
         Email: jps@StieffLaw.com

         *Counsel for Plaintiff*