J. Preston Stieff (4764)
J. PRESTON STIEFF LAW OFFICES, LLC
311 South State Street, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 366-6002
Email: jps@Stiefflaw.com

Jeremy J. Patterson, *Pro Hac Vice Admission*
Linda F. Cooper, *Pro Hac Vice Admission*
Michelle E. Long, *Pro Hac Vice Admission*
PATTERSON EARNHART REAL BIRD & WILSON LLP
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 926-5292
Facsimile: (303) 926-5293
Email: jpatterson@nativelawgroup.com
Email: lcooper@nativelawgroup.com
Email: mlong@nativelawgroup.com

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>David Ure, Michelle McConkie, Michael Styler, Spencer Cox, Utah School and Institutional Trust Lands Administration,<br><br>Defendants. | RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS SITLA AND MCCONKIE<br><br>Civil Case No. 2:23-CV-DBB |

## CONTENTS

INTRODUCTION ................................................................................................................ 1

I.     The Tribe is a person under 42 U.S.C. § 1983. ....................................................... 1

II.    Defendants SITLA and McConkie are both subject to suit under §§ 1981-85................... 2

III.   Defendants' undeveloped argument that a trust beneficiary cannot sue for breach of trust should be rejected. ................................................................................................. 4

IV.    Defendants argument that the Tribe has failed to allege a conspiracy and has failed to plead fraud must be rejected. ................................................................................... 5

V.     Defendant's undeveloped argument that a Court cannot order specific performance is not a basis for dismissal of any claim. ............................................................................ 5

VI.    Defendants' argument for dismissal of the Tribe's contract claims must be rejected because the Tribe has pled a claim for breach of contract ........................................... 6

VII.   The Tribe's Federal and State Law Claims Are Not Barred by the Relevant Statutes of Limitations ......................................................................................................... 7

     A.    Statute of Limitations on Federal claims .......................................................... 8
       1.    Four Years .............................................................................................. 9
       2.    Accrual .................................................................................................. 9
       3.    Applicability of Equitable Doctrines would also prevent dismissal based upon the statute of limitations. ................................................................... 14
       4.    Continuing Violation Doctrine ................................................................. 19
     B.    State Statute of Limitations ........................................................................... 21
       1.    Fraud .................................................................................................... 21
       2.    Breach of Contract ................................................................................. 23
       3.    Breach of Fiduciary Duty ........................................................................ 23

Conclusion ........................................................................................................................ 25

Page(s)

Cases

*Anderson v. Dean Witter Reynolds, Inc.*,
  841 P.2d 742 (Utah Ct. App. 1992) ........................................................................... 4

*Anderton v. Boren*,
  2017 UT App 232, 414 P.3d 508 ................................................................................ 4

*Baker v. Bd. of Regents of Kans.*,
  991 F.2d 628 (10th Cir. 1993) ................................................................................... 9

*Bell v. City of Topeka, KS*,
  279 F. App'x 689 (10th Cir. 2008) ........................................................................... 15

*Blake v. Kline*,
  612 F.2d 718 (3d Cir. 1979) ...................................................................................... 2

*Braxton v. Zavaras*,
  614 F.3d 1156 (10th Cir. 2010) ................................................................................. 15

*Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*,
  141 F. App'x 714 (10th Cir. 2005) ........................................................................... 19

*Doe v. Cmty. Coll. of Baltimore Cnty.*,
  595 F. Supp. 3d 392 (D. Md. 2022) ............................................................................ 3

*Edelman v. Jordan*,
  415 U.S. 651 (1974) .................................................................................................. 5

*Ellul v. Congregation of Christian Bros.*,
  774 F.3d 791 (2d Cir. 2014) .................................................................................... 16

*Fernandez v. Clean House*, LLC,
  883 F.3d 1296 (10th Cir. 2018) ................................................................................. 8

*Fitzgerald v. Spearhead Invs., LLC*,
  2021 UT 34, 493 P.3d 644 ............................................................................... Passim

*Glover v. Gartman*,
  899 F. Supp. 2d 1115 (D.N.M. 2012) .......................................................................... 7

*Glus v. Brooklyn E. Dist. Terminal*,
  359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) .................................................. 15

*Gonzalez v. Feinerman*,
  663 F.3d 311 (7th Cir. 2011) ..................................................................................... 3

*Helfrich v. Adams*,
  2013 UT App 37, 299 P.3d 2 ................................................................................... 23

*Herrera v. City of Espanola*,
  32 F.4th 980 (10th Cir. 2022) .......................................................................... Passim

*Jenkins v. Chance*,
  762 F. App'x 450 (10th Cir. 2019) ......................................................... 11, 12, 13, 14

*Mismash v. Murray City*,
  730 F.2d 1366 (10th Cir. 1984) ................................................................................. 9

*National Title Agency LLC v. JPMorgan Chase Bank NA,*
  2018 UT App 145, 429 P.3d 758 ................................................................. 23
*Nelson v. Geringer,*
  295 F.3d 1082 (10th Cir. 2002) ................................................................. 7
*O'Connor v. St. John's Coll.,*
  290 F. App'x 137 (10th Cir. 2008) ............................................................ 7
*Ram Ditta v. Maryland Nat. Cap. Park & Plan. Comm'n,*
  822 F.2d 456 (4th Cir. 1987) ................................................................. 2, 3
*Rice v. Granite Sch. Dist.,*
  23 Utah 2d 22, 456 P.2d 159 (1969) ................................................... 15, 22
*Roberts v. Barreras,*
  484 F.3d 1236 (10th Cir. 2007) ............................................................... 15
*Russell Packard Dev.,*
  108 P.3d ......................................................................... 16, 17, 21, 24
*Sierra Club v. Okla. Gas & Elec. Co.,*
  816 F.3d 666 (10th Cir. 2016) ................................................................. 7
*Smith v. City of Enid By & Through Enid City Comm'n,*
  149 F.3d 1151 (10th Cir. 1998) ............................................................. 9, 14
*State, Dep't of Hum. Servs. ex rel. Parker v. Irizarry,*
  945 P.2d 676 (Utah 1997) ...................................................................... 6
*Tiberi v. Cigna Corp.,*
  89 F.3d 1423 (10th Cir. 1996) ........................................................... 19, 20
*Val Peterson Inc. v. Tennant Metals Pty. Ltd.,*
  2023 UT App 115 ............................................................................... 23

