KYLE J. KAISER (13924)
Assistant Utah Attorney General
DEREK E. BROWN (10476)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
email: kkaiser@agutah.gov
*Attorney for Defendants Spencer Cox, Utah Department of Natural Resources, Michael Styler, and Joel Ferry*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe, <br><br> Plaintiff, <br><br> v. <br><br> DAVID URE, et al., <br><br> Defendants. | **GOVERNOR COX, UTAH DEPARTMENT OF NATURAL RESOURCES, FORMER DNR DIRECTOR STYLER, AND CURRENT DNR DIRECTOR JOEL FERRY'S MOTION TO DISMISS** <br><br> Case No. 2:23-CV-295 <br><br> Judge David B. Barlow <br> Magistrate Judge Cecilia M. Romero |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... 2

TABLE OF AUTHORITIES ..................................................................... 4

MOTION ................................................................................................. 8

MEMORANDUM OF LAW ................................................................... 10

INTRODUCTION ................................................................................. 10

FACTUAL BACKGROUND ................................................................. 11

LEGAL STANDARD ............................................................................ 15

LEGAL ARGUMENT ........................................................................... 17

   1.   Claims against Governor Cox in his official capacity should be dismissed. 19

   2.   Claims against current Executive Director Ferry should be dismissed because Executive Director Ferry cannot provide any requested injunctive relief. 21

   3.   Claims against former Director Styler should be dismissed. ...................... 22

      3.1.   The Tribe does not state a plausible claim against former Director Styler in his official capacity. ........................................................................ 22

      3.2.   The Tribe does not state a plausible claim against former Director Styler in his individual capacity. ................................................................... 23

   4.   The Tribe's claims against DNR should be dismissed. ................................ 24

      4.1.   DNR is not a "person" subject to suit and is otherwise immune from suit under the civil rights laws. .......................................................................... 25

      4.2.   The Title VI claim against DNR should be dismissed because the Tribe has not shown it has been discriminated against in a DNR "program" or "activity." ......................................................................................................... 28

2

4.3.    The Tribe's state, tort-law claims should be dismissed against DNR. .. 31

5.    The Tribe's federal claims should be dismissed because the Tribe fails to plead invidious discrimination. ........................................................................ 33

6.    The Tribe's state, tort-law law claims should be dismissed because the Tribe has failed to file a Notice of Claim as required by the Immunity Act. .............. 35

CONCLUSION ...................................................................... 36

WORD COUNT CERTIFICATION ......................................................... 37

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Alden v. Maine,*
527 U.S. 706 (1999) ....................................................................... 20

*Alexander v. Choate,*
469 U.S. 287 (1985) ....................................................................... 33

*Alexander v. Sandoval,*
532 U.S. 275 (2001) .................................................................. 28, 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................passim

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................... 17

*Brown v. Montoya,*
662 F.3d 1152 (10th Cir. 2011) ..................................................... 34

*City & Cnty. of San Francisco v. Sheehan,*
575 U.S. 600 (2015) ....................................................................... 24

*City of Escondido v. Emmons,*
586 U.S. 38 (2019) ......................................................................... 24

*Cummings v. Premier Rehab Keller, P.L.L.C.,*
596 U.S. 212 (2022) ....................................................................... 30

*Delbert v. Duncan,*
923 F. Supp. 2d 256 (D.D.C. 2013) ............................................... 34

Education,
*L.C.*, 199 F. Supp. 2d ................................................................... 27

*Ex parte Young,*
209 U.S. 123 (1908) ........................................................... 20, 22, 23

*Gee v. Pacheco,*
627 F.3d 1178 (10th Cir. 2010) ..................................................... 17

*Gregory v. Texas Youth Comm'n,*
111 F. App'x 719 (5th Cir. 2004) .............................................. 22, 23

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ..................................................... 17

*Hall v. Witteman*,
    584 F.3d 859 (10th Cir. 2009) ................................................................. 16, 17

*Hendrickson v. AFSCME*,
    992 F.3d 950 (10th Cir. 2021) ..................................................................... 20

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) ..................................................................... 16

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989) ..................................................................................... 25

*Jones v. Nat'l Comm'n & Surveillance Networks*,
    409 F. Supp. 2d 456 (S.D.N.Y. 2006)........................................................... 26

*L.C. v. Utah State Bd. of Educ.*,
    188 F. Supp. 2d 1330 (D. Utah 2002)........................................................... 27

*Leverington v. City of Colo. Springs*,
    643 F.3d 719 (10th Cir. 2011) ................................................................ 16, 17

*Los Alamos Study Grp. v. U.S. Dep't of Energy*,
    692 F.3d 1057 (10th Cir. 2012) ................................................................... 16

*Luttrell v. Runyon*,
    3 F. Supp. 2d 1181 (D. Kan. 1998) ............................................................. 26

*Muscogee (Creek) Nation v. Okla. Tax Comm'n*,
    611 F.3d 1222 (10th Cir. 2010) ................................................................... 16

