J. Preston Stieff (4764)
J. PRESTON STIEFF LAW OFFICES, LLC
311 South State Street, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 366-6002
Email: jps@Stiefflaw.com

Jeremy J. Patterson (38192), *Pro Hac Vice Admission*
Linda F. Cooper (102901), *Pro Hac Vice Admission*
PATTERSON REAL BIRD & WILSON LLP
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 926-5292
Facsimile: (303) 926-5293
Email: jpatterson@nativelawgroup.com
Email: lcooper@nativelawgroup.com

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>DAVID URE, MICHELLE MCCONKIE, MICHAEL STYLER, SPENCER COX, UTAH SCHOOL and INSTITUTIONAL TRUST LANDS ADMINISTRATION<br><br>Defendants. | **RESPONSE IN OPPOSITION TO DEFENDANTS COX, STYLER, FERRY, AND DNR's MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Civil Case No. 2:23-CV-00295<br><br>Jude David B. Barlow<br><br>Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ................................................................................................................. 1

ARGUMENT. ........................................................................................................................ 3

    I. Defendant Styler is a proper defendant in official capacity. .......................................... 3

    II. Defendant Styler in his individual capacity is not entitled to qualified immunity on any federal claim. ................................................................................................................... 4

        A. Defendant Styler ignores the clear distinction between the pleading standard in federal constitutional claims involving invidious discrimination and the evidentiary standard applicable to such claims ........................................................................................ 4

        B. Federal rights were clearly established at the time of the unlawful conduct. ................ 7

            1. The Tribe states a claim against Defendant Styler for violations of Section 1981. 7

            2. The Tribe states a claim against Defendant Styler for violations of Section 1982. ....8

            3. The Tribe states a claim against Defendant Ure for violations of Section 1985. .......9

    III. DNR is a proper defendant because it receives federal funds and discriminated against the Tribe in violation of 42 U.S.C. § 2000(d). ................................................................ 11

    IV. Defendant Ferry in his official capacity is a proper defendant. .................................. 12

## TABLE OF AUTHORITIES

Cases

*Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011) ............................................................................... 5

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................................................... 7

*Booker v. Gomez,* 745 F.3d 405 (10th Cir. 2014) ..................................................................... 5

*Buchanan v. Warley*, 245 U.S. 60 (1917) ................................................................................. 9

*Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*, 141 F. App'x 714 (10th Cir. 2005)**.** ........................ 4

*Burns v.Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275 (10th Cir. 2003) ........................................ 7

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ........................................................ 8

*EEOC v. Port Auth of N.Y & N.J.*, 768 F.3d 247 (2d Cir. 2013) ............................................... 8

*Ex parte Young,* 209 U.S. 123 S.Ct. 441 L.Ed. 714 (1908) .................................................. 4, 13-14

*Galindo v. Taylor*, 723 F. Supp. 3d 1008 (D. Kan. 2024) ...................................................... 10

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ......................................................................... 13

*Graham v. Richardson,* 403 U.S. 365(1971) ........................................................................ 13

*Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) .................................. 9

*Hatfill v. Gonzales*, 519 F.Supp.2d 13 (2007) ....................................................................... 13

*Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022)**.** .................................................. 4

*Inmates of Suffolk Cnty. Jail v. Eisenstadt*, 360 F. Supp. 676 (D. Mass. 1973) ..................... 13

*Jett v. Dallas Indep. Sch. Dist.,* 491 US 701 (1989) ................................................................. 8

*Jones v. Alfred H. Mayer Co.* 392 U.S. 409 (1968) .................................................................. 9

*Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220 (10th Cir. 2000) ................................ 7

*Lewis v. Clarke*, 581 U.S. 155 (2017) ................................................................................... 13

*Martarella v. Kelley*, 349 F. Supp. 575 (S.D.N.Y. 1972) ...................................................... 13

*SECYS, LLC v. Vigil*, 666 F.3d 678 (10th Cir. 2012) ............................................................. 5

*Shaare Tefila Congregation v. Cobb,* 481 U.S. 615 (1987) .................................................... 9

*Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144 (2001) ...................................................... 5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................................................................ 7

*Taylor v. City of New York*, 207 F. Supp. 3d 293 (S.D.N.Y 2016) ............................................................ 8, 10

*Tilton v. Richardson,* 6 F.3d 683 (10th Cir. 1993) ........................................................................................ 10

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ......................................................... 8

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) .............. 6-7

*Villanueva v. Carere*, 85 F.3d 481 (10th Cir. 1996) ....................................................................................... 7

