```
                   UNITED STATES DISTRICT COURT

                         DISTRICT OF UTAH

                              -o0o-


UTE INDIAN TRIBE OF THE      )
UINTAH AND OURAY INDIAN      )
RESERVATION, a federally     )
recognized Indian Tribe,     )
                             )  Case No. 2:23-cv-00295
      Plaintiff(s),          )
                             )
v.                           )
                             )
DAVID URE, MICHELLE          )
MCCONKIE, MICHAEL STYLER,    )
SPENCER COX, UTAH SCHOOL AND )
INSTITUTIONAL TRUST LANDS    )
ADMINISTRATION,              )
                             )
      Defendants.            )
_____)



            BEFORE THE HONORABLE DAVID B. BARLOW

                              ---

                    Monday, November 18, 2024

                     1:34 p.m. to 1:53 p.m.

                    Motion for Clarification

                       Status Conference

                              ---


Reported by:  Michelle Mallonee, RPR, CCR   (801) 209-4979
351 S. West Temple, #7.130, Salt Lake City, Utah 84101
```

1

```
 1                          APPEARANCES

 2
     For Plaintiff Ute Indian Tribe of the Uintah and
 3   Ouray Reservation:

 4           LINDA F. COOPER, ESQ.
             PATTERSON EARNHART REAL BIRD & WILSON LLP
 5           1900 Plaza Drive
             Louisville, Colorado 80027
 6           (303) 926-5292
             lcooper@nativelawgroup.com
 7
             J. PRESTON STIEFF, ESQ.
 8           J. PRESTON STIEFF LAW OFFICES LLC
             311 S. State Street, Suite 450
 9           Salt Lake City, Utah 84111
             (801) 366-6002
10           jps@stiefflaw.com

11
     For Defendants Michelle McConkie, and Utah School
12   and Institutional Trust Lands Administration:

13           VANESSA R. WALSH, ESQ.
             UTAH ATTORNEY GENERAL'S OFFICE
14           160 East 300 South, 5th Floor
             Salt Lake City, Utah 84114
15           (801) 366-0353
             vwalsh@agutah.gov
16
             ROBERT G. WING, ESQ.
17           PARR BROWN GEE & LOVELESS, P.C.
             101 South 200 East, Suite 700
18           Salt Lake City, Utah 84111
             (801) 532-7840
19           rwing@parrbrown.com

20
     For Defendant Governor Spencer Cox and Former Director
21   Michael Styler:

22           KYLE J. KAISER, ESQ.
             UTAH ATTORNEY GENERAL'S OFFICE
23           160 East 300 South, 5th Floor
             Salt Lake City, Utah 84114
24           (801) 366-0353
             kkaiser@agutah.gov
25
                                                               2
```

```
 1  For Defendant David Ure:
 2         ANDREW R. HOPKINS, ESQ.
            UTAH ATTORNEY GENERAL'S OFFICE
 3         160 East 300 South, 5th Floor
            Salt Lake City, Utah 84114
 4         (801) 366-0353
            arhopkins@agutah.gov
 5
 6                      * * *
```

1            Monday, November 18, 2024; Salt Lake City, Utah
2                            1:34 p.m.
3                             -o0o-
4            THE COURT:  Good afternoon.  We're convened in
5    Case No. 2:23-cv-295, the Ute Indian Tribe of Uintah and
6    Ouray Reservation v. Ure, et al.
7            Would counsel for the plaintiff please state their
8    appearance.
9            MR. STIEFF:  Good afternoon, Your Honor.  Preston
10   Stieff along with Linda Cooper for the plaintiff.
11   Ms. Cooper will be conducting the argument on our behalf.
12           THE COURT:  Very well.  Thank you, Counsel.
13           Counsel for the defendants.
14           MS. WALSH:  Vanessa Walsh and Robert Wing for
15   SITLA and Michelle McConkie.
16           THE COURT:  Thank you.
17           MR. KAISER:  Kyle Kaiser for Governor Cox and the
18   former Director Styler.
19           MR. HOPKINS:  And Andrew Hopkins for David Ure.
20           THE COURT:  Thank you, Counsel.  And thank you for
21   the correction of the pronunciation of his name as well.
22           All right.  So we're here on a motion for
23   clarification and for a status conference.  And the posture
24   means that, really, what we'll be doing here is not you
25   making arguments to me about what I did, but me explaining

