Robert G. Wing (4445) *rwing@parrbrown.com*
Thomas M. Melton (4999) *tmelton@parrbrown.com*
Kade Olsen (17775) *kolsen@parrbrown.com*
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Vanessa R. Walsh (16180) *vwalsh@agutah.gov*
Assistant Utah Attorneys General
DEREK BROWN (10476)
**UTAH ATTORNEY GENERAL**
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100

*Attorneys for Defendants Utah School and
Institutional Trust Lands Administration and
Michelle McConkie*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>   Plaintiff,<br><br>   vs.<br><br>DAVID URE, MICHELLE MCCONKIE, MICHAEL STYLER, SPENCER COX, JOEL FERRY, UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION, and UTAH DEPARTMENT OF NATURAL RESOURCES<br><br>   Defendants. | **REPLY IN SUPPORT OF THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Case No. 2:23-cv-295-DBB-DAO<br><br>Honorable David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

1.  The Tribe Concedes That Nearly All The Claims Against McConkie And SITLA
Should Be Dismissed ............................................................................................. 2

2.  The Court Should Dismiss The Official Capacity Claims Against McConkie. ............... 2

   2.1  A Continuing Violation, Standing Alone, Does Not Satisfy *Ex parte Young* .......... 3

   2.2  The Tribe's Requested Relief—An Order Requiring SITLA To Sell Land To
The Tribe—Would Violate Utah's Sovereign Immunity ......................................... 4

   2.3  The Tribe Has Not Alleged McConkie Continues To Violate Federal Law ........... 7

CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*ANR Pipeline Co. v. Lafaver*,
   150 F.3d 1178 (10th Cir. 1998) ........................................................................ 7

*Cantu Services v. Roberie*,
   535 F. App'x 342 (5th Cir. 2013) .................................................................... 8

*Edelman v. Jordan*,
   415 U.S. 651 (1974) ..................................................................................... 4, 5

*Gonzalez v. Feinerman*,
   663 F.3d 311 (7th Cir. 2011) .......................................................................... 4

*Green v. Mansour*,
   474 U.S. 64 (1985) ......................................................................................... 3

*Herrera v. City of Espanola*,
   32 F.4th 980 (10th Cir. 2022) ........................................................................ 4

*Hafer v. Melo*,
   502 U.S. 21 (1991) ......................................................................................... 2

*Hill v. Kemp*,
   478 F.3d 1236 (10th Cir. 2007) .................................................................. 3, 6

*Hollywood Mobile Ests. Ltd. v. Cypress*,
   415 F. App'x 207 (11th Cir. 2011) ................................................................ 3

*Houston v. Sheahan*,
   62 F.3d 902 (7th Cir. 1995) ........................................................................... 4

*In re Ayers*,
   123 U.S. 443 (1887) ..................................................................................... 2,5

*Idaho v. Coeur d'Alene Tribe*,
   521 U.S. 261 (1997) ................................................................................. 2, 3, 6

*Jamul Action Comm. v. Simermeyer*,
   974 F.3d 984 (9th Cir. 2020) ......................................................................... 6

*Kleidman v. Buchanan*,
   No. 23-cv-1251, 2025 WL 755945 (S.D. Cal. Mar. 10, 2025) ...................... 8

*KM Enterprises v. McDonald*,
   No. 11-cv-5098, 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012) ................... 8

**Page(s)**

*Muscogee (Creek) Nation v. Okla. Tax Comm'n,*
   611 F.3d 1222, 1227 (10th Cir. 2010) ....................................................... 3

*Nelson v. Univ. of Texas at Dallas,*
   491 F. Supp. 2d 672 (N.D. Tex. 2007) ....................................................... 3

*Papasan v. Allain,*
   478 U.S. 265, 281 (1986) ..................................................................... 6, 7

*Tiberi v. Cigna Corp,*
   89 F.3d 1423 (10th Cir. 1996) ................................................................. 4

*Va. Off. for Prot. & Advoc. v. Stewart,*
   563 U.S. 247 (2011) ........................................................................... 5, 6

*Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.,*
   961 F.3d 234 (3d Cir. 2020) ................................................................... 5

The Utah School and Institutional Trust Lands Administration ("SITLA") and Michelle McConkie respectfully file this reply in support of their motion to dismiss the Amended Complaint filed by the Ute Indian Tribe of the Uintah and Ouray Indian Reservation ("the Tribe").

## **INTRODUCTION**

The Tribe left little for the Court to resolve. The Tribe admits that the Amended Complaint copies and pastes the state-law claims from the Original Complaint; the Court can therefore dismiss those claims again and with prejudice. The Tribe also agrees that it cannot bring its federal claims against SITLA, that it cannot state a claim under Title VI, and that it has not brought a personal capacity claim against McConkie.