Statutes

42 U.S.C. § 1981 ................................................................................ 7, 9
42 U.S.C. § 1983 .................................................................................. 7
42 U.S.C. § 1982 ................................................................................ 7, 9
42 U.S.C. § 1985 ................................................................................ 7, 9
42 U.S.C. § 2000d .............................................................................. 7, 9
Utah Code § 78B-2-305(3) ................................................................. 21, 22
Utah Code § 78B-2-307 .......................................................... 9, 16, 21, 22, 24
Utah Code § 78B-2-309 .......................................................................... 23

**INTRODUCTION**

Since early 2019, the Utah School and Institutional Trust Lands Administration (SITLA), Utah Department of Natural Resources (DNR), officers of each, and the political branches in the State of Utah have been engaged in an ongoing conspiracy to discriminatorily prevent the Ute Indian Tribe (Tribe) from purchasing a parcel of land on the Tribe's Uintah and Ouray Reservation (Reservation). This suit seeks to properly remedy that ongoing wrong.

Early in 2018, SITLA's Board unanimously determined that it was in the best interest of SITLA and its trust beneficiaries to sell the portions of the surface estate in Tabby Mountain which SITLA owned (hereinafter Tabby Mountain).

But when the Tribe was the highest bidder for that property, the State Executive Branch and SITLA worked behind the scenes to 1) prevent the sale of the property to the Tribe, and 2) concoct a public-facing record through which they, knowingly falsely, misled the Tribe and SITLA's trust beneficiaries by claiming that they were "suspending" the sale to address two non-discriminatory concerns.

Based upon information from a State whistleblower, they were caught.

Now, each of the Defendants in this case submits a shotgun motion to dismiss. Many of the Defendants' innumerable arguments are no more than a sentence or two, often misstating immaterial legal rules, and for every one of their arguments, they are misstating the Tribe's claims.

In their partial motion to dismiss, Defendants SITLA and McConkie primarily attempt to re-write the Tribe's claims, to dodge the fact that their wrongful discrimination is still ongoing and still remediable.

**I.    THE TRIBE IS A PERSON UNDER 42 U.S.C. § 1983.**

In Section 1.1 of their motion to dismiss, Defendants make the same argument that Defendant Ure made in section 1 of his motion to dismiss. The Tribe incorporates by reference its

1

briefing which shows that Defendant Ure (and Defendant SITLA and McConkie's argument must be rejected.

## II.   DEFENDANTS SITLA AND MCCONKIE ARE BOTH SUBJECT TO SUIT UNDER §§ 1981-85

In Section 1.2 of their brief, Defendants assert that SITLA is not a person capable of being sued under §§1981-1983, because, they claim, it is part of the State government.

Its "argument" is that because a state statute provides that SITLA is "within the state government," "that spells the end of the Tribe's claim." They are wrong. Even if we assumed all of their other legal points (many of which are wrong), there attempt to solely rely upon a state statute is insufficient. "The question of whether an agency is the alter ego of a state and thereby immune from federal jurisdiction under the eleventh amendment is a question of federal, not state, law." *Blake v. Kline*, 612 F.2d 718, 722 (3d Cir. 1979). *See also Ram Ditta v. Maryland Nat. Cap. Park & Plan. Comm'n*, 822 F.2d 456, 457–58 (4th Cir. 1987) (same). As with many of the undeveloped or underdeveloped arguments that all of the Defendants in this case made in their briefs, if they have an argument, it is not made in their brief. The sole argument they make must be rejected. That is the logical consequence of "briefs" which take a shotgun approach, and only devote a paragraph or two to a complex legal issue.

Notably Defendants' argument here is also contrary to Defendant Cox's argument, and contrary to the Tribe's allegation that SITLA is "an independent administrative agency." Compl. ¶10. In Section 1 of his argument, Governor Cox goes much further, asserting that he, the head of the sovereign state, has **no** control over SITLA. Defendants Cox and SITLA should fight that issue out, without putting the Tribe in the middle.

> While many factors must be considered in determining whether an entity is the *alter ego* of the state, it is generally held that the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded. We agree that this is a most important consideration for when the action is in essence one for the recovery of money from the state, the state is the real,

2

> substantial party in interest.  Other important inquiries underlying our consideration of eleventh amendment immunity include, but are not necessarily limited to, whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law.

*Ram Ditta*, 822 F.2d at 457–58, recently quoted with approval, *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 399 (D. Md. 2022).

In the current case, the Tribe is not seeking monetary damages against SITLA, but in any case, the remedy the Tribe seeks from SITLA would not be extracted from the State.  SITLA is an independent entity and its assets are segregated from the State and held in trust.  It has its own leadership which would be required to comply with this Court's remedial orders.

The Court therefore must deny SITLA's undeveloped assertion for dismissal based upon words in a single state statute, pending discovery relevant the legal test discussed above.

Although not contained in their own caption for section 1.2 of their brief, section 1.2 of that brief also contains a two paragraph assertion that the claims against Director McConkie should be dismissed because she is only named once in the complaint.  That argument is disingenuous.  First, it ignores the fact that the Tribe more than adequately alleges she is now a participant in the ongoing wrongful conspiracy.  Ms. McConkie is the current director of the agency that is current discriminating against the Tribe.  The Tribe discusses this in detail in section throughout its response to the similar motion to dismiss against Defendants Cox and Styler and in section IV of its response to Defendant Ure.  In response to Governor Cox' similar argument, the Tribe discussed that an officer who "would be responsible for ensuring that any … relief is carried out" cannot be dismissed on a rule 12 motion.  Response to Cox M. to Dism. §1 (quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).  And in response to Defendant Ure, the Tribe discussed that conspirators are responsible for the actions of all conspirators.

3

If Director McConkie had stopped the ongoing discrimination when she took office, perhaps she would have had an argument. But she cannot both support the ongoing discrimination and claim she cannot be sued. So, again as similar to the Tribe's response to Defendant Cox, the Tribe notes that it is disappointing that, instead of reviewing the Tribe's complaint and deciding to remedy the ongoing wrongful discrimination by her agency and the wrongful breach of trust responsibilities to trust beneficiaries, Defendant McConkie chooses to affirmatively act to continue the wrongful discrimination.