*Osterkamp v. Salt Lake Cnty.*,
    No. 2:20-cv-00032-DAO, 2020 WL 5298866 (D. Utah Sept. 4, 2020) ............ 15

*P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ..................................................................................... 23

*Pennhurst State School & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ....................................................................................... 21

*Pryor v. Univ. of Utah*,
    No. 2:24-CV-00286, 2024 WL 4393348 (D. Utah Oct. 3, 2024) ..................... 26

*Re v. Vistas*,
    173 F.3d 864, 1999 WL 178695 (10th Cir. 1999)......................................... 26

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ................................................................... 34

*Snyder v. Prison Med. Dep't*,
    2020 WL 13846652 (D. Colo. Dec. 14, 2020) .............................................. 26

*Steadfast Ins. Co. v. Agricultural Ins. Co.*,
    507 F.3d 1250 (10th Cir. 2007).................................................................... 27

*Sutton v. Utah Sch. for Deaf & Blind*,
  173 F. 3d 1226 (10th Cir. 1999) .................................................................... 27
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................... 17
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252, (1977) .................................................................. 33
*Watson v. Univ. of Utah Med. Ctr.*,
  75 F. 3d 569 (10th Cir. 1996) ..................................................... 27
*White v. Pauly*,
  580 U.S. 73 (2017) ..................................................................... 24
*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................. 26, 27

State Cases

*McGraw v. Univ. of Utah*,
  2019 UT App 144, 449 P.3d 943 ................................................. 36
*Pinder v. Duchesne Cnty. Sheriff*,
  2020 UT 68, 478 P.3d 610 .......................................................... 15
*Regal RealSource LLC v. Enlaw LLC*,
  2024 UT App 95, 554 P.3d 1112 ................................................. 21
*Winegar v. Springville City*,
  2018 UT App 42, 424 P.3d 1006 ................................................. 35

Federal Statutes

42 U.S.C. § 1982 ........................................................................ 25, 26
42 U.S.C. § 1983 ........................................................................ 25, 26
42 U.S.C. § 1985 ........................................................................ 25, 26
42 U.S.C. § 2000d ............................................................................ 28
42 U.S.C. § 2000d-4a ....................................................................... 29
42 U.S.C. §§ 1981–1985 ............................................................. passim

State Statutes

Utah Code § 53C-1-102(2) ............................................................... 14
Utah Code § 53C-1-103(1)(a), (2) ................................................... 13

Utah Code § 63G-7-101 ........................................................................ 31
Utah Code § 63G-7-102(1) .................................................................. 32
Utah Code § 79-2-201.................................................................... 12, 13
Utah Code § 79-2-202.................................................................... 13, 27
Utah Code §§ 63G-7-401 .................................................................... 35
Utah Code Title 63G, Chapter 7 ........................................................ 31

Federal Rules

Fed. R. Civ. P. 10(c) ........................................................................... 17
Federal Rule of Civil Procedure 12(b)(1) and (6) ............................... 8
Rule 12(b)(1) ..................................................................................... 15
Rule 12(b)(6) ..................................................................................... 16

Other Authorities

DUCivR 7-1(a)(7) ....................................................... 24, 31, 36, 37

**MOTION**

Defendants the Honorable Spencer Cox, Governor of the State of Utah; Utah Department of Natural Resources; Michael Styler, former Executive Director of the Utah Department of Natural Resources; and Joel Ferry, current Executive Director of the Utah Department of Natural Resources (collectively, the "DNR Defendants"), through counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), move to dismiss the Tribe's Amended Complaint (doc. 72).  The bases of the motion include:

1. Governor Cox is not an appropriate defendant because Governor Cox, by virtue of his office, has no connection with the enforcement of any acts at issue in this case, more than a mere general duty to enforce the law, and therefore cannot be subject to suit in his official capacity.

2. Executive Director Ferry is not an appropriate defendant because he cannot provide the injunctive relief requested by the Tribe.

3. Former Director Styler is not an appropriate defendant because:

   - Styler is no longer a governmental official and therefore cannot be sued in his individual capacity.

- The Tribe does not plead that former Director Styler had any personal participation in any of the actions in this lawsuit to subject him to liability in his individual capacity; and has not pleaded any law clearly establishing a violation by former Director Styler, entitling him to qualified immunity;

4. The Utah Department of Natural Resources:

   - Is not a "person" subject to suit under Plaintiff's §§ 1981–1985 claims;

   - Has not discriminated against the Tribe in one of its "programs" or "activities; to be liable under the Tribe's Title VI claims; and

   - Is immune from suit under Plaintiff's state, tort-law claims;

5. The Tribe's federal claims should be dismissed because the Tribe has not pleaded facts demonstrating invidious discrimination to support their constitutional or Title VI claims.

6. The Tribe's state claims asserted against the DNR Defendants should be dismissed because the Tribe has failed to file a Notice of Claim as required by the Governmental Immunity Act of Utah;

For these reasons, further described in the accompanying Memorandum of Law, the Governor Cox and Former Director Styler respectfully request that the Court dismiss Plaintiffs' Complaint, with prejudice.