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ...................................................................................................... 6

Statutes

42 U.S.C. § 1981 ........................................................................................................................................... 8-9

42 U.S.C. § 1982 ........................................................................................................................................... 8-9

42 U.S.C. § 1983 ................................................................................................................................... 4-5, 7-8

42 U.S.C. § 1985 ............................................................................................................................................ 10

42 U.S.C. § 2000 ....................................................................................................................................... 12-13

Rev. Stat. § 1979 ............................................................................................................................................. 7

## INTRODUCTION

As this Court recognized during the November 18, 2024, hearing in this case, the foundation of Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation's ("Tribe") claims against Defendants "involves a wide-ranging conspiracy of [Utah] state employees to deprive the [Ute Indian Tribe] of the right to purchase Tabby Mountain . . . ." Transcript at 6 (attached hereto as **Exhibit 1**). Indeed, since early 2019 – and continuing to this day -- the Utah School and Institutional Trust Lands Administration (SITLA), Utah Department of Natural Resources (DNR), officers of each, and the political branches in the State of Utah have been engaged in an ongoing conspiracy to discriminatorily prevent the Ute Indian Tribe (Tribe) from purchasing a parcel of land within the Tribe's own Reservation, known as Tabby Mountain. This suit seeks to remedy these ongoing violations of state and federal statutory and constitutional laws.

Early in 2018, SITLA's Board unanimously determined that it was in the best interest of SITLA and its trust beneficiaries, Utah public school students, to sell the portions of the surface estate in Tabby Mountain which SITLA owned. But when the Tribe was the high bidder for that property, the State Executive Branch, SITLA, DNR, and their officers worked in secret to 1) prevent the sale of Tabby Mountain to the Tribe, and 2) intentionally concoct a false public record through which they, knowingly falsely, misled the Tribe and SITLA's trust beneficiaries by claiming that they were "suspending" the sale to address two (pretextual) non-discriminatory concerns.

Based upon information brought to light by a state whistleblower, they were caught.

On May 5, 2023, the Tribe filed its Complaint, and all Defendants subsequently filed motions to dismiss. On June 14, 2024, this Court entered its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss [Doc. 52].

After Defendants filed a Joint Motion for Clarification of the Court's Order [Doc. 53], on November 18, 2024, the Court held a hearing on that motion.

**The Tribe's Amended Complaint**

Contrary to Defendants' arguments in their motion to dismiss the Amended Complaint, the Tribe did not "ignore[] the Court's partial dismissal order or double[]-down on old theories and claims not supported by fact or law." Dkt. 79 at 11. Rather, as set forth herein, in response and in deference to the Court's requests for certain clarifications on what claims the Tribe is bringing against which Defendants, the Tribe set forth its specific claims with reference to the particular federal statutes which protect discrete constitutional rights relative to the formation of contracts and property rights. To be clear, the Tribe does not concede or remove *any* claims from its Amended Complaint, but instead clarifies which claims it brings against which of the many Defendants involved in the conspiracy. And the Tribe does now bring claims against DNR Executive Director Joel Ferry because, like former director Defendant Styler when he held office, Defendant Ferry, as will be demonstrated herein, is in a position to either further the conspiracy he inherited or aid in ending it. Moreover, once it came to the Tribe's attention that DNR accepts federal money, it became clear that DNR is a proper defendant in this lawsuit.

As a point of procedure, and in the interest of judicial economy, the Tribe herein responds only to the arguments Defendants bring in their motion to dismiss the Amended Complaint and hereby incorporate by reference its opposition to the arguments that some of these Defendants previously raised in their earlier motion to dismiss the original Complaint. To be clear, the Tribe preserves, for purposes of any necessary appeal, all claims against Defendants, including Defendant Governor Cox, for all the reasons set forth in its prior briefing.

# ARGUMENT

**I.        Defendant Styler is a proper defendant in his official capacity.**

Defendants' protestations notwithstanding, the fact that Defendant Styler is no longer the Director of DNR is immaterial for purposes of the *Ex Parte Young* exception to state sovereign immunity. As also set forth in detail in the contemporaneously filed response to Defendant Ure's motion to dismiss, because the Tribe has alleged an ongoing conspiracy in violation of the Tribe's constitutional rights, it properly brings a claim against Defendant Styler for his role in that conspiracy.