                                                              4

1  to you, since you've raised some questions about what it was
2  that the Court did or did not do in its ruling.  But I still
3  want to hear from you.  So I'm going to give my thoughts in
4  response, answering the questions that you raised, talk a
5  little bit about the posture of the case and maybe how that
6  led us to be where we are right now.  Then I'll suggest a
7  way forward and hear any of your thoughts regarding it.
8           So of course, I, in doing this, reviewed the
9  Order, the Complaint, and the briefing on the motions that
10 we're here to discuss.
11          I'll state initially, just because I think it will
12 be helpful to you going forward in this case as we work on
13 this together, that the seeds of the uncertainty that ended
14 up coming to fruition in the ruling, to me, sort of begin
15 with the Complaint itself.  And here's what I mean by
16 that -- not the entirety of the Complaint, but just parts of
17 it.
18          The Complaint itself is really heavily focused on
19 an alleged conspiracy to deprive the individuals of the
20 Tribe of their constitutional rights.  It begins very early
21 in the complaint and permeates it.  I think I brought a copy
22 of the Complaint here with me.  I'll give you some examples
23 of what I'm talking about here.
24          So for example, looking at paragraphs, starting
25 with 82, "As part of their conspiracy and also to hide their

5

```
 1  unlawful conspiracy from the Tribe and the public,
 2  Defendants created a false public record."
 3            "Behind the scenes, Defendants conspired that the
 4  public record would begin with SITLA publicly giving DNR an
 5  opportunity to increase its bid...."
 6            Defendants knew that the bid was a sham.
 7            85.  "Consistent with that conspiracy...SITLA
 8  publicly gave DNR twenty-four hours to counter the Tribe's
 9  bid."
10            86.  "Consistent with that conspiracy, DNR
11  submitted a new...bid."
12            88. "Defendants knew the bid...was a sham."
13            89.  Defendants conspired that after certain
14  actions were taken, other actions would be taken, and so on
15  and so forth.
16            So that seems to be the thrust of the Complaint
17  here.
18            If I were summarizing my understanding of the
19  Complaint in a single sentence, I think it would have to be
20  something like:  This case involves a wide-ranging
21  conspiracy of state employees to deprive the plaintiff of
22  the right to purchase Tabby Mountain, or something like
23  that.
24            So then we get to the causes of action.  And you
25  get to Count No. 1, and it references either conspiracy,
```

6

1  acting in concert, or defendants' actions collectively
2  instead of individually at least ten times, by the Court's
3  count.  But Count 1 also, especially -- this is made clear
4  in retrospect -- is ambiguous because of how it was pled.
5  Count 1 references two constitutional provisions, equal
6  protection and due process; five federal statutory
7  provisions, Sections 1981, 1982, 1983, 1985, 2000d, so it
8  might be read to be stating one claim or two claims or three
9  claims.  The reader can't tell with confidence, because we
10 have so many different constitutional and statutory
11 provisions that are referenced.  And again, the thrust of
12 the Complaint seems to be grounded in conspiracy.
13         So we have at the outset kind of a pleading
14 clarity problem that I think has got us in this posture
15 right now; meaning, as a general matter, as all the
16 experienced and talented lawyers before me know, the
17 practice is one count, one claim.  So that's why we have
18 multiple counts in the Complaint, is so that you parse them
19 out into however many different claims that you have, and
20 each one contains one and not more than one, so you don't
21 end up with a situation where there's a question about
22 whether you're pleading one thing or two things or three
23 things.
24         There is another ambiguity in the Complaint, and
25 that is the lack of any discussion of whether certain actors