What remains is the Tribe's official capacity claim against McConkie. That claim still faces multiple dispositive problems. *First*, the Tribe assumes that if it alleges a "continuing violation," then it can seek any relief from the State. No court has endorsed the Tribe's reading of *Ex parte Young*. *Second*, the Amended Complaint's sole requested relief asks the Court to order SITLA to sell the State's property. Yet the Supreme Court has held time and again that federal courts cannot order states to specifically perform contracts or divest their property. *Third*, the Tribe has not alleged a continuing violation of federal law. This dispute instead centers on a single, isolated transaction involving one property.

Courts regularly dismiss official capacity claims at the pleading stage when confronted with similar allegations. The Court should do the same here.

## ARGUMENT

### 1. The Tribe Concedes That Nearly All The Claims Against McConkie And SITLA Should Be Dismissed

The Tribe says that it repleaded most of its already-dismissed claims to "preserve" them "for purposes of appeal." (Opp. at 2.) Accordingly, the Court should dismiss again the claims for breach of trust (Count VI), fraud (Count VI), conspiracy to commit fraud (Count VII), breach of contract/estoppel/equitable conversion (Count VIII), violation of Title VI (Count V), and SITLA's alleged violations the federal civil rights statutes (Counts I-V, IX). The Tribe also concedes that it did not bring a personal capacity claim against McConkie. (Opp. at 2.) That leaves the Tribe's official capacity claim against McConkie.

### 2. The Court Should Dismiss The Official Capacity Claims Against McConkie.

Any claims the Tribe may bring "against states are barred unless 'they fall within the [*Ex parte Young*] exception . . . for certain suits seeking declaratory and injunctive relief against state officers.'" (Dkt. No. 52 at 12 (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997).) This narrow exception, in short, recognizes that "a suit for prospective relief against state officials named in their official capacities based upon an ongoing violation of federal law is not considered an action against a state." (*Id.* (quoting *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010).)

There is no serious dispute that the Amended Complaint only seeks "specific performance of the sale" of the State's property (Tabby Mountain). (Dkt. No. 72 ¶ 198–90.) Nor does the Tribe disagree that federal courts must decide at the pleading stage whether a plaintiff's requested remedy satisfies the *Ex parte Young* exception. (*See* Mot. at 5 (collecting cases).) Which makes good sense: "The very object and purpose of the Eleventh Amendment

were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals."

*In re Ayers*, 123 U.S. 443, 505 (1887). This leaves the Tribe with three arguments: that alleging

a "continuing violation" alone satisfies *Ex parte Young*, that demanding Utah execute a contract

to sell land counts as "prospective," and that the Tribe alleged a continuing violation of federal

law. The Tribe is incorrect across the board.

### 2.1 A Continuing Violation, Standing Alone, Does Not Satisfy *Ex parte Young*

The Tribe seems to argue that if it alleges a "continuing violation," then a "§ 1983

litigant" may bring an official capacity claim regardless of the requested remedy. (Opp. at 4.)

But "a *Young* suit is available where a plaintiff alleges an ongoing violation of federal law, *and*

where the relief sought is prospective rather than retrospective." *Idaho v. Coeur d'Alene Tribe of*

*Idaho*, 521 U.S. 261, 293–94 (O'Connor, J., concurring) (emphasis added); *see also Hill v.*

*Kemp*, 478 F.3d 1236, 1258 (10th Cir. 2007) (Justice O'Connor's plurality controls). As a result,

even if an "allegation of an ongoing violation of federal law where the requested relief is

prospective is ordinarily sufficient to invoke the *Young* fiction," a suit cannot seek a remedy

"which implicates special sovereignty interests." *Id.* at 281 (majority opinion). !

Put differently, *Ex Parte Young* does not make every remedy available to plaintiffs who

allege a "continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68–69 (1985).[1]

If the rule were otherwise—allowing plaintiffs to seek any remedy when they allege a continuing

---

[1]     *See also Hollywood Mobile Ests. Ltd. v. Cypress*, 415 F. App'x 207, 208 (11th Cir. 2011)
(requiring "relief to end continuing violations of federal law" that does not "implicate[] special
sovereignty interests"); *Nelson v. Univ. of Texas at Dallas*, 491 F. Supp. 2d 672, 677 (N.D. Tex.
2007) ("According to the Supreme Court, extraordinary circumstances are those in which a suit
is filed (1) against a state official, (2) seeking only prospective injunctive relief (3) to end a
continuing violation of federal law.").

violation—then a plaintiff could request "any form of relief" no "matter how closely it may in practice resemble a money judgment payable out of the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 666 (1974).