III.    **DEFENDANTS' UNDEVELOPED ARGUMENT THAT A TRUST BENEFICIARY CANNOT SUE FOR BREACH OF TRUST SHOULD BE REJECTED.**

In Section 3.1 of their brief, Defendants do not contest that the Tribe is bring an action for breach of trust on behalf of trust beneficiaries.[1] The Tribe's claim is based upon both state and federal laws[2] which impose the trust obligations on SITLA's Board. Defendants claim that trust beneficiaries cannot bring suit for breach of trust. The law in Utah is that a trust beneficiary can bring suit for breach of trust. *E.g.*, *Anderton v. Boren*, 2017 UT App 232, ¶ 20, 414 P.3d 508, 514, *Anderson v. Dean Witter Reynolds, Inc.*, 841 P.2d 742, 745 (Utah Ct. App. 1992). As with many of Defendants other undeveloped shotgun arguments, the argument Defendants make is insufficient.

Defendants' argument also, and notably, is based upon exact scheme to prevent the Tribe from bringing suit which the Tribe. That is, Defendants admit that if SITLA had issued a final decision not to sell the land, the Tribe would have been able to challenge that decision in Court,

---

[1] Defendants do make that argument in a different section, claiming the Tribe cannot bring actions under parens patriae. The Tribe's substantive response to that argument is contained in its response to Director Ure's motion.

[2] Defendants also do not discuss how Utah statutes can bar suit for violation of federal laws that created the trust.

but Defendants argue that because they are only "suspending" the sale, the Tribe has no right of action.

IV.     **DEFENDANTS ARGUMENT THAT THE TRIBE HAS FAILED TO ALLEGE A CONSPIRACY AND HAS FAILED TO PLEAD FRAUD MUST BE REJECTED.**

In Sections 3.2. and 3.3. Defendants make the same arguments for dismissal of the conspiracy charge and dismissal of the fraud charge as are made by other Defendants. The Tribe incorporates herein by reference its responses to those arguments.

V.      **DEFENDANT'S UNDEVELOPED ARGUMENT THAT A COURT CANNOT ORDER SPECIFIC PERFORMANCE IS NOT A BASIS FOR DISMISSAL OF ANY CLAIM.**

In Count II of its complaint, the Tribe seeks appropriate declaratory and injunctive relief, and the Tribe discussed that but for the Defendants' ongoing wrongful discrimination, the sale would have been completed. In Section 1.3 of their brief, Defendants make a broad assertion that a Court cannot order specific performance. That is not a basis for dismissal of any claim under Rule 12. The determination of appropriate remedies is for the future, and it likely will be a complex issue if, by then, SITLA and McConkie continues to refuse to stop their ongoing unlawful discrimination. Defendants' argument is also dependent upon their undeveloped assertion that SITLA is the State. As discussed in section II, that argument must be rejected, and Defendants' dependent argument here therefore must also be rejected.

Additionally, Defendant' undeveloped argument is based in whole upon their assertion that *Edelman v. Jordan*, 415 U.S. 651 (1974) supports their broad argument that a Court cannot order specific performance against SITLA. They are wrong. The cited portion of *Edelman* only holds that a party cannot obtain a monetary judgment by merely labelling the claim for money as one for specific performance of the payment of money.

**VI.**     **DEFENDANTS' ARGUMENT FOR DISMISSAL OF THE TRIBE'S CONTRACT CLAIMS MUST BE REJECTED BECAUSE THE TRIBE HAS PLED A CLAIM FOR BREACH OF CONTRACT.**

In its complaint, the Tribe alleges that the elements for a contract were met, and alternatively discusses that even if any element was lacking, it would be provided by estoppel, including estoppel as necessary to remedy the ongoing wrongful discrimination.  Compl. ¶¶174-175.  The Tribe's claim that there is a contract is based upon, inter alia, SITLA's "Offer to Purchase" form, which expressly stated that the bidder was making a binding offer to purpose the property if it was the high bidder (which the Tribe was) and SITLA's requirement that the Tribe submit a $1,000,000, which SITLA expressly stated was non-refundable if the Tribe was the high bidder.  Compl. ¶¶66-68.  In its brief, SITLA now claims that because it later return the $1,000,000 contrary to the contractual forms, its requirement of a binding contractual payment of $1,000,000 is of no import.  That is a weak argument on the merits, and is not at all an argument for dismissal of the contract claims.

In Section 3.4.1 of their shotgun brief, Defendants claim the Tribe's pled claims of estoppel are insufficient based upon a heading that "Promissory estoppel and/or equitably estoppel do not apply against the government."  But in the text that follows that incorrect heading, Defendants admit that Utah cases hold that *those doctrines do apply to the State*.  Whether those equitable doctrines apply in the specific facts here will require a fact-intensive inquiry, after discovery.  *State, Dep't of Hum. Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997) (discussing that the elements of equitable estoppel require fact intensive analysis).

The Tribe's breach of contract claim therefore plainly meets the minimal requirement for pleading a claim.  Defendants' arguments go to the merits, after discovery.

VII.      **THE TRIBE'S FEDERAL AND STATE LAW CLAIMS ARE NOT BARRED BY THE RELEVANT STATUTES OF LIMITATIONS**

In its Complaint, the Tribe brings the following federal claims against all named defendants, including Defendants SITLA and McConkie: (i) denial of Due Process and denial of Equal Protection (United States Constitutional violations brought via 42 U.S.C. § 1983[3]), (ii) violation of 42 U.S.C. § 1981 (brought via 42 U.S.C. § 1983), (iii) violation of 42 U.S.C. § 1982 (brought via 42 U.S.C. 1983), (iv) violation of 42 U.S.C. § 1985, and (v) violation of 42 U.S.C. § 2000d.  It also brings the following state law claims against all named defendants, including Defendants SITLA and McConkie: (i) fraud, (ii) conspiracy to commit fraud, (iii) breach of contract, and (v) breach of trust.