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff Ute Indian Tribe of the Unitah and Ouray Indian Reservation's Amended Complaint is the next step in the continuing litigation over their claims related to the abandoned 2018 sale of Tabby Mountain. Tabby Mountain is held by the Utah Trust Lands Administration (UTLA, also known as the Utah School and Institutional Trust Lands Administration, or SITLA) and was bid on by the Tribe and the Utah Department of Natural Resources, but ultimately the sale was cancelled. The Tribe contends that through the bid process, it was discriminated against on the basis of national origin and asserts claims for relief under state and federal law.

This Court granted in part all Defendants' previous motions to dismiss this case, leaving only claims against former SITLA Director David Ure.[1] After some

---

[1] *See* Mem. Dec. & Ord. Granting in Part & Denying in Part Defs.' Mot. to Dismiss (doc. 52) ("the Dismissal Order"), at 42.

confusion about the scope of the Dismissal Order, the Tribe agreed to amend its complaint, and the Court ordered it to do so.[2] Instead of clarifying and narrowing its complaint, the Tribe's Amended Complaint expanded its scope of claims and number of defendants.  In the Amended Complaint, the Tribe ignored the Dismissal Order, doubled-down on old theories and claims not supported by fact or law, and asserted new claims that are precluded by federal law and this Court's previous decision.

To be clear: DNR has never owned Tabby Mountain. Neither it nor its Executive Directors nor Governor Cox have discriminated against the Tribe in any way related to the bidding or proposed sale of the property. But even when the Court accepts the Tribe's non-conclusory, well-pleaded allegations as true, nothing has changed from the Tribe's original complaint—the DNR Defendants are not liable under any of the Tribe's theories, and the case against them should be dismissed with prejudice.

**FACTUAL BACKGROUND**

The following facts are taken from the Tribe's Amended Complaint, documents that may appropriately be judicially noticed, or facts that may be

---

[2] See Minute Ord. (doc. 64).

considered under a factual attack under a motion to dismiss for lack of subject-matter jurisdiction and are accepted as true for the purposes of this motion only.

1.  Spencer Cox is the Governor of the State of Utah. He is the successor to Gary Herbert, who was Utah's Governor from 2009 until January 4, 2021.[3]  The Tribe makes no factual allegations against Governor Cox other than he is the "State of Utah's chief executive officer" is "responsible for implementing state laws and overseeing the operation of the State's executive branch" and is generally "responsible for ensuring that the State of Utah complies with federal laws and [is] responsible for violations of that duty to comply with federal laws."[4]  With the exception of a grammatical change and an express statement that Governor Cox is sued in his official capacity, these allegations are identical to the allegations lodged in the Tribe's original Complaint.[5]

2.  The Utah Department of Natural Resources is an arm of the state of, and agency of Utah, established by Utah statute.[6]  DNR comprises twenty-two divisions, councils, committees, boards and offices, including eight divisions and

---

[3] Pl.'s Am. Compl. ¶ 15.
[4] Pl.'s Am. Compl. ¶ 15.
[5] *Compare* Pl.'s Am. Compl. ¶ 15 *with* Pl.'s Compl. ¶ 15.
[6] Utah Code § 79-2-201(1); Pl.'s Am. Compl. ¶ 12.

two offices "tasked with the duty to manage and protect the state's natural resources."[7]

3.  DNR's chief administrative officer is the Executive Director, who is appointed by the Governor with the advice and consent of the Utah Senate.[8]

4.  Defendant Michael Styler was the Executive Director of DNR from January 2005 until June 2019.[9]

5.  The current Executive Director of DNR is Joel Ferry.[10] Other than naming Director Ferry as DNR's Director, the Tribe has lodged no additional allegations against him.

6.  SITLA, also known as Utah Trust Lands Administration, is an independent administrative agency established to manage lands that Congress granted to Utah for the support of common schools and other beneficiaries.[11]

7.  SITLA administers the land it holds in trust for the exclusive benefit of the trust beneficiaries. It is charged with managing the lands in the most prudent and

---

[7] Utah Code § 79-2-201(2)(a)–(u); Pl.'s Am. Compl. ¶ 12.
[8] Utah Code § 79-2-202(1).
[9] Pl.'s Am. Compl. ¶ 13.
[10] Pl.'s Am. Compl. ¶ 14.
[11] Utah Code § 53C-1-103(1)(a), (2); Pl.'s Am. Compl. ¶ 9.

profitable manner possible. [12]

8.  This suit involves land north of Highway 40, south of Tabiona, and north of Fruitland, Utah. It is referred to throughout the Complaint and this memorandum as "Tabby Mountain."[13]