In the Tenth Circuit, the "continuing violation doctrine, as a general principle of the federal common law, is available to a § 1983 litigant." *Herrera v. City of Espanola*, 32 F.4th 980, 994 (10th Cir. 2022). It is "an equitable principle." *Id*. at 993 (internal quotations and citation omitted). The doctrine emerged from the idea that certain claims are "based on the cumulative effect of individual acts… such that if any acts occurred within the statute of limitations, the entire course of conduct can be pursued in the action. Put another way, the continuing violation doctrine applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*, as opposed to conduct that is a discrete unlawful act." *Id*. (internal quotations and citation omitted). The doctrine is "triggered by **continual unlawful acts**, not by continual ill effects from the original violation." *Id*. (internal quotations and citation omitted) (emphasis added). "The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period." *Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005). Here, as set forth herein, Defendant Styler played a critical role in the chain of wrongs that continue to this day.

### II. Defendant Styler in his individual capacity is not entitled to qualified immunity on any federal claim.

As a preliminary matter, the defense of qualified immunity does not apply to state actors in a Section 1983 suit where the remedy sought is injunctive relief rather than damages. For this reason, to the extent the Tribe seeks injunctive relief, Defendant Styler's "defense" of qualified immunity is irrelevant. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144 (2001).

Beyond this, qualified immunity "shields public officials from damages[1] actions unless their conduct was unreasonable in light of clearly established law." *Booker v. Gomez,* 745 F.3d 405, 411 (10th Cir. 2014). According to the Supreme Court, the defense protects "all but the plainly incompetent or those **who knowingly violate the law.**" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (emphasis added). In other words, qualified immunity provides individual state actors an affirmative defense, provided that the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. As set forth below, the Tribe has clearly pleaded that Defendant Styler knowingly violated the Tribe's constitutional rights when he participated in the conspiracy to deprive the Tribe from the opportunity to purchase Tabby Mountain, as any other high bidder would have been able to do.

### A. Defendant Styler ignores the clear distinction between the pleading standard in federal constitutional claims involving invidious discrimination and the evidentiary standard applicable to such claims.

In the jurisprudence surrounding claims of invidious discrimination, a court asks whether the challenged state action intentionally discriminates between groups of persons, understanding that 'intentional discrimination can take several forms.'" *SECYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). One such form is when generally applicable laws initially enacted with entirely proper (non-discriminatory) purposes themselves later become tools of intentional discrimination in the course of

---

4

their enforcement. In the paradigmatic example of this line of cases, the Court faced a law barring the operation of commercial laundries in wood buildings without a permit. *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886). This generally applicable law would have been perfectly unobjectionable (an attempt to control the fires that plagued San Francisco in the nineteenth century), bur for the fact that all two hundred Chinese operators were denied a permit while seventy-nine out of eighty white operators received authorization." *Id.*

Because apparently neutral or legitimate but ultimately pretextual explanation is so often utilized by those who commit discriminatory acts, civil rights plaintiffs are permitted to and often do use circumstantial evidence to prove invidious discrimination. As the Supreme Court of the United States stated in 1977:

> Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent **as may be available**. . . . Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face. The evidentiary inquiry is then relatively easy. But such cases are rare. Absent a pattern as stark as that in *Gomillion* or *Yick Wo*, impact alone is not determinative, and the Court must look to other evidence.

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977) (Emphasis added.). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a motion to dismiss and "unlock the doors of discovery",

> A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . .
>
> When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

> entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (internal citations and quotations omitted).

In *Ashcroft*, the plaintiff brought a Bivens action –the "federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983." *Id.* at 675 (internal citations and quotations omitted). As such, its analytical lens is particularly helpful here. After the Court identified the applicable elements for a claim of unlawful discrimination, it analyzed whether the plaintiff "nudged [his] claims of invidious discrimination across the line from conceivable to plausible" under the lenient pleading standards of FRCP 8(a). *Id.* at 680 (internal citations and quotations omitted). The now familiar law regarding a prima facie case and burden shifting related to alleged nondiscriminatory reason is a helpful prism for conducting that analysis, but it must be pleading standards. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Under the evidentiary standard that will apply later in this case, the Tribe can meet its burden through either direct evidence of discrimination or indirect evidence. "A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) **or** indirect (i.e., circumstantial) evidence of discrimination." *Burns v.Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1283 (10th Cir. 2003) (citing *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1225 (10th Cir. 2000) (emphasis added); *Villanueva v. Carere*, 85 F.3d 481, 486 (10th Cir. 1996). Indeed, determining whether an invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'") (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Under the pleading standard, which is the applicable standard here, a plaintiff "need not