7

1    are being sued in their official or individual capacities.
2    We just don't really have information about that in the
3    Complaint regarding Governor Cox, Director Ure, and then
4    McConkie, and Styler.  Then, of course, as you know already,
5    the Court dealt with that as best it could, based on the
6    information that it had in the order.
7            So that's the posture in which the Court
8    encounters the Complaint.  And in some ways, that's why you
9    sometimes have multiple, you have more than one complaint --
10   or an amended complaint, is what I mean to say, because the
11   case is in its early stages.
12           Now, we're here specifically because the
13   defendants had asked the Court to clarify four things.  And
14   of course, I have the plaintiff's position on where the
15   Court should be on those things.
16           Question No. 1 -- well, in some ways these were
17   postured not so much as questions, but here's how I'd like
18   the Court to view what it did, or here's what I hope the
19   Court did in its opinion.
20           So defendants, first they clarify that Count No. 1
21   has been dismissed in its entirety, not just the conspiracy
22   claim.  So Count No. 1, the Court did dismiss it in its
23   entirety without prejudice, but that was because the Court
24   viewed it as a conspiracy claim, a conspiracy to deprive the
25   Tribe of its due process and equal protection rights, not as

8

1    three different claims -- a conspiracy-to-deprive claim, a
2    due-process claim, and an equal-protection claim -- because
3    the Court's expectation is that each claim will be stated
4    separately by plaintiff in a cause of action.
5              So if plaintiff meant to state or intends to state
6    multiple different causes of action, the process would be to
7    file an amended complaint making that clear, so we just have
8    one in each; each count would state what claim is being
9    alleged against which particular defendants and in what
10   capacity, meaning official or individual.
11             The second issue was to clarify that Count 2 has
12   been dismissed.  This is the plea for declaratory and
13   injunctive relief.  And I'm not really sure why defendants
14   were asking about that.  I don't recall the motions to
15   dismiss discussing Count 2's request for declaratory and
16   injunctive relief in any detail.  It may be that I missed
17   it, but I don't recall this being a feature of the motions.
18   In any event, the opinion certainly doesn't address it or
19   dismiss it.  So Count 2 has not been addressed or dismissed
20   by the Court.
21             Now, to make it clear enough, these are requests
22   for particular kinds of relief, they're not stand-alone
23   claims.  So there isn't some specific individual liability
24   in Count 2, but instead, something that would be addressed
25   at a later date.

9

1           The third issue was to clarify that Governor Cox,
2  Director Styler, and Director McConkie have been dismissed
3  as defendants, both in their official and individual
4  capacities.
5           Now, I start by noting that the Court, of course,
6  does not dismiss defendants but dismisses claims.  Having
7  said that, I don't see a current non-dismissed claim where
8  Governor Cox is a defendant.  So I think post the Court's
9  order, I don't see where he would still be present with a
10 claim against him.
11          Current Director McConkie and Former Director
12 Styler, I believe, are still in on Count 3, breach of trust,
13 which the Court did not address.
14          All right.  And then the fourth question was to
15 clarify that no claims remain against SITLA.  So on that
16 one, again, I'm not sure why the defendants are asking about
17 that.  Page 22 of the order states that SITLA "is entitled
18 to claim Eleventh Amendment immunity from suit in federal
19 court," so I think that's contained very explicitly already
20 in the ruling.  If it's immune under the Eleventh Amendment,
21 then it's not capable of being sued in federal court.  So
22 those are my thoughts in response to the defendants'
23 questions.
24          I have already indicated but want to make plain,
25 Counsel for the plaintiff, that we're at an early stage in

10

1   the litigation.  These clarifications can be made by the
2   plaintiff, if they wish to make them.  And the nature of
3   your interactions suggested to the Court that that would
4   very likely be the result.
5             So I've done my best here to explain to you what
6   my thinking was regarding it.  And I want to give you both a
7   chance to say anything that you'd like to about that
8   clarification, and then we can see whether there's anything
9   else to take up.
10            So we're here on the defendants' motion.  I'm
11  going to go ahead and let you speak first, and then I'll
12  turn to plaintiff's counsel.
13            MS. WALSH:  Is standing at the podium better?
14            THE COURT:  Yeah, it's probably easier here just
15  because the microphones will be closer to where you'll be
16  speaking.
17            MS. WALSH:  I just had a couple of questions, Your
18  Honor, as were you going through that.  We still have a
19  little bit of a question.
20            One of the counts, I think it was Count 3,
21  dismissed Ms. McConkie in her individual capacity.  And I
22  want to, I guess, make sure that I'm clear:  She's remaining
23  in Count 3 in her official capacity?
24            THE COURT:  Well, I'm not going to add to the
25  ruling in any way.  So if I didn't address official