The Tribe's authorities do not state a contrary rule. (Opp. at 4–5.) *Herrera v. City of Espanola* discussed whether a "continuing violation" tolled the statute of limitations for a damages claim. 32 F.4th 980, 989 (10th Cir. 2022). The word "*Younger*" does not even appear in *Herrera*. So too in *Tiberi v. Cigna Corp.*, "a diversity case involving New Mexico contract and tort law" that turned on whether a "continuing wrong" extended the statute of limitations. 89 F.3d 1423, 1425 (10th Cir. 1996).[2] Neither authority says that alleging a continuing violation, standing alone, satisfies the *Ex parte Young* exception to sovereign immunity.

### 2.2 The Tribe's Requested Relief—An Order Requiring SITLA To Sell Land To The Tribe—Would Violate Utah's Sovereign Immunity

The Tribe wants SITLA to specifically perform an alleged contract to sell Tabby Mountain. According to the Opposition, the Tribe "simply seeks to purchase the Tabby Mountain parcel" and "enter a contract for the purchase of property." (Opp. at 9.) As the Tribe tells it, the "***only*** remedy for this ongoing wrong is for the Tribe to be able to consummate the purchase of Tabby Mountain." (*Id.* (emphasis added).) To avoid any confusion, the Tribe asserts again that "the Court could simply order Defendants" to "sell Tabby Mountain and maximize income for Utah's public school students." (Opp. at 10.) Such an order would trample on the Supreme Court's repeated instructions that federal courts cannot (1) order a state

---

[2]     Likewise, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), and *Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir. 1995), only considered who were the proper parties for an official capacity claim.

to specifically perform a contract or (2) require a state to divest its property.

**First**, the Tribe does not seriously dispute that *Ex parte Young* "cannot be used to obtain" an "order for specific performance of a state's contract." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256–57 (2011). Even if such relief "may be labeled equitable in nature," sovereign immunity bars actions seeking "specific performance of a contract to which the State was a party." *Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974) (citing *In re Ayers*, 123 U.S. at 491). Put simply, a court cannot require a state to "abide by the terms of an agreement that it has decided to renounce." *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 241 (3d Cir. 2020).

The Tribe ignores that long-standing principle, along with many cases where courts have dismissed specific performance claims at the pleading stage. (*See* Mot. at 8–10 (collecting cases).) The Tribe instead retorts that some courts have granted "'affirmative' relief, "notwithstanding" the "incidental effect" that the "state will be forced to expend funds from its treasury." (Opp. at 10.) But missing from the Opposition is a *single* authority suggesting that, whether characterized as "affirmative relief" or not, a federal court may order states to execute or perform under a contract.[3] (Opp. at 9.) Because none exists: "Even if the effect on the [State's] treasury can be deemed ancillary to permissible prospective relief," a "suit falls beyond *Ex parte Young*'s bounds for the independent reason that it effectively seeks specific performance." *Waterfront Comm'n*, 961 F.3d at 241.

In the end, the Tribe freely admits that it wants the Court to order SITLA to "enter a

---

[3] At page 10 of its Opposition, the Tribe string cites some cases that supposedly say courts may provide affirmative relief. Not one of those cases even mention *Ex Parte Young*, and none suggest courts may order specific performance.

contract for the purchase of property." (Opp. at 9.)  There is no serious dispute that such an order would violate Utah's sovereign immunity.

**Second**, the Tribe does not dispute that federal courts cannot "extinguish" a "State's control over a vast reach of lands and water." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 257 (2011) (quoting *Coeur d'Alene*, 521 U.S. at 282).  Those remedies, "which disturb a sovereign title to property," lie "directly against the sovereign even when styled as a claim for injunctive relief against an individual governmental officer." *Jamul Action Comm. v. Simermeyer,* 974 F.3d 984, 995 (9th Cir. 2020).

The Tribe responds that it does not dispute that SITLA "holds title" to "Tabby Mountain" but instead seeks the "right to purchase that estate." (Opp. at 11.)  That is doubly problematic: The Tribe wants to order SITLA to perform a contract (which would violate the State's sovereign immunity) that would in turn extinguish Utah's territorial rights (which also violates the State's sovereign immunity).  But more to the point, the *Ex parte Young* inquiry does not turn on the "mechanics of captions and pleadings," *Coeur d'Alene*, 521 U.S. at 270, but on whether "the relief requested is 'properly' characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief." *Kemp*, 478 F.3d at 1259.  For that reason, sovereign immunity bars a suit that would "extinguish the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory." *Stewart*, 563 U.S. at 257.  Nor can a federal court order the State to "use its own resources" to remedy a historical wrong. *Papasan v. Allain*, 478 U.S. 265, 281 (1986).