When a defendant raises the statute of limitations defense on a Rule 12(b)(6) motion, courts "accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff to determine whether the statute of limitations has been met." *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 139 (10th Cir. 2008).  Accordingly, the issue may only "be appropriately resolved…when the dates given in the complaint make clear that the right sued upon has been extinguished," *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)) (internal citations and quotations omitted), and only "when the complaint itself admits all the elements of

---

[3] 42 U.S.C. § 1983 provides for a right of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  "Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute." *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1131 (D.N.M. 2012); accord *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).  A plaintiff brings the substantive claim arising under a separate federal law via § 1983.  Defendants McConkie and SITLA are in agreement that Utah's four-year residual statute of limitations governs the Tribe's federal statutory claims brought under § 1981, § 1982, § 1983, § 1985, as well as the Tribe's Constitutional Equal Protection and Due Process claims.

the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House*, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018). "Typically, facts must be developed to support dismissing a case based on the statute of limitations." *Herrera*, 32 F.4th at 991.

### A.   STATUTE OF LIMITATIONS ON FEDERAL CLAIMS.

Defendants McConkie and SITLA claim in their Motion to Dismiss (at § 4) that February 22, 2019—the date that SITLA "issued its press release providing public notice that it had suspended the proposed sale"—or, alternatively, February 26, 2019—the date that the Tribe sent a letter to SITLA expressing its disappointment with SITLA's conduct regarding the land sale— is the date the Plaintiff's federal claims accrued.[4]

At that time, the conspiratorial suspension decision was carefully orchestrated to appear facially neutral, and that disguise worked. The Tribe never had any reason to know, nor did it actually know, that the decision to suspend the sale was motivated by illegal discriminatory animus. That knowledge did not come to light until a whistleblower came forward in 2022. That is when the Tribe possessed the information it needed to perfect its civil rights claims against the Defendants, and it filed its Complaint less than one year later.

Based upon the public facing documents in February 2019, Defendant was supposedly working on the two issues that they noted in their own notice. In hindsight, the Tribe and the public now know that SITLA was lying to them, and SITLA oddly argues the Tribe should have known from day one that SITLA was lying. Hindsight does not retroactively start a statute of limitations.

---

[4] Their argument on this point is in tension with their own argument that even with what the Tribe has learned from the whistleblower and from documents subsequently received in state records requests, the Tribe still does not have sufficient basis to allege a conspiracy to discriminate, and with Defendants argument that the Tribe cannot bring a suit based upon suspension of the sale—that instead, consistent with one premise of their conspiracy, they would (and now do) argue that the Tribe cannot bring suit to stop the wrongful discrimination until SITLA issues a final decision.

1.      **Four Years**

The Tenth Circuit has held (and Defendants McConkie and SITLA agree) that Utah's four-year residual statute of limitations codified at Utah Code Ann. § 78B-2-307(4) applicable to claims for personal injuries applies to § 1983 claims, including (i) claims alleging violations of Equal Protection and Due Process, (ii) claims alleging violations of § 1981, (iii) claims alleging violations of claims alleging violations of § 1982, and (iv) claims alleging violations of § 1985. *Mismash v. Murray City*, 730 F.2d 1366, 1367 (10th Cir. 1984)

2.      **Accrual**

"Determining the accrual date of a § 1983 action…is a question of federal law that is not resolved by reference to state law.  Federal courts analyze accrual based upon common-law tort principles.  Under those principles, a claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.  Put another way, a civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action, or when the plaintiff's right to resort to federal court was perfected." *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022) (all internal citations and quotations omitted; cleaned up; emphasis removed).  "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal citations and quotations omitted).  These same standards of accrual apply to § 2000d claims, see *Baker*, 991 F.2d at 632 ("Federal law controls questions relating to accrual of federal causes of action" and lumping § 2000d accrual analysis in with that for other federal civil rights claims).

Defendants' sole argument is that the Tribe *should have known,* immediately in February 2019 that Defendant's decision to "suspend" was a pretext for preventing sale to the Tribe based

upon illegal discriminatory animus ("should have known" is the legal test where, as here, the Defendants do not assert the Tribe actually knew, nor, of course, did the Tribe allege in its Complaint that it actually know Defendants' press release was pretext).

The Tribe's Complaint explains exactly why the Tribe did not know and could not have known about the discriminatory motive behind the suspension: because the Defendants actively and effectively covered it up during the exact period of time the Defendants claim the limitations period started accruing (i.e., late February 2019).  As noted above, the Court must accept those allegations as true and construe them in the light most favorable to the Tribe.  Specifically, the Tribe's Complaint states:

> "As part of their conspiracy and also to hide their unlawful conspiracy from the Tribe and the public, Defendants created a false public record. Behind the scenes, Defendants conspired that the public record would begin with SITLA publicly giving DNR an opportunity to increase its bid and that DNR would then submit a new bid which exceeded the Tribe's bid. Defendants knew that DNR's new bid would be a sham, because they knew DNR did not have the ability to pay any bid which would match or exceed the Tribe's bid. On February 21, 2019, Director Ure sent a letter to the Tribe stating that DNR countered the Tribe's bid with a higher bid of $50,000,000.00. … Behind the scenes, Defendants conspired that after it received DNR's sham bid, SITLA would promptly suspend the sale, without review of whether DNR could meet its bid. … Defendants knew that public disclosure that DNR's bid was a sham would subject SITLA to claims for breach of fiduciary duty and would subject the Defendants to claims of discrimination, violation of state laws, and other wrongs. Consistent with the conspiracy, after receiving DNR's sham bid, SITLA and Director Ure postponed the sale indefinitely without giving the Tribe or anyone else an opportunity to question DNR's sham bid and without giving the Tribe an opportunity to increase its bid. On February 22, 2019, SITLA issued a press release, providing public notice that it had voted to 'temporarily suspend proceedings on a proposed sale.' SITLA Director Ure sent a letter informing the Tribe that SITLA's Board of Trustees voted to suspend the proposed sale, and falsely stating that the reason for the suspension was for SITLA to address the trust beneficiaries' concerns regarding the accuracy of the appraisal and the length of time that the property was advertised. Prior to learning that the Tribe was the highest true bidder,

SITLA had previously considered and rejected those exact concerns. After it suspended the sale, SITLA did not commission a new appraisal, nor did it authorize a new effort to advertise or take other steps to sell the property."

Tribe's Complaint, ¶¶ 82-95.

In February 2019, the Tribe did not actually know nor have any reason to know that the Defendants' conspiratorial actions to manufacture a sham bid or falsely justify the suspension were holograms designed to trick it. Indeed, the Tribe *was* tricked, all according to Defendants' plan. Defendants McConkie and SITLA cannot now argue that the reason the Tribe's civil rights claims are time-barred is because the Defendants' conspiracy was so convincing—that it worked. To allow that argument is to allow a civil rights violation to succeed based on the wits of the government actors and entities holding the marionette strings; based on how well they trick an audience observing through a limited and obstructed view.