9.  At all relevant times, and to this day, SITLA holds title to the surface of Tabby Mountain.[14]

10.     In December 2018 SITLA issued a public notice that it planned to sell Tabby Mountain.[15]

11.     On December 19, 2018, the Tribe expressed to SITLA its interest in bidding.[16]

12.     SITLA provided information regarding the bidding process, including notice that "All sales will be finalized on SITLA's standard certificate of sale."[17]

13.     The Tribe submitted its bid for Tabby Mountain in February 2019. DNR submitted its bid at about the same time.[18]

---

[12] Utah Code § 53C-1-102(2).
[13] Pl.'s Am. Compl. ¶¶ 1, 31.
[14] *E.g.*, Pl.'s Am. Compl. ¶ 1, 42.
[15] Pl.'s Am. Compl. ¶ 60.
[16] Pl.'s Am. Compl. ¶ 61.
[17] Pl.'s Am. Compl. ¶¶ 67–71.
[18] Pl.'s Am. Compl. ¶¶ 72–73.

14.     Pursuant to SITLA's invitation, DNR submitted a revised bid on February 20 or 21, 2019.[19]

15.     On February 22, 2019, SITLA issued a press release, providing public notice that it had voted to suspend the Tabby Mountain sale.[20]

## LEGAL STANDARD

The DNR Defendants assert that the Tribe's state-law claims are barred on the ground that the Tribe has failed to timely and properly file a Notice of Claim under the Governmental Immunity Act of Utah. Because the failure to file a notice of claim deprives the court of subject-matter jurisdiction over covered state-law claims, *Pinder v. Duchesne Cnty. Sheriff*, 2020 UT 68, ¶ 59, 478 P.3d 610, 623, these motions are adjudicated under Rule 12(b)(1). *See, e.g., Osterkamp v. Salt Lake Cnty.*, No. 2:20-cv-00032-DAO, 2020 WL 5298866, at * 5–6 (D. Utah Sept. 4, 2020) (unpublished) (analyzing Utah Immunity Act defenses, including a defective notice of claim, under a Rule 12(b)(1) standard)).

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of cases for "lack of subject-matter jurisdiction."  When a motion made pursuant to this rule is a

---

[19] Pl.'s Am. Compl. ¶¶ 83–89.
[20]  Pl.'s Am. Compl. ¶ 93.

"facial" attack on the claims as pleaded, the motion is reviewed applying the same standards as one made pursuant to Rule 12(b)(6). *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). Under a "factual" attack of subject-matter jurisdiction, the Court may accept evidence, "weigh evidence and make factual findings" without having to convert the motion to one for summary judgment. *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1064–65 (10th Cir. 2012); *see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

The DNR Defendants bring their remaining challenges to the Tribe's Complaint under Rule 12(b)(6). In reviewing a 12(b)(6) motion, a court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent"

16

with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In reviewing a motion to dismiss, the Court may not only rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

## LEGAL ARGUMENT

The old claims brought against the DNR Defendants in the Tribe's original complaint were deficient then, and they remain so in the Amended Complaint. The new claims brought against the DNR Defendants are also deficient.

As discussed in the DNR Defendant's original Motion to Dismiss, the Tribe cannot sue Governor Cox in his official capacity. This Court agreed.  The Tribe has not added a single fact against Governor Cox since to change that conclusion.

The Tribe cannot maintain a claim against current DNR Executive Director Ferry because there is simply no equitable relief he can provide under the doctrine of *Ex parte Young.*

Similarly, the Tribe has no good faith basis to continue a claim against former director Styler in his official capacity. And all claims against him in his individual capacity fail to state plausible claims for relief.

Furthermore, the Tribe has now sued DNR directly for money damages under 42 U.S.C. §§ 1981–1985. But these claims are barred because DNR is not a "person" subject to suit under those federal laws. And the Tribe seeks to hold DNR responsible for discrimination under Title VI of the Civil Rights Act but fails to identify a "program" or "activity" that it was subject to discrimination under.

The Tribe's federal claims are also substantively deficient because they have failed to plead intentional discrimination.

The Tribe's state-law tort claims are barred by the Governmental Immunity Act's Notice of Claim and substantive provisions. The Court has agreed that the state-law tort claims are barred, and Tribe has not pleaded any new facts overcoming that decision.

Accordingly, all claims should be dismissed against the DNR Defendants, with prejudice.

### 1. Claims against Governor Cox in his official capacity should be dismissed.

All claims should be dismissed against Governor Cox. In the Tribe's previous complaint, it was unclear whether Governor Cox was sued in his official or individual capacity. Governor Cox moved to dismiss, assuming that the Tribe asserted claims in both capacities. The Court construed the complaint as only asserting official capacity claims against Governor Cox,[21] and concluded that the "Complaint fail[ed] to assert a claim against Governor Cox that complies with the *Ex parte Young* exception."[22]

Notwithstanding the Court's conclusion, the Tribe continues to name Governor Cox—this time explicitly only in his official capacity—in its Amended Complaint.[23] But the Tribe does not include a single new fact about Governor Cox's involvement in the subject of this litigation or supervision of SITLA to subject him to suit, even under the *Ex parte Young* exception to the doctrine of