6

allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 299 (S.D.N.Y 2016) (citing *EEOC v. Port Auth of N.Y & N.J.*, 768 F.3d 247, 254 (2d Cir. 2013). "[I]n making the plausibility determination, the court must be mindful of the 'elusive' nature of intentional discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

**B. Federal rights were clearly established at the time of the unlawful conduct**.

As the Court recognized, because the right to contract for and purchase land and to not be discriminated against is not an exclusively sovereign right, the Tribe is a person under Section 1983 for its claims of unlawful discrimination. Further, the Court recognized that the Tribe's claims can be brought as *parens patriae* on behalf of its members, who are indisputably people entitled to federal constitutional protections. Indeed, Section 1983 of Title 42 provides a cause of action when a "person" violates another "person's" constitutional rights. 42 U.S.C § 1983. Sections 1981 and 1982, which protect rights to "make and enforce contracts" and to "inherit, purchase, lease, sell, hold, and convey real and personal property," respectively, are enforceable through Section 1983. *See Jett v. Dallas Indep. Sch. Dist.,* 491 US 701, 722 (1989).

**1. The Tribe states a claim against Defendant Styler for violations of Section 1981.**

Section 1981 prohibits discrimination in the making and enforcement of contracts. Here, whether or not there was a contract formed between SITLA and the Tribe is not dispositive. Indeed, Section 1981 safeguards the Tribe's rights in the making, performance, modification, and termination of contracts, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).

In order to state a claim under Section 1981, a plaintiff must show (1) that plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3)

that the discrimination interfered with a protected activity as defined in Section 1981. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001)).

The Tribe has clearly pleaded Defendant Styler's interference with the Tribe's ability to contract for the sale of Tabby Mountain in a way that would certainly not have happened had DNR had the highest bid. See particularly § 2, 3, 4, 5, 10 as well as the discussion *infra* at pp. 11-12.

**2. The Tribe states a claim against Defendant Styler for violations of Section 1982.**

Section 1982 protects the constitutional rights of all citizens of the United States to inherit, purchase, lease, sell, hold, and convey real and personal property without racial discrimination. This statute ensures that these property rights are enjoyed equally by all citizens, regardless of race, as is enjoyed by white citizens. 42 U.S.C § 1982. The statute bars all racial discrimination, both private and public, in the sale or rental of property. *Jones v. Alfred H. Mayer Co.* 392 U.S. 409 (1968). This interpretation was reaffirmed when the Supreme Court emphasized that the statute forbids both official and private racially discriminatory interference with property rights. *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615 (1987). The statute was intended to protect identifiable classes of persons who are subject to **intentional discrimination solely because of their ancestry or ethnic characteristics**. *Id.* (Emphasis added).

The historical context of 42 USC § 1982, derived from the Civil Rights Act of 1866, underscores its foundational role in securing property rights for all citizens. The statute was enacted under the sanction of the Thirteenth Amendment and re-enacted after the adoption of the Fourteenth Amendment to ensure that colored persons have the right to purchase property and enjoy and use the same without laws discriminating against them solely on account of color. *Buchanan v. Warley*, 245 U.S. 60 (1917).

The Tribe has clearly pleaded against Defendant Styler the elements of a Section 1982 claim.

Here, in its Amended Complaint, the Tribe pleads clearly that "The Ute Indians of the Uintah and Ouray Indian Reservation constitute a distinct minority population based on race, ancestry, ethnicity, national origin and relation." Amended Complaint at § 18. Also, at §§ 32-43, in particular, the Tribe explains how the history of the Tribe and the land in question lays the foundation and context for the ongoing discrimination it is experiencing at the hands of Defendants, including Defendant Styler.

### 3. The Tribe states a claim against Defendant Styler for a violation of 42 U.S.C. § 1985.

42 U.S.C. § 1985 addresses conspiracies to interfere with civil rights. It is divided into three subsections: (1) preventing an officer from performing duties, (2) obstructing justice by intimidating parties, witnesses, or jurors, and (3) depriving persons of rights or privileges. 42 U.S.C. § 1985. For present purposes, 42 U.S.C. § 1985(3) provides that if two or more persons conspire to deprive any person or class of persons of equal protection of the laws, and if an act in furtherance of the conspiracy results in injury or deprivation of rights, the injured party may seek damages against the conspirators. *Id.* So to establish a claim under 42 U.S.C. § 1985(3), a plaintiff must (1) demonstrate a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting from the conspiracy. *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1030 (D. Kan. 2024). Additionally, the conspiracy must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. *Id; Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993). As set forth below, the Tribe has clearly pleaded that Defendant Styler knowingly violated the Tribe's constitutional rights when he participated in the conspiracy to deprive the Tribe from the opportunity to purchase Tabby Mountain, as any other high bidder would have been able to do.