1  capacity, then I haven't said anything about it.  And the
2  question would be whether she was brought in the suit in her
3  official capacity or not.
4           Again, back to our original issue, I don't
5  remember the Complaint ever saying whether people were being
6  brought in their official capacity or individual capacity.
7  And I suspect we're going to see a new complaint anyway.  At
8  least plaintiff's counsel appears -- I'm not going to speak
9  for her.  She will speak for herself momentarily.
10          Go ahead, Counsel.
11          MS. WALSH:  The Court also -- they made a Rule 8
12 argument for Ms. McConkie in her individual capacity because
13 there are no allegations pled to her.  And the Court didn't,
14 outside of the conspiracy, did not address the Rule 8.
15          Can we take either no allegations against her in
16 her individual capacity for all of the claims, or just
17 specific to that one and she remains in in her individual
18 capacity for the other claims?
19          THE COURT:  So Counsel, if I failed to do that,
20 like if I inadvertently didn't address that specific issue,
21 I won't expand it now from the bench.  And so if I failed to
22 cover it, whether we have a new amended complaint or not,
23 the defense side will have leave either to address an
24 amended complaint, if that's what we get, or if we do not
25 and you feel like there is an additional motion that needs

12

1  to be filed to address something that the Court may have
2  missed, you'll have leave to do so.
3         MS. WALSH:  Okay.  And then my final comment.
4         The Court indicated that in our motion to dismiss,
5  we did not discuss Claim 2 for specific relief.  And I would
6  point the Court to Section 1.3 of our motion to dismiss and
7  then Section 2 of our reply brief, in which we addressed
8  both of those.
9         THE COURT:  Okay.  Thank you, Counsel.
10        Counsel for the plaintiff?
11        MS. COOPER:  Thank you, Your Honor.  We certainly
12 appreciate what you point out about the Complaint, and so I
13 thank you and say that an amended complaint will be
14 forthcoming.
15        THE COURT:  Okay.  Very well.
16        And Counsel, how long would you like to have?
17 Just so that we kind of have the batting order set up, about
18 how long would you like to file the amended complaint?
19        MS. COOPER:  Would 30 days be acceptable?
20        THE COURT:  Umm-hmm.  We normally do 28 or 38.
21 Let's call it 30.
22        And then the ordinary briefing schedule would
23 apply, so 28, 28, and 14 to the motion to dismiss, unless
24 anybody would like to move for something different than
25 that.

13

1     MS. COOPER:  Okay.
2     THE COURT:  Is that acceptable to the plaintiff's
3  side?
4     MS. COOPER:  Yes, it is, Your Honor.
5     THE COURT:  How about the defense side?
6  Twenty-eight, and then plaintiff will have 28, and then
7  you'll have 14?
8     MR. KAISER:  It would be acceptable to me, Your
9  Honor.  I was just doing the math in my head.  That will put
10 our responses due through the holiday season.  So I would
11 say that that timeline is fine now, but we might request an
12 extension if the holidays....
13    THE COURT:  Sure.  And I know that counsel for
14 both sides, you'll work together on those issues, especially
15 on something like this and so early in the case.  If you
16 agree to some other schedule, there won't be an issue.  But
17 do let us know so that we can adjust our order.  Okay.
18    MS. COOPER:  Thank you, Your Honor.
19    THE COURT:  You're most welcome.
20    Counsel?
21    MR. KAISER:  May I ask one further clarification
22 question?
23    THE COURT:  You may.
24    MR. KAISER:  In the Court's clarification, you
25 said that Mr. Styler and Ms. McConkie were still -- or