At bottom, the Tribe does not seriously dispute that federal courts cannot order states to turn over their land to another party.  The Tribe tries to wish this problem away by asking the

Court to order the sale of "the Tabby Mountain parcel" instead of asking for quiet title. (Opp. at 11.) But the extra step—ordering specific performance of a land deal—makes the Tribe's proposed remedy worse, not better.[4]

### 2.3 The Tribe Has Not Alleged McConkie Continues To Violate Federal Law

Even if the Tribe asked for a remedy the Court could award, the Tribe failed to allege a continuing violation of federal law. The parties agree that "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan*, 478 U.S. at 277–78.

Upon careful review, the Amended Complaint identifies a single failed transaction: The Tribe submitted a bid to buy Tabby Mountain, but SITLA rejected the offer. According to the Amended Complaint, "Plaintiff was qualified to purchase Tabby Mountain and was rejected only because of racial discrimination." (Am. Compl. ¶ 152.) Elsewhere, the Tribe alleges that the "sale and transfer of Tabby Mountain to the Tribe would have been completed but for all of the Defendants' unlawful discrimination." (*Id.* ¶ 157.) In the Opposition itself, the Tribe claims that after it "won the sale as the highest bidder," the "Defendants conspired to abandon their commitment to consummate the sale." (Opp. at 6.) Missing is an allegation SITLA has some program to sell multiple parcels while ignoring federal law. The Tribe instead insists that it

---

[4] The Tribe has not disputed that its request for declaratory relief fails for the same reason. (*See* Mot. at 10–11.) At most, the Tribe (at 9) cites *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178 (10th Cir. 1998). The Tenth Circuit there held that "declaratory relief" was "as 'fully as intrusive' into the state's sovereignty as would be a retroactive money judgment against excessive property taxes." *Id.* at 1194. Indeed, "the only purpose for such a declaratory judgment would be its res judicata effect in a subsequent state-court proceeding." *Id.* at 1189.

should have won the bid for Tabby Mountain, and therefore the State should trade title for cash.

Courts across the country have held that similar "repudiated transactions" do not qualify as "continuing." For example, in *Cantu Services v. Roberie*, a "disappointed bidder" alleged that state officials violated a plaintiff's "rights regarding a contract renewal under the Randolph–Sheppard Act" by selecting a different vendor. 535 F. App'x 342, 343 (5th Cir. 2013). The Fifth Circuit refused to "extend *Ex parte Young*" to an "award process for a public contract" after the "award process" concluded. *Id.* So too in *KM Enterprises v. McDonald*, where the plaintiff complained that the defendant "improperly thwarted the award of the relevant subcontract." No. 11-cv-5098, 2012 WL 4472010, at *8–13 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). As here, the plaintiff "was seeking" a "retroactive attempt to reverse the outcome of the decision," which is "unmistakably barred by the Eleventh Amendment." *Id.* The same logic applies here.

The Tribe responds that "Defendants' conspiracy led the Tribe into limbo—neither consummating the sale nor officially taking it off the table." (Opp. at 7.) That assertion, of course, contradicts the Tribe's allegation that it is "qualified to purchase Tabby Mountain and was rejected only because of racial discrimination." (Am. Compl. ¶ 152.) But even then, the Tribe's "limbo" argument proves too much. According to the Tribe's theory, any decision can be classified as "continuing" so long as a state might change its mind later. But if the chance that a state might "reopen" its decisionmaking process renders every action "continuing," such "a broad reading of the *Ex parte Young* exception would swallow the rule." *Kleidman v. Buchanan*, No. 23-cv-1251, 2025 WL 755945, at *8 (S.D. Cal. Mar. 10, 2025).

## CONCLUSION

For all these reasons, the Tribe's causes of action against SITLA and McConkie should be dismissed.

DATED this 19th day of June 2025.

PARR BROWN GEE & LOVELESS, P.C.

By: */s/ Kade N. Olsen*
　　Kade N. Olsen
　　*Attorneys for Defendants Utah School and Institutional Trust Lands Administration and Michelle McConkie*

UTAH ATTORNEY GENERAL

By: */s/ Vanessa R. Walsh*
　　Vanessa R. Walsh
　　*Attorneys for Defendants Utah School and Institutional Trust Lands Administration and Michelle McConkie*