In an analogous case, the Tenth Circuit held that a plaintiff's § 1983 action accrued upon learning of the governmental actor's "basis" for a seemingly neutral act or, if later, when the plaintiff actually "informed the [Defendant] that it had violated his rights by discontinuing [a governmental] service based on [the illegal purpose that gave rise to his § 1983 claim]." *Herrera v. City of Espanola*, 32 F.4th 980, 992 (10th Cir. 2022). In *Herrera,* the city cut off Defendant's water, and later that same day Defendant found out why his water was cut off. He claimed that the reason was wrongful discrimination, and the Tenth Circuit held that his claim accrued when he found out the allegedly wrongful reason for the water being cut.

In another § 1983 case, the Tenth Circuit held that, in determining the accrual date, it "focus[es] on whether the plaintiff <u>knew of facts</u> that would put a reasonable person on notice that <u>wrongful</u> conduct caused the harm." *Jenkins v. Chance*, 762 F. App'x 450, 455 (10th Cir. 2019) (emphasis added). In that case, the plaintiffs submitted a detailed request to a coroner providing

11

extensive information regarding their son's death so they could confirm whether he died by a police officer's taser.  The Tenth Circuit focused on how detailed the request was: it was "supported…with extensive evidence, some of which [the plaintiffs] quoted at length, including the Taser's product manual and video-recorded interviews of all four individual defendants."  *Id*. at 452.  The request "asked the Coroner to reopen the investigation and both the Coroner and Dr. Burson to amend the cause of death 'if there is doubt as to whether or not the Taser X2 had a part in the firing of the rifle'" that led to their son's death.  *Id*. (quoting the request).  "They also asked for reconsideration of references to [their son's] suicidal history, claiming there was no evidence of such a history."  *Id*.

The Tenth Circuit found that the request "indisputably shows the [plaintiff's] had sufficient factual knowledge to file § 1983 claims against all five defendants no later than [the date the request was made]. In the Request, they cited scholarly works explaining that electrical burns result in skin injury at the 'points of contact to the electrical source,' and that exposure to a temperature of '65°C for two seconds' is 'sufficient to produce burns.' They asserted '[t]he Taser prongs undoubtedly arched [sic] for the full five seconds preprogrammed into the Taser-X-2 as recalled by Deputy Arnone and Deputy Heidinger on the interview videos.' They then posited the thermal burn to [their son's] leg could have occurred if a taser prong or the electricity arcing from it to [their son's] skin reached 65°C."  *Id*. (quoting the request; internal citations thereto omitted).  The Tenth Circuit continued its discussion for *five more paragraphs*, reciting the extensive evidence cited by the plaintiffs in their request and the extensive case the plaintiffs made for their request when it was submitted.  *See id*. at 455-57.  The Court said: "All of these observations, allegations, and assertions clearly demark <u>the critical tipping point</u>: as of the date they filed their Request, October 21, 2015, the [plaintiffs] knew of facts that would put a reasonable person on notice that

wrongful conduct caused the harm." *Jenkins*, 762 F. App'x  at 455 (internal citations and quotations omitted; emphasis added).

Here, though the Tribe may have suspected wrongdoing in 2019, it did not know or have any reason to know of the illegal basis behind the Defendants' decision to suspend the Tabby Mountain sale because all it had before it was the government actors' facially neutral act: the decision to suspend based on alleged deficiencies in the appraisal and marketing period purportedly raised by the trust beneficiaries.  This differs from the plaintiffs in *Herrera* because the Tribe did not know the discriminatory *basis* behind that facially neutral act (required to trigger the accrual date) until a whistleblower came forward in 2022 and informed the Tribe that the decision was motivated by discriminatory animus.  On August 30, 2022, the whistleblower, who was then the Director of the Utah Land Trust Protection and Advocacy Office and was a first-hand witness to the events described in the Tribe's Complaint, filed a formal complaint alleging that the bid sale was rigged from the beginning to prevent the Tribe from acquiring Tabby Mountain. Tribe's Complaint ¶ 105.  In 2022, the whistleblower informed the Tribe that everything—DNR's original $41,000,000.00 bid, DNR's following $50,000,000.00 bid, and SITLA's pretextual reasons to suspend the sale based on the marketing time and appraisal—was a sham designed to keep the land out of the hands of the Indians (who had owned it before SITLA, since time immemorial).

Shortly after learning this information from the whistleblower, the Tribe submitted eight GRAMA requests to various state and local government agencies and learned from the responses (received in late 2022 and early 2023) that the pretextual justifications to suspend the sale—i.e., because the appraisal and marketing period were somehow deficient—were falsities conjured to disguise the true reason behind suspension.  The documents and information received from the

GRAMA requests did not show SITLA working to remedy these alleged deficiencies by commissioning a different appraisal or putting the property on the market for a longer period of time. The Tribe emphasized this point in its Complaint, stating:

> After it suspended the sale, SITLA did not commission a new appraisal, nor did it authorize a new effort to advertise or take other steps to sell the property. Although SITLA did not take action to remarket the property, it did, after February 22, 2019, consider options for attempting to permanently transfer rights in the land to DNR without competitive bidding.

Tribe's Complaint, ¶¶ 95-96.

Indeed, it was not until the Tribe received back the documents resulting from its GRAMA requests that the "critical tipping point" of accrual, *Jenkins*, 762 F. App'x at 455, arrived. That is when the Tribe "knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id.* That is when the Tribe possessed and could make "[a]ll of the[] observations, allegations, and assertions" contained in its Complaint, *Jenkins*, 762 F. App'x at 455, and "when [its] right to resort to federal court was perfected." *Herrera*, 32 F.4th at 990. Critically, that is when the Tribe "kn[ew] or should [have known] that [its]…rights have been violated." *City of Enid*, 149 F.3d at 1154.

Well within four years of both knowing and having reason to know the illegal basis behind the facially neutral (i.e., pretextually justified) decision to suspend, the Tribe filed the suit at bar. Accordingly, the Tribe's federal Constitutional and statutory claims brought via § 1983 are not time-barred based on the dates set out in the Tribe's Complaint.