---

[21] Dismissal Ord. (doc. 52) at 22–23.
[22] *Id.* at 25.
[23] Pl.'s Am. Compl. ¶ 15.

sovereign immunity to allow a State government official to be sued for forward-looking injunctive relief. *Ex parte Young,* 209 U.S. 123, 159–60 (1908); *Alden v. Maine,* 527 U.S. 706, 713 (1999); *Hendrickson v. AFSCME,* 992 F.3d 950, 965 (10th Cir. 2021).  The Tribe has not included any facts showing Governor Cox has "some connection with the enforcement" of the challenged governmental action beyond a "mere general duty to enforce the law." *Ex parte Young,* 209 U.S. at 157; *Hendrickson,* 992 F.3d at 965.

As the Court concluded in its Dismissal Order, the Tribe's averment that Governor Cox is "responsible for overseeing the operation of the State's executive branch" is "not nearly enough" to establish the necessary connection to enforce the challenged governmental action.[24]  The Tribe has not included any allegations showing "how Governor Cox could be enjoined in a way that would remedy" any alleged violations.[25]  The Tribe did not even attempt to amend its Complaint to add any facts addressing these deficiencies.  As such, it has no good faith basis for continuing the case against Governor Cox, and their claims should be dismissed with prejudice.

---

[24] Dismissal Ord. at 24.
[25] *Id.* at 25.

2. **Claims against current Executive Director Ferry should be dismissed because Executive Director Ferry cannot provide any requested injunctive relief.**

The Tribe has also sued current DNR Executive Director Joel Ferry in his official capacity.[26]  For the reasons stated above regarding the official-capacity claims against Governor Cox, claims against current Executive Director Ferry should be dismissed.

Claims brought against state officials in their official capacity must be for forward-looking, injunctive relief only; otherwise, such claims would be against the State and would be barred by sovereign and Eleventh Amendment immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).

The Tribe's only requests for equitable relief in its Amended Complaint are for specific performance of the previous alleged "contract" between SITLA and the Tribe and an order requiring SITLA to sell Tabby mountain "to the Tribe for $46,976,000 …."[27] DNR was a bidder on Tabby Mountain; it cannot be forced to sell a property it doesn't have. Current Executive Director Ferry is not "is not in a

---

[26] Pl.'s. Am. Compl. ¶ 14.

[27] Pl.'s Am. Compl. ¶ 198, Wherefore ¶¶ (b),(c). Specific performance is an "equitable remedy" under Utah contract law.  *See Regal RealSource LLC v. Enlaw LLC*, 2024 UT App 95 ¶ 28, 554 P.3d 1112, 1123 (citations omitted).

position, at the time of the suit" to provide the equitable relief requested, nor does he have "some connection with" the enforcement of the action at issue. *Gregory v. Texas Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004) (unpublished, per curiam op.); *Ex parte Young*, 209 U.S. at 157. Therefore, a claim against current Director Ferry in his official capacity, must be dismissed.

### 3. Claims against former Director Styler should be dismissed.

The claims against former Director Styler should be dismissed, regardless of whether the claims are brought against Styler in his individual or official capacities.

#### 3.1. The Tribe does not state a plausible claim against former Director Styler in his official capacity.

The Tribe does not state a plausible claim against former Director Syler in his official capacity. Though the Court construed the Tribe's original complaint as excluding claims against Director Styler in his official capacity, in its Amended Complaint, the Tribe specifically includes an official capacity claim against him.[28] This claim should be dismissed.

The Tribe's claims against former Director Styler in his official capacity are "meritless." *Gregory*, 111 F. App'x at 721. That is because, as admitted by the

---

[28] Pl.'s Am. Compl. ¶ 13.

Tribe, Styler is no longer the Executive Director of the Department of Natural Resources.[29]  The *Ex parte Young* exception requires that the named defendant have "some connection with the enforcement" of the action at issue.  *Ex parte Young*, 209 U.S. at 157. It "does not permit judgments against state officers declaring that they violated federal law in the past."  *P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Because former Director Styler "is not in a position, at the time of the suit to redress" the Tribe's complaints, claims against him in his official capacity must be dismissed.  *Gregory*, 111 F. App'x at 721.

### 3.2.    The Tribe does not state a plausible claim against former Director Styler in his individual capacity.

For the reasons stated in Section 5, below, the federal claims against former Director Styler in his individual capacity should be dismissed because the Tribe has failed to plead facts showing invidious discrimination.

Though the Tribe includes former Director Styler's name in more places in the Amended Complaint, it fails to plead facts against him other than simple, conclusory statements.  These "collective allegations" and conclusions that

---

[29] Pl.'s Am. Compl. ¶¶ 13, 14.

amount to "nothing more than a formulaic recitation of the elements" of the claims are insufficient to state a plausible claim. *Brown*, 662 F.3d at 1165l; *Iqbal, 556 U.S. at 680–81*.