The Tribe's Complaint alleges that Defendant Styler played a key and pivotal role in the illegal discrimination aimed at the Tribe. Specifically, in ¶ 13, the Tribe's Amended

Complaint notes that Defendant Styler "was the Director of DNR from about January 2005 until June 2019, and took actions related to this matter under color of the law of the State of Utah." The sequence of events leading up to and including SITLA's discriminatory decision not to sell Tabby Mountain to the Tribe occurred from 2018-2019—all within the time period that Defendant Styler served as DNR's Director. The Tribe's Amended Complaint at ¶¶ 62 and 64 details how "[o]n December 20, 2018, Margaret Bird (in a role as a consultant and also on behalf of two state university realty officers) sent a memo to SITLA Director Ure regarding the proposed sale. She did not question whether selling the land was in the Trust's best interests, but did question the prudence of the proposed plan for marketing the property. … In that same memo and related communications, *Ms. Bird expressed her view that Director Ure had structured the sale process with the goal of selling the land to DNR, instead of with the goal of maximizing the income to the trust*." (Emphasis added). It was Director Styler who worked with Defendants Ure and SITLA to thwart the sale to the Tribe by seeking additional funds from the State, so that it could outbid the Tribe. Amended Complaint at §79. In furtherance of the conspiracy to keep the land out of the hands of the Indians, it was Director Styler who, after the attempt to obtain additional funding failed, conspired with other Defendants to have SITLA suspend the sale. Amended Complaint at §80. Defendant Styler and others knew the bid of $50,000,000 was a sham, but made it anyway to carry out the conspiracy they had concocted. Tribe's Amended Complaint at ¶ 88.

Defendant Styler's argument that the Tribe has failed to allege discrimination on his part, both as an individual actor and as a member of the conspiratorial scheme designed to keep Tabby Mountain out of the Tribe's hands cannot stand in light of the facts extracted from the Tribe's Complaint and highlighted above. Not only has the Tribe shown circumstantial and direct evidence of discrimination, but it has highlighted Defendant Styler's participation in that

discrimination clearly and directly. For all of these reasons, Defendant Styler is not entitled to qualified immunity and is a proper defendant in both his individual capacity and his official capacity.

### III. DNR is a proper defendant because it receives federal funds and discriminated against the Tribe in violation of 42 U.S.C. § 2000(d).

According to Defendant DNR, the Tribe's Title VI claim against DNR fails because the Tribe has not pleaded that DNR has discriminated against it.

To the contrary, the Tribe's Amended Complaint alleges that DNR wanted to purchase Tabby Mountain and to keep the Tribe from owning it and, therefore, worked together with Defendants SITLA, Ure, and Styler to fabricate a public record to hide their discrimination." Amended Complaint, §§ 2-3. Then, as explained in the Tribe's Amended Complaint, when DNR and SITLA became aware that the Tribe was the high bidder, they conspired to make sure SITLA would not sell the land to the Tribe, even though they both knew that DNR did not have the financial ability to make a binding bid which would exceed the Tribe's bid. Amended Complaint at §§ 75-76. When SITLA and DNR's first plan for thwarting sale to the Tribe, i.e. seeking additional funds from the State, failed, DNR participated in the decision for SITLA to suspend the sale. Amended Complaint at §§ 80-94. In short, DNR is and was neck-deep in the ongoing conspiracy to prevent the sale to the Tribe.

With regard to the Tribe's Title VI claim, the Tribe alleged that "DNR annually receives millions of dollars of federal funding for a variety of programs and purposes" including "from excise taxes placed on the sale of certain sporting goods, typically products associated with hunting and fishing, both of which are popular recreation activities on Tabby Mountain." Amended Complaint at §§ 87, 162. Further, the Tribe pleaded that "DNR's sham bid of $50,000,000, like its prior bid of $41,000,000, was contingent upon DNR accessing and

11

transferring millions of dollars of federal funds to SITLA, and that therefore discrimination based upon race, color, and/or national origin against the Tribe was further prohibited by 42 U.S.C. § 2000(d)." Amended Complaint at § 163. At this pleading stage, these allegations are more than sufficient to state a Title VI claim against DNR.