14

1  Ms. McConkie was still in on Count 3.  Count 3 is the breach
2  of trust claim that is brought under state law, and a
3  conspiracy to violate law, state and federal.  And as I read
4  the Court's order on page 38, it says, "The Tribe's
5  non-breach of contract state law claims are dismissed."  So
6  I understood that to apply not only to the subsequent claims
7  of equitable estoppel and whatever those were sort of at the
8  end, but also to the breach of trust claims because of the
9  conspiracy to violate law that appeared to be addressed by
10 the Court's order on Count 1.  And so the only thing that
11 would have been left was breach of trust under state law.
12         Was it the Court's intent to dismiss that breach
13 of trust claim?  And it might not matter, because we're
14 going to get an amended complaint.  But to the extent that
15 the arguments that we made about the state law claims would
16 apply to the breach of trust claim under state law, that
17 might affect what the plaintiff decide to do on their
18 amendment, and it might affect our arguments in the future.
19 So clarification would be helpful.
20         THE COURT:  Okay.  So I feel like all of this is
21 really sort of mooted by the fact that we're going to have
22 an amended complaint.  I appreciate you raising it, but I
23 don't know that there's any need to parse it.  And I don't
24 recollect, as I sit here now about, in terms of how it was
25 argued by both sides in your briefs, whether it was clear

15

1  that all that was left for breach of trust was a state law
2  avenue or not.
3         And again, I guess we have a smaller species in
4  Count 3 of the issue that I raised for Count 1, which is we
5  have a breach of trust allegation and then a conspiracy to
6  violate law.  The breach of trust appears to be stated under
7  state law, the conspiracy to violate law under state and
8  federal law.
9         So I wonder if in this next go-around we'll have
10 an opportunity for a pleading that just contains one cause
11 of action under each count, and it will probably help all of
12 us, including the Court, to be more precise in that next
13 round.  So why don't we leave it there, Counsel.
14        MR. KAISER:  Thank you.  I appreciate it, Your
15 Honor.
16        THE COURT:  All right.  Counsel, first for the
17 plaintiff and then for the defendants, is there anything
18 else that we should take up in this hearing today?
19        MS. COOPER:  Your Honor, on behalf of the
20 plaintiff, we have nothing else.  And we thank the Court for
21 its time.
22        THE COURT:  Most welcome.  Thank you, Counsel.
23        Anything from counsel for the defendants that you
24 wish to take up?
25        MS. WALSH:  No, thank you.

16

```
 1            MR. KAISER:  No, thank you, Your Honor.
 2            THE COURT:  All right, then.  Very well.  Counsel,
 3   thank you for your efforts in this matter.  We'll be in
 4   recess.  And if you need a scheduling order that is
 5   different than the 28, 28, and 14, you'll let me know that
 6   you've agreed, or that you, unfortunately, despite your best
 7   efforts, cannot agree, and then we'll help you resolve it.
 8   Thank you, Counsel, we're in recess.
 9        (The matter concluded at 1:53 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                  COURT REPORTER'S CERTIFICATE

 2


 3   State of Utah         )
                           ss.
 4   County of Salt Lake   )

 5             I, Michelle Mallonee, a Registered Professional
     Reporter in and for the State of Utah, do hereby certify:
 6
               That the proceedings of said matter was
 7   reported by me in stenotype and thereafter transcribed into
     typewritten form;
 8
               That the same constitutes a true and correct
 9   transcription of said proceedings so taken and transcribed;

10             I further certify that I am not of kin or
     otherwise associated with any of the parties of said cause
11   of action, and that I am not interested in the event
     thereof.
12
               WITNESS MY HAND at Salt Lake City, Utah, this
13   3rd day of December 2024.

14

15

16                              [signature: Michelle Mallonee]

17                              _____
                                Michelle Mallonee, RPR, CCR
18                              Utah CCR #267114-7801
                                Expires May 31, 2026
19

20

21

22

23

24

25
                                                             18
```