### 3. Applicability of Equitable Doctrines would also prevent dismissal based upon the statute of limitations.

Even if the Tribe's Complaint affirmatively established that it filed its § 1983 claims outside a statute of limitations period (and it does not), two equitable doctrines would each supply an independent basis for equitable tolling of the statute such that these claims are not time-barred.

More immediately, because these doctrines raise highly fact-dependent legal questions, their potential application to this case makes Defendants' Motion to Dismiss the Tribe's § 1983 claims on the basis of the statute of limitations inappropriate and disallowable at this pre-discovery stage of litigation.

"In a § 1983 action, state law governs issues regarding the statute of limitations and tolling[.]" *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010).  This preserves the ability of a civil rights plaintiff to invoke two equitable state-law tolling doctrines, equitable discovery and equitable estoppel, in § 1983 actions.  *E.g., Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (applying applicable state law doctrine of equitable discovery (also known simply as equitable tolling) to § 1983 civil rights claim) and *Bell v. City of Topeka, KS*, 279 F. App'x 689, 692 (10th Cir. 2008) (applying applicable state law doctrine of equitable estoppel to § 1983 civil rights claim).

The "'maxim that no man may take advantage of his own wrong'…is deeply rooted in American jurisprudence, and guides [the] statute of limitations tolling jurisprudence in Utah." *Fitzgerald*, 493 P.3d at 650 (quoting *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)).  Utah courts "apply the equitable [statute of limitation] doctrines when [they] recognize that a defendant has unjustly 'lull[ed]' an adversary into a false sense of security thereby subjecting his claim to the bar of limitations' and is then 'heard to plead that very delay as a defense to the action when brought.'"  *Fitzgerald*, 493 P.3d at 650 (quoting *Rice v. Granite Sch. Dist.*, 23 Utah 2d 22, 456 P.2d 159, 163 (1969)).

### a.    Equitable Discovery

Even if the Tribe did know or have reason to know of its § 1983 claims at the time the suspension decision was rendered (it did not), the doctrine of equitable discovery would apply to toll the statute of limitations applicable to those claims such that they are not now time-barred.

Under Utah law, the doctrine of equitable discovery is "invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment." *Fitzgerald v. Spearhead Invs., LLC*, 2021 UT 34, ¶ 16, 493 P.3d 644, 649–50 (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014)).  The "equitable discovery rule may operate to toll an otherwise fixed statute of limitations period to the following two situations: (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."[5]  *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741, 747 (internal quotations and citations omitted).

As discussed above, the Tribe's complaint alleges facts which bring this matter within the doctrine of equitably discovery.  It discusses that Defendants wrongly claimed they were only suspending the sale, but the whistleblower much later told the Tribe that the State's claim was pretext, that the actual reason was to prevent sale to the Tribe.

In determining whether the first of these exceptions applies, a court must "evaluat[e] the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct. Given the rule's genesis in estoppel, application of the concealment version of the discovery rule requires a demonstration that the party seeking to exercise the rule has acted in a reasonable and diligent manner. In order to meet this reasonableness standard, a plaintiff must demonstrate that, given the defendant's actions, a reasonable plaintiff would not have brought suit within the

---

[5] These equitable exceptions apply only where a statute of limitations does not, by its own terms, already account for such circumstances—i.e., where a statute of limitations lacks a statutory discovery rule.  *Russell Packard Dev.*, 108 P.3d at 747.  In this case, the applicable statute, Utah Code Ann. § 78B-2-307(4), does not contain a statutory discovery rule, so these exception are available to Plaintiff.

statutory period." *Id*. (internal quotations and citations omitted).  Whether the doctrine applies requires detailed analysis of the facts. *Id.*

Whether that doctrine ultimately applies is a fact-intensive inquire for a later date.  For now, it is more than sufficient basis to deny Defendants' motion to dismiss.

### b.  Equitable Estoppel

Even if the Tribe did know or have reason to know of its § 1983 claims at the time the suspension decision was rendered (it did not), the doctrine of equitable estoppel would apply to toll the statute of limitations applicable to those claims such that they are not now time-barred. That doctrine "may be invoked even when the plaintiff is aware of the facts giving rise to a cause of action." *Fitzgerald v. Spearhead Invs., LLC*, 2021 UT 34, ¶ 19, 493 P.3d 644, 650.

As with equitable discovery, "the equitable estoppel doctrine comes from the maxim that no man may take advantage of his own wrong."  *Id*. (internal citations and quotations omitted). "The doctrine operates to toll a statute of limitations if a plaintiff can establish three elements: (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." *Id*.

Application of this standard is fact-intensive.  *Id.*  Utah courts have shown hesitance "to list every statement, admission, act, or failure to act that is inconsistent with a claim later asserted." *Id at* 651 (internal citations and quotation omitted), but instead examine the facts on a case-by-case basis.

A court must "evaluate the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct.  For example, equitable estoppel requires *reasonable* action or

inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act." *Fitzgerald*, 493 P.3d at 651 (internal citations and quotation omitted; emphasis in original).

As to the first element, the Defendants (i) failed to sell Tabby Mountain to the Tribe as the winning bidder, (ii) conspired to create a sham bid that exceeded the Tribe's, (iii) suspended the sale, *and* (iv) stated, in writing, that the reason behind the suspension was because the appraisal and marketing period were deficient, thereby implying that the suspension decision was made in accordance with the fiduciary obligations owed to the trust. These failures to act, acts, and statement each independently meet the first prong. Relatedly, the Tribe's failure to sue the Defendants for the suspension in 2019 was reasonable: it *believed* the word of government actors. Because there existed a fiduciary obligation to maximize the value to the trust, the Tribe's failure to sue for a decision to suspend ostensibly based on procedural defects in maximizing that revenue was entirely reasonable: it was reliance on the Defendants' honest adherence to their foundational government obligations. Finally, the Tribe suffered injury and would continue to suffer injury if the Defendants were allowed to contradict and repudiate their failure to sell the land, the suspension, and the reasons for the suspension by either admitting the land was not sold to the Tribe due to discriminatory animus, or trying to permanently transfer rights in the land to DNR without competitive bidding (which it did, following the sham suspension, Tribe's Complaint ¶ 96).