Furthermore, for the reasons stated by Defendant Ure in § 2.2 of his Motion to Dismiss,[30] which are incorporated herein by reference, DUCivR 7-1(a)(7), the Tribe has not, and cannot, plead and prove any clearly established right violated by former Director Styler, and thus Director Styler would be entitled to qualified immunity. *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015); *White v. Pauly*, 580 U.S. 73, 79 (2017); *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

### 4. The Tribe's claims against DNR should be dismissed.

For the first time in the Amended Complaint, the Tribe brings its federal constitutional claims, a Title VI claim, and state tort claims directly against the Department of Natural Resources.  All claims against DNR should be dismissed.

First, the Tribe's §§ 1981–1985 claims should be dismissed because, as an arm of the State, DNR is not a "person" subject to suit and is otherwise protected by sovereign immunity.

---

[30] Doc. 77.

Second, the Tribe's Title VI claim should be dismissed because it has not shown that it has been subjected to discrimination in any DNR program or activity.

Third, the Tribe's state tort claims should be dismissed because the Governmental Immunity Act of Utah specifically immunizes the State and its subdivisions from the torts alleged.

### 4.1. DNR is not a "person" subject to suit and is otherwise immune from suit under the civil rights laws.

The Tribe names DNR as a defendant under Count I (42 U.S.C. § 1981), Count II (42 U.S.C. § 1982), Count III (42 U.S.C. § 1983) and Count IV (42 U.S.C. § 1985) of the Amended Complaint.  These claims should all be dismissed because DNR, as an arm of the State, is not subject to suit under these statutes.

Section 1983 of title 42 provides a cause of action when a "person" violates another "person's" constitutional rights.  *See* 42 U.S.C. § 1983.  Sections 1981 and 1982, which protect rights to "make and enforce contracts" and to "inherit, purchase, lease, sell, hold, and convey real and personal property", are enforceable through § 1983.[31] *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701,

---

[31] Pl.'s Am. Compl. ¶ 130.

722 (1989) (holding that § 1983 is the "exclusive federal remedy for violation of rights guaranteed in § 1981 by state governmental units"); *Pryor v. Univ. of Utah*, No. 2:24-CV-00286, 2024 WL 4393348, at *6 (D. Utah Oct. 3, 2024) (unpublished op.). Likewise, § 1985 requires that "two or more persons" conspire to deprive rights. 42 U.S.C. § 1985. The definition of "persons" for purposes of § 1985 is the same as the definition under § 1983. *E.g.*, *Luttrell v. Runyon*, 3 F. Supp. 2d 1181, 1187 (D. Kan. 1998).

If an entity is not a "person" as defined by these statutes, then it cannot be sued under them. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 70–71 (1989); *see Re v. Vistas*, 173 F.3d 864, 1999 WL 178695, at *2 (10th Cir. 1999) (unpublished table op.) (applying the "not a person" test to § 1981 claims); *Snyder v. Prison Med. Dep't*, 2020 WL 13846652, at *2 (D. Colo. Dec. 14, 2020) (applying the "not a person" test to § 1982 claims);[32] *Luttrell*, 3 F. Supp. 2d at 1187.

---

[32] If the definition of "person" does not preclude a cause of action under the Civil Rights statutes against DNR, then DNR's sovereign and Eleventh Amendment immunity would bar such a claim. *See Jones v. Nat'l Comm'n & Surveillance Networks*, 409 F. Supp. 2d 456, 467 (S.D.N.Y. 2006) (recognizing that Congress "has shown no intention of waiving states' immunity in" 42 U.S.C. §§ 1981–1986).

The State of Utah, and the arms of the State, are not "persons" for purposes of these statutes. *Will*, 491 U.S. at 70–71.

The Department of Natural Resources, as a "state agency," is an arm of the State of Utah. *L.C. v. Utah State Bd. of Educ.*, 188 F. Supp. 2d 1330, 1340 (D. Utah 2002). Applying factors found in *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007), DNR qualifies as an arm of the state. DNR is an agency of the State of Utah, created by state statute, with an executive director appointed by the Governor and confirmed by the Senate. Utah Code § 79-2-202. It has no autonomy, is concerned with statewide affairs, and receives a budget from the State. *Id.*; *see also generally* S.B. 5, Utah Leg., 2025 Gen. Sess., *available at* https://le.utah.gov/~2025/static/SB0005.html. It is as much as an arm of the state as the University of Utah and its Medical Center, *Watson v. Univ. of Utah Med. Ctr.*, 75 F. 3d 569, 577 (10th Cir. 1996); the Utah School for the Deaf and Blind, *Sutton v. Utah Sch. for Deaf & Blind*, 173 F. 3d 1226, 1232 (10th Cir. 1999); the Utah State Board of Education, *L.C.*, 199 F. Supp. 2d at 1340, or SITLA, *see* Dismissal Ord. at 22. Because it is an arm of the state, it cannot be subject to suit under the civil rights acts. Accordingly, the §§ 1981–1985 claims should be dismissed against DNR.