### IV. Defendant Ferry in his official capacity is a proper defendant.

For purposes of the *Ex Parte Young* analysis, Defendant Ferry, as the successor to Defendant Styler, in his official capacity is undoubtedly a proper defendant in this lawsuit. The real party in interest in such suits is the governmental entity, and the entity's policy or custom must have played a part in the violation of federal law. *Hatfill v. Gonzales*, 519 F.Supp.2d 13 (2007). When officials sued in their official capacities leave office, their successors – here Defendant Ferry -- automatically assume their role in the litigation. *Lewis v. Clarke*, 581 U.S. 155 (2017). This principle is codified in Federal Rule of Civil Procedure 25(d), which states that an action does not abate when a public officer ceases to hold office while the action is pending; the officer's successor, here Defendant Ferry, is automatically substituted as a party.

If official action is unconstitutional, it does not preclude an injunction to halt such action. *Ex Parte Young*, 209 U.S. 123, 144 (1908). Courts have not limited the *Ex Parte Young* doctrine to "negative" relief, and have often ordered positive governmental action. In cases involving deprivation of constitutionally protected rights, "affirmative" relief has been granted, notwithstanding the fact that the incidental effect is that the state will be forced to expend funds from its treasury. *See, e. g. p Graham v. Richardson,* 403 U.S. 365, 366 (1971); *Gideon v. Wainwright*, 372 U.S. 335, 337 (1963); *Inmates of Suffolk Cnty. Jail v. Eisenstadt*, 360 F. Supp. 676, 678 (D. Mass. 1973); *Martarella v. Kelley*, 349 F. Supp. 575, 577 (S.D.N.Y. 1972).

Further, official documents obtained pursuant to a GRAMMA request belie Defendant

Ferry's assertion that there is "simply no equitable relief he can provide under the doctrine of *Ex parte Young*." Dkt. 79 at 10. These documents indicate that, despite the instant ongoing litigation, Defendants DNR and Director Ferry are taking efforts to purchase Tabby Mountain from SITLA. See **Exhibit 2.** Under the circumstances, such action constitutes a violation of the Tribe's federal constitutional rights as well as a furtherance of the ongoing conspiracy to keep the Tribe from getting Tabby Mountain.

It is worth remembering that there is an important historical background informing Defendants' series of ongoing official actions taken for invidious purposes, including Defendants Ferry and DNR's recent efforts to purchase Tabby Mountain. The Tribe's Amended Complaint explains the lengthy historical backdrop that contextualizes the Defendants' modern-day perpetuation of discriminatory harm against the now-minority Native American population in Utah through land takings and control. Specifically, at §§ 31-43, the Amended Complaint details how Taby Mountain was owned entirely by the Tribe as part of its ancestral and aboriginal homelands. Western non-Indian expansion into Utah resulted in the cession of the majority of the Tribe's homelands, and the State now somehow claims it owns the surface estate for Tabby Mountain[2] – a place of special religions significance, sustenance, and reverence to the Tribe and Tribal members. The Complaint explains how these systemic takings of the Tribe's homelands evince unparalleled racial animus, being "the intention, purposeful, and/or knowing diversion of land from a minority population in order to make that land available for the primary or exclusive benefit of the non-minority population. Amended Complaint at § 39. This historical backdrop reveals a "series of official actions taken for invidious purposes," and highlights the extraordinary injustice of government actors first

---

[2] The chain of title for Tabby Mountain appears to present certain unusual defects.

taking land from the Tribe, putting that land up for auction, and **then rejecting the Tribe's bid as the highest bidder on the very land that was taken.**

For all of these reasons, these Defendants' motion to dismiss the Amended Complaint should be denied.

DATED this 22nd day of May, 2025.

PATTERSON REAL BIRD & WILSON LLP

/s/ Linda F. Cooper
Linda F. Cooper, Pro Hac Vice
Jeremy J. Patterson, Pro Hac Vice
1900 Plaza Drive
Louisville, Colorado 80027
Phone: (303) 926-5292
Facsimile: (303) 926-5293
Email: lcooper@nativelawgroup.com
Patterson Real Bird & Wilson LLP

J. PRESTON STIEFF LAW OFFICES, LLC

/s/ J. Preston Stieff
J. Preston Stieff (4764)
110 South Regent Street, Suite 200
Salt Lake City, Utah 84111
Phone: (801) 366-6002
Email: jps@StieffLaw.com

*Counsel for Plaintiff*