For these reasons, even if this Court found that the Tribe's claims accrued in 2019 (they did not), and even if this Court found that the Tribe was aware of the facts giving rise to a cause of action in 2019 (it did not), the doctrine of equitable estoppel would still prevent the Tribe's § 1983 claims from being time-barred. Alternatively, it would be inappropriate to grant Defendants'

Motion to Dismiss the Tribe's § 1983 claims at this pre-discovery stage of litigation because the fact-intensive inquiry required for application of the equitable estoppel rule has not occurred.

### 4.    Continuing Violation Doctrine

In the Tenth Circuit, the "continuing violation doctrine, as a general principle of the federal common law, is available to a § 1983 litigant." *Herrera*, 32 F.4th at 994. It is "an equitable principle." *Id*. at 993 (internal quotations and citation omitted). The doctrine emerged from the idea that certain claims are "based on the cumulative effect of individual acts… such that if any acts occurred within the statute of limitations, the entire course of conduct can be pursued in the action. Put another way, the continuing violation doctrine applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*, as opposed to conduct that is a discrete unlawful act." *Id*. (internal quotations and citation omitted). The doctrine is "triggered by continual unlawful acts, not by continual ill effects from the original violation." *Id*. (internal quotations and citation omitted). "The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period." *Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005).

In *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996), the Tenth Circuit found the application of the doctrine appropriate where a defendant told the plaintiff "that it had every intention of maintaining its commitment to [it]" despite that, before then, internally and unknown to the plaintiff, it had considered abandoning its commitments for self-interested reasons. The Tenth Circuit noted that "[t]he evidence further shows that [the defendant] never informed [the plaintiff] of its reservations about [its commitments], leaving him to rely on their assurances. … Looking at this set of facts, it is reasonable to infer that [the plaintiff] held [the defendant] to the…agreement while at the same time taking measures to dissolve it. In turn, the last injurious act

would be [the defendant's] announcement in February 1990 that it was ending the...program." *Tiberi*, 89 F.3d at 1431.

The case at bar bears a striking resemblance to *Tiberi*. Analogous to the program started by the defendants in that case, a decision was made in 2018 to sell Tabby Mountain through a regulatory sale process that required qualified, sealed bids to win and consummate the sale. *See* Tribe's Complaint ¶¶ 67-71. As in *Tiberi*, this demonstrated to the Tribe that the Defendants had every intention of maintaining their commitment to sell the property under the announced program. However, after the Tribe fairly and squarely won the sale as the highest bidder, unbeknownst to the Tribe, the Defendants conspired to abandon their commitment to consummate the sale for self-interested reasons: because they wished to keep the land out of the hands of the Indians. Like the conflicting assurances made by the defendants in *Tiberi*, the press release issued on February 22, 2019 provided public notice that SITLA had voted to "temporarily suspend proceedings on a proposed sale" and a false letter was sent to the Tribe informing it that the sale was suspended so SITLA could address the trust beneficiaries' concerns regarding the accuracy of the appraisal and the length of time that the property was advertised. Tribe's Complaint, ¶ 93. These communications show that, just as in *Tiberi*, "[the defendants] never informed [the plaintiffs] of [their] reservations about [their commitments], leaving [the plaintiffs] to rely on their assurances." *Tiberi*, 89 F.3d at 1431.

The press release and the letter both intimated that the decision to suspend would be temporary—by either implying that by the nature of a suspension generally—or, in the case of the letter, actually stating that the Tribe would be contacted when the decision to move forward with further action on the sale was made. In *Tiberi*, the Tenth Circuit found that the last injurious act in the continuing wrong was an actual announcement by the defendants that, despite all of its

assurances previously, it was indeed ending the program that the plaintiffs were relying upon once and for all.  In this case, though, the Tribe continues to wait.  It continues to wait for the "temporary" years-long suspension to be lifted and for the sale to finally be consummated.  Here, there has been no announcement that the "program" to sell Tabby Mountain has been ended, and, up until the whistleblower came forward and exposed that the Defendants' assurances were shams all along, the Tribe has continued to wait on the assurances made by the Defendants that they would carry through with the sale as originally promised.  The Defendants' conspiracy led the Tribe into limbo—neither consummating the sale nor officially taking it off the table.  In this sense, the continuing wrong continues: for each day that the suspension lingers; for each day that modern-day racism prevents the Tribe and its members from enjoying the many benefits of their sacred homelands.

### B.   STATE STATUTE OF LIMITATIONS

#### 1.   Fraud

Utah Code § 78B-2-305(3) provides the state law statute of limitations for fraud, providing that there is a three-year statute "for relief on the ground of fraud or mistake; except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."  As the Supreme Court of Utah explained in *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741, 746:

> "[W]e have acknowledged two narrow settings in which a statute of limitations may be tolled until the discovery of facts forming the basis for the cause of action. We refer to the rule governing this exception to the usual application of the statute of limitations as the 'discovery rule.' The first setting in which the discovery rule applies is the most obvious and involves situations in which a relevant statute of limitations, by its own terms, mandates application of the discovery rule. … An example of a statutory discovery rule is found in the three-year statute of limitations governing claims based on fraud or mistake, which provides that a cause of action will

not accrue 'until the discovery by the aggrieved party of the facts constituting the fraud or mistake.'  As is evident from this statutory directive, 'the question is not *whether* the discovery rule applies—it does by virtue of the statute,' but rather, *when* a plaintiff either discovered or should have discovered his or her cause of action, thereby triggering the running of the statute of limitations."  (internal quotations and citations omitted; quoting in part an earlier but identical version of Utah Code § 78B-2-305(3); emphasis in original).

The fraud statute of limitations has an internal discovery rule for the same public policy reasons that uphold the equitable tolling doctrines discussed above with respect to the Tribe's federal claims (but which are grounded in state law): i.e., the "maxim that no man may take advantage of his own wrong."  *Fitzgerald*, 493 P.3d at 650 (internal quotations and citations omitted).  As discussed above, Utah courts "apply the equitable [statute of limitation] doctrines [including equitable discovery] when [they] recognize that a defendant has unjustly 'lull[ed] an adversary into a false sense of security thereby subjecting his claim to the bar of limitations' and is then 'heard to plead that very delay as a defense to the action when brought.'"  *Fitzgerald*, 493 P.3d at 650 (quoting *Rice v. Granite Sch. Dist.*, 23 Utah 2d 22, 456 P.2d 159, 163 (1969)).