### 4.2. The Title VI claim against DNR should be dismissed because the Tribe has not shown it has been discriminated against in a DNR "program" or "activity."

After their unsuccessful attempt at lodging a Title VI claim against SITLA,[33] the Tribe now asserts the same claim, this time against DNR.  It failed against SITLA because the Tribe could not show that SITLA received federal funds.  It fails against DNR because the Tribe has not pleaded that DNR has discriminated against it in its programs or activities.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* The Supreme Court has implied a private right of action, in certain circumstances, that allows individual plaintiffs to sue for damages or injunctive relief under Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001). A "program or activity" includes "(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

---

[33] Dismissal Ord. at 31–32.

(B) the entity of such State or local government that distributes such assistance … ." 42 U.S.C. § 2000d-4a.

The Tribe has not alleged that it has been discriminated against in a "program or activity" of DNR.  In its complaint, it alleges that DNR "and its sub-departments routinely receive federal financial assistance" and then states in a conclusory manner that "all" "Defendants' participation in the conspiracy to prevent sale of the tribe was motivated by animus."[34] It does not identify any program or activity engaged in by DNR in which there was excluded from participation in, denied the benefits of, or subjected to discrimination under.

The Tribe alleges that it wishes to allow "Tribal members to hunt on" Tabby Mountain, but it makes no allegation that Tribal members cannot hunt there now (or cannot hunt under the same conditions as a non-Tribal member).[35]  It has alleged that it wants to own Tabby Mountain, but it has made no claim that ownership of land *that DNR has never owned,* can somehow be a "benefit of" a DNR program.  These allegations, along with the conclusory allegations of discrimination, are insufficient.

---

[34] Pl.'s Am. Compl. ¶¶ 162–63.
[35] Pl.'s Am. Compl. ¶ 29.

The U.S. Supreme Court has recognized that implied rights of action under Title VI operate on a theory of contract: Liability exists if the recipient of federal funds "voluntarily and knowingly accepts" and "clearly under[stands] the obligations" that come along with accepting federal funds. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219–20 (2022). Damages are available only if the funding recipient "at the time it engaged in the process of deciding whether to accept federal dollars, have been aware it would face such liability." *Id.* at 220 (cleaned up).

If the Tribe's legal theory were accepted, recipients of federal funds would be on notice of liability not only for the programs and activities that it offers, but also the programs and activities it chooses *not* to offer, or the programs and activities that it *is precluded from offering.* DNR bid on Tabby Mountain, but it did not buy Tabby Mountain. Its bid was rejected after SITLA voted to suspend the sale. DNR would not be "traditionally," "generally" or "normally" liable for damages under an implied right of action for *not* acquiring a property that Plaintiffs seek to acquire. *Cummings*, 596 U.S. at 223. This would be an "idiosyncratic" or "exceptional" result, that contracting agencies like DNR would not have been on "clear notice" of. *Id.* at 226. Accordingly, under the logic of

30

*Cummings*, the implied right of action cannot extend to this lawsuit.  This claim

should be dismissed.

### 4.3.  The Tribe's state, tort-law claims should be dismissed against DNR.

Finally, the Tribe's state, tort-law claims[36] against DNR are substantively

barred by the Governmental Immunity Act of Utah. The Immunity Act, Utah Code

Title 63G, Chapter 7, "governs all claims against governmental entities or against

their employees or agents arising out of the performance of the employee's duties,

within the scope of employment, or under color of authority." Utah Code § 63G-7-

101.  It provides immunity to "each governmental entity and each employee of a

governmental employee "from suit for any injury that results from the exercise of

a governmental function" unless immunity is expressly waived. *Id.* § 63G-7-

201(1).

---

[36] Count VI, Breach of Trust; Count VII, fraud and conspiracy to commit fraud. Because the Tribe was not in privity with DNR, there is no basis for any contractual claims against it, and it does not appear that the Tribe has named DNR or any of the DNR Defendants in its breach of contract or quasi-contract claims found in Count VIII.  To the extent the Court construes the Amended Complaint as naming the DNR Defendants as defendants in Count VIII, the DNR Defendants join in the arguments made by Defendant Ure in Section 3.2 of his Motion to Dismiss (doc. 77), and the SITLA Defendants in Section 1.2 of their Motion to Dismiss (doc. 78), which are incorporated by reference herein. DUCivR 7-1(a)(7).

31

Immunity from the Tribe's state tort claims is not waived. The Act reserves immunity for any claim if the injury "arises out of or in connection with, or results from" among other things, the "abuse of process … interference with contract rights … or violation of civil rights" *Id.* § 63G-5-201(4)(b). An injury "arises out of or in connection with, or results from" something when "(a) there is some causal relationship between the conduct or condition and the injury; (b) the causal relationship is more than any causal connection but less than proximate cause; and (c) the causal relationship is sufficient to conclude that the injury originates with, flows from, or is incident to the conduct or condition." Utah Code § 63G-7-102(1).