Here, for the same reasons discussed above with respect to the "equitable discovery" doctrine, it is apparent that Defendant McConkie and SITLA's argument that the Tribe knew or should have known that they had conspired to commit fraud and committed fraud with the issuance of a public press release cannot stand.  Neither at the time that press release was issued nor at the time the Tribe sent its letter expressing its disappointment with SITLA's handling of the Tabby Mountain sale did the Tribe have any reason to suspect or know that the sale had been suspended based on discriminatory animus.  Indeed, the Tribe's failure to sue the Defendants for the suspension in 2019 was because it *believed* the word of government actors.  Because there existed a fiduciary obligation to maximize the value to the trust, the Tribe's failure to sue for a decision to

suspend ostensibly based on procedural defects in maximizing that revenue was entirely reasonable: it was reliance on the Defendants' honest adherence to their foundational government obligations. It was not until a whistleblower came forward in 2022 and notified the Tribe directly that the appraisal and marketing excuses were pretext did the Tribe have actual or constructive knowledge of the Defendants' fraud. The Tribe filed its Complaint well within three years of its discovery of the fraud, such that this claim is not currently time-barred.

### 2. Breach of Contract

Defendants McConkie and SITLA wrongly assert in their Motion to Dismiss that the Tribe brings a breach of oral contract against the Defendants. Motion to Dismiss Section 4 ("A claim for breach of an oral contract must be filed within four years, Utah Code § 78B-2-309"). But that is untrue. The Tribe brings a breach of written contract claim against the Defendants. The statute of limitations for this claim is six years in Utah. Utah Code Ann. § 78B–2–309(1)(b). "In a breach of contract action the statute of limitations ordinarily begins to run when the breach occurs." *Helfrich v. Adams*, 2013 UT App 37, ¶ 8, 299 P.3d 2, 5. Here, the Tribe asserts the breach occurred in 2019. Thus, even absent any equitable tolling doctrines, the Tribe's breach of contract claim is not now time-barred.

### 3. Breach of Fiduciary Duty

In Utah, breach of fiduciary duty claims "are subject to the general four-year statute of limitations." *Val Peterson Inc. v. Tennant Metals Pty. Ltd.*, 2023 UT App 115, ¶ 45 (citing *National Title Agency LLC v. JPMorgan Chase Bank NA*, 2018 UT App 145, ¶ 16, 429 P.3d 758, *cert. denied*, 432 P.3d 1232 (Utah 2018) and Utah Code § 78B-2-307). This statute does not contain an internal discovery rule; however, the doctrines of equitable discovery and equitable estoppel apply to toll the running of the statute of limitations for the same reasons discussed above with respect to the Tribe's federal law claims, since those are subject to the same statute of

limitations (Utah Code § 78B-2-307(4)), and the same reasoning applies based on the Tribe's 2022 discovery of the Defendants' breaches of their fiduciary duties. Specifically, the equitable discovery rule operates to toll the otherwise fixed statute of limitations period contained in Utah Code § 78B-2-307 because the Tribe did not become aware of its breach of fiduciary duty claims against the conspiratorial Defendants until a whistleblower came forward in 2022 and revealed the Defendants' "concealment or misleading conduct," *Russell*, 108 P.3d 741 at 747 to the Tribe. Additionally or alternatively, this case presents "exceptional circumstances" such that "the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action." *Id.* Specifically, the facts alleged in the Tribe's Complaint show that Defendants McConkie and SITLA, after conducting a financial analysis which concluded that selling Tabby Mountain was in the best interests of the trust, and having the sale approved on that basis by unanimous vote, later suspended the sale based on discriminatory animus, depriving the trust of significant monetary value and breaching the duties owed to the trust beneficiaries. These facts are made all the more extraordinary when viewed in their historical context, i.e., one that reveals that the very land at issue was once stolen from the Tribe. Thus, to deprive it of the opportunity to purchase, for almost $47,000,000.00, land that was stolen from it, solely based on discriminatory animus, to the detriment of Utah's schools and children, is irrational and unjust. In light of the Defendants' careful cover-up in the public record, it would also be irrational and unjust to allow them to escape their fiduciary duties by hiding behind the success of that cover up. Because the Tribe did not discover the fiduciary breaches until 2022, those claims are not now time-barred under the equitable discovery doctrine.

Additionally or alternatively, the doctrine of equitable estoppel applies to toll the statute of limitations with respect to the Tribe's fiduciary breach claim based on the same reasoning

highlighted above with respect to the Tribe's federal civil rights claims.  Specifically, tracking the three elements articulated in *Fitzgerald v. Spearhead Invs., LLC*, 2021 UT 34, ¶ 19, 493 P.3d 644, 650: (i) Defendants McConkie and SITLA first established that selling Tabby Mountain was in the best interests of the trust, then failed to sell Tabby Mountain to the Tribe, falsely stating that the reason for the suspension was to serve the best interests of the trust, (ii) the Tribe reasonably failed to take any action based on the false public record created by the Defendants, which suggested the reason for the suspension was to address beneficiaries' concerns with the appraisal and marketing period, and (iii) the Tribe has suffered injury by failing to obtain the benefits of its bargain with SITLA, and will suffer this continued injury if Defendants McConkie and SITLA would be allowed to repudiate their statement that the sale was suspended based on concerns with the marketing period and appraisal.  Accordingly, the equitable estoppel theory also applies to make the Tribe's breach of fiduciary claim timely.

**CONCLUSION**

Defendants' arguments must be rejected and their motion denied.  Many of Defendant cursory arguments are simply not supported by law, and Defendants more developed arguments prematurely seek to raise complex factual merits issues, or simply misstate the Tribe's claims. None of their arguments have merit.

Dated: October 16, 2023.

PATTERSON EARNHART REAL BIRD
& WILSON LLP

*/s/ Michelle E. Long*
Michelle E. Long
1900 Plaza Drive
Louisville, Colorado 80027
Phone:  (303) 926.5292
Facsimile:  (303) 926.5293
Email: mlong@nativelawgroup.com

J. PRESTON STIEFF LAW OFFICES, LLC

*/s/ J. Preston Stieff*
J. Preston Stieff (4764)
110 South Regent Street, Suite 200
Salt Lake City, Utah  84111
Telephone:  (801) 366-6002
Email: jps@StieffLaw.com

*Counsel for Plaintiff*