The Tribe's alleged injury "originates with, flows from, or is incident to" the alleged interference with contractual rights, violation of civil rights, and the denial of a permit. Accordingly, the Immunity Act bars the Tribe's tort claims against DNR.

For these reasons, all claims against DNR should be dismissed with prejudice.

5. **The Tribe's federal claims should be dismissed because the Tribe fails to plead invidious discrimination.**

Ignoring all the problems with proper defendants, immunities, and capacities of the DNR defendants, the Tribe's federal claims should still be dismissed because they fail to state plausible claims of invidious discrimination.

Claims brought under the equal protection clause must include allegations that a government official engaged in intentional discrimination on the basis of a protected class. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265, (1977). Similarly, "Title VI itself directly reaches only instances of intentional discrimination." *Sandoval*, 532 U.S. at 281 (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985) (alterations in *Sandoval* omitted)).

The Tribe has not alleged *any* facts supporting a claim of intentional discrimination or animus on the part Governor Cox or current Executive Director Ferry.  Though the Tribe has included former Director Styler's name throughout the Amended Complaint, it has not added any facts from which the Court could conclude plausible claims exist.  They state conclusory allegations, such as that former Director Styler "conspired,"[37] or that Styler "knew" DNR's $50 million bid

---

[37] Pl.'s Am. Compl. ¶¶ 80, 83, 91, 108.

was a "sham"[38] and that his action was "unlawful discrimination,"[39] individually, or collectively as part of allegations against "Defendants."[40]

These are simply conclusory statements, or statements of the elements of the claim, which cannot support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). They allegations do not "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (emphasis in original). Rather, the allegations as to former Director Styler are nothing more than insufficient "collective allegations," against the group of government defendants. *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011).

Furthermore, the Tribe has not linked the allegedly wrongful actions taken at issue to any person's "race, color, or national origin." *Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. 2013). Rather than including any facts showing present-day discrimination, the Tribe alleges that animus from more than 115 years ago undertaken by federal (not state) officials "establishe[s] a historical

---

[38] Pl.'s Am. Compl. ¶¶ 89, 92.
[39] Pl.'s Am. Compl. ¶ 103.
[40] Pl.'s Am. Compl. ¶¶ 129, 137, 138, 150, 151, 155, 158.

pattern of persistent racial animus" supporting its federal civil rights claims.[41]
These conclusory allegations do not support the Tribe's civil rights complaints
against former Director Styler. *Iqbal*, 556 U.S. at 677.

### 6. The Tribe's state, tort-law law claims should be dismissed because the Tribe has failed to file a Notice of Claim as required by the Immunity Act.

Finally, the Tribe's state, tort-law claims[42] should be dismissed in their
entirety because it failed to file a Notice of Claim as required by the Immunity Act.

Before filing suit, the Tribe, "having a claim against a governmental entity,
or against the governmental entity's employee for an act or omission occurring
during the performance of the employee's duties" must file a notice of claim
within one year after the claim arose. Utah Code §§ 63G-7-401, -402. A notice of
claim is required when suing government officials "regardless of whether or not
the function giving rise to the claim is characterized as governmental …." *Id.*
§ 63G-7-401(2); *see also Winegar v. Springville City*, 2018 UT App 42, ¶¶ 31–32,
424 P.3d 1006, 1013. The Immunity Act "'demands strict compliance' with notice

---

[41] Pl.'s Am. Compl. ¶¶ 36–38.
[42] The Tribe does not assert contractual claims against the DNR Defendants. *See* note 36, *supra.*

35

of claim delivery requirements." *McGraw v. Univ. of Utah*, 2019 UT App 144, ¶ 18, 449 P.3d 943, 947.

For the reasons stated by SITLA in its Motion to Dismiss, *see* SITLA's Mot. to Dismiss § 1.1, and Defendant Ure in his Motion to Dismiss, Ure Mot. to Dismiss § 3.1, and which are incorporated herein, DUCivR 7-1(a)(7), the Tribe's state, tort-law law claims against the DNR Defendants are barred because of the Tribe's failure to file a Notice of Claim.

In its Dismissal Order, the Court dismissed the state tort-law claims in their entirely on the grounds that the Tribe failed to file its Notice of Claim.[43]  The Tribe has not provided any facts or argument to disturb that ruling.  Instead, they have again asserted these non-contractual, state-law claims against the DNR Defendants without a good faith basis in fact or law.  They should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Tribe's Complaint as to the DNR Defendants, with prejudice.

---

[43] Dismissal Ord. at 38.

Respectfully Submitted on this 24th day of March, 2025,

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/Kyle J. Kaiser*
KYLE J. KAISER
Assistant Utah Attorney General

**WORD COUNT CERTIFICATION**

Under DUCivR 7-1(a)(5)(C), I certify that this Motion to Dismiss contains

**5780** words and complies with DUCivR 7-1(a)(4).

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/Kyle J. Kaiser*
KYLE J. KAISER
Assistant Utah Attorney General