THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>DAVID URE, MICHELLE MCCONKIE, MICHAEL STYLER, SPENCER COX, JOEL FERRY, UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION, and UTAH DEPARTMENT OF NATURAL RESOURCES,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [ECF NOS. 77, 78, 79] DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 2:23-cv-00295-DBB-JCB<br><br>District Judge David Barlow |

Before the court are the motions to dismiss filed by defendants David Ure ("Mr. Ure"),[1] Michelle McConkie ("Ms. McConkie"), the Utah School and Institutional Trust Lands Administration ("SITLA"),[2] Governor Spencer Cox ("Gov. Cox"), Michael Styler ("Mr. Styler"), Joel Ferry ("Mr. Ferry"), and the Utah Department of Natural Resources ("DNR")[3] (collectively "Defendants"). Plaintiff Ute Indian Tribe of the Uintah and Ouray Indian Reservation (the

---

[1] Motion to Dismiss First Amended Complaint and Memorandum in Support ("Ure MTD"), ECF No. 77, filed March 24, 2025.
[2] Motion to Dismiss the First Amended Complaint and Memorandum in Support ("SITLA MTD"), ECF No. 78, filed March 24, 2025.
[3] Governor Cox, Utah Department of Natural Resources, Former DNR Director Styler, and Current DNR Director Joel Ferry's Motion to Dismiss ("DNR MTD"), ECF No. 79, filed Mar. 24, 2025.

"Tribe") opposes these motions.[4] For the reasons stated below, Defendants' motions are granted in part and denied in part.

## BACKGROUND

This dispute arises from the proposed sale of Tabby Mountain, a property located within the exterior boundaries of the Uintah and Ouray Indian Reservation.[5] SITLA owns the surface estate of Tabby Mountain, while the Tribe owns the mineral estate for "much of" the area.[6]

SITLA is an agency that manages lands that the federal government granted to Utah for the support of its public schools.[7] SITLA has a fiduciary duty to maximize its revenue while preserving its assets for future beneficiaries.[8] In December 2018, SITLA issued a public notice of its intent to sell Tabby Mountain with a minimum acceptable bid of $41,000,000.[9] At least ten entities, including the Tribe and DNR, submitted letters of interest in purchasing the property.[10]

On December 20, 2018, Margaret Bird, on behalf of two state university realty officers, sent a memo to STILA Director Ure asking questions about the sale of Tabby Mountain, including whether a longer marketing period should be used.[11] Ms. Bird expressed concerns that

---

[4] Response in Opposition to Defendants SITLA and McConkie's Motion to Dismiss ("SITLA MTD Opp."), ECF No. 84, filed May 22, 2025; Response in Opposition to Defendant David Ure's Motion to Dismiss the First Amended Complaint ("URE MTD Opp."), ECF No. 85, filed May 22, 2025; Response in Opposition to Defendants Cox, Styler, Ferry, and DNR's Motion to Dismiss the First Amended Complaint ("DNR MTD Opp."), ECF No. 85, filed May 22, 2025.
[5] First Amended Complaint ("FAC") ¶ 1, ECF No. 72, filed Jan. 17, 2025. At this stage, the court accepts the Tribe's well-pled allegations as true. *See McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130 (10th Cir. 2024).
[6] *Id.*
[7] *Id.* at ¶ 44–45.
[8] *Id.*
[9] *Id.* at ¶ 60.
[10] *Id.* at ¶ 61.
[11] *Id.* at ¶ 62–63.

Director Ure had structured the sale with the goal of selling Tabby Mountain to DNR, rather than maximizing income to SITLA.[12]

On December 28, 2018, SITLA informed the Tribe that it had received its letter of interest and that the deadline for such letters was being extended to January 31, 2019.[13] SITLA then mailed the Tribe information on the bidding process, which required that all eligible bidders mail a sealed bid, offer to purchase, and $1,000,000 earnest money deposit to SITLA by February 15, 2019.[14] The offer to purchase form stated that "sales will be finalized on SITLA's standard certificate of sale."[15]

The Tribe submitted its bid to purchase Tabby Mountain for $46,976,000 on February 15, 2019.[16] DNR submitted a bid to purchase the property for $41,000,000, which was contingent upon receiving funding from both the United States and the Utah legislature.[17] The Tribe and DNR were the only bidders for Tabby Mountain.[18]

On February 20, 2019, SITLA publicly gave DNR twenty-four hours to counter the Tribe's bid, and DNR submitted a new offer of $50,000,000.[19] On February 22, 2019, SITLA issued a statement that it had temporarily suspended the sale of Tabby Mountain.[20] The Tribe alleges that SITLA and its director at the time, Mr. Ure, conspired with DNR and its director at the time, Mr. Styler, to stop the sale of Tabby Mountain and prevent the property from going to

---

[12] *Id.* at ¶ 64.
[13] *Id.* at ¶ 66.
[14] *Id.* at ¶ 67.
[15] *Id.* at ¶ 71.
[16] *Id.* at ¶ 72.
[17] *Id.* at ¶ 73.
[18] *Id.* at ¶ 75.
[19] *Id.* at ¶ 86.
[20] *Id.* at ¶ 94.

3

the Tribe because "these Defendants did not want to sell the land to Indians."[21] The sale of Tabby Mountain remains in a suspended status.[22]

On February 26, 2019, Ute Indian Tribe Chairman Duncan sent a letter to Director Ure expressing the Tribe's concerns regarding SITLA's conduct in handling the proposed sale and demanded that SITLA "honor the Tribe's right to purchase the property."[23] The Tribe filed its complaint against SITLA, former SITLA director Mr. Ure, current SITLA director Ms. McConkie, former DNR Director Mr. Styler, and Governor Cox on May 5, 2023.[24] It alleged that all of these defendants had violated its members' rights under federal law, including 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 2000d.[25] It also alleged that all defendants had conspired to violate state and federal law and had committed fraud and conspiracy to commit fraud.[26] The Tribe then alleged that SITLA had committed breach of contract and that SITLA and its officers had committed breach of trust.[27]

Defendants moved to dismiss the Tribe's complaint, which the court granted in part and denied in part (the "Order").[28] The court dismissed the Tribe's 42 U.S.C. § 2000d claims against the individual Defendants with prejudice.[29] The court also dismissed the Tribe's federal claims against Governor Cox in his official capacity, federal claims against SITLA, conspiracy claims

---

[21] *Id.* at ¶ 2–3.
[22] *Id.* at ¶ 110.
[23] *Id.* at ¶ 105.
[24] Complaint, ECF No. 1, filed May 5, 2023.
[25] *Id.* at 19.
[26] *Id.* at 22, 24.
[27] *Id.* at 22, 25.
[28] Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("Order"), ECF No. 52, filed June 14, 2014.
[29] *Id.* at 42.

against Governor Cox, Mr. McConkie, and Mr. Styler in their individual capacities, and the Tribe's state law claims without prejudice.[30]

Defendants moved for clarification of the order on June 25, 2024.[31] The court held a hearing on the motion, at which the parties agreed on a timeline for the Tribe to file an amended complaint.[32] The Tribe filed its First Amended Complaint on January 17, 2025, adding the Department of Natural Resources and its current director, Mr. Ferry, as Defendants.[33] Defendants moved to dismiss the amended complaint on March 24, 2025.[34]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[35] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[36]

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[37] "A conclusory allegation is one in which an inference is asserted without stating underlying facts or including any factual enhancement."[38] The court "must

---

[30] *Id.*

[31] Motion for Clarification of Court's Order on Motion to Dismiss, ECF No. 53, filed June 25, 2025.

[32] Minute Order, ECF No. 64, filed Nov. 18, 2024.

[33] FAC 1.

[34] In its briefing, the Tribe occasionally expresses an intent to incorporate previous allegations or briefing. Parties are not permitted to incorporate by summary reference prior pleadings or briefing.

[35] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).

[36] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (cleaned up).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[38] *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)) (cleaned up).

disregard conclusory allegations and instead look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim."[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction.[41] "Rule 12(b)(1) challenges may take two different forms. 'The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests.'"[42] "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true."[43]

## DISCUSSION

The Tribe brings five claims against the Defendants based on alleged violations of federal law. It also asserts three state law causes of action. The court first addresses the federal claims, then moves to the Tribe's claims based on Utah law.

## I.    Federal Claims

The Tribe brings its federal claims against the individuals and institutions it alleges were involved with the proposed sale of Tabby Mountain. The court first evaluates the arguments made by the institutional defendants, then considers the individual defendants' arguments.

---

[39] *Id.* (internal quotation marks omitted).
[40] *Iqbal*, 556 U.S. at 678.
[41] Fed. R. Civ. P. 12 (b)(1).
[42] *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004)).
[43] *Id.* (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

## A.    Institutional Defendants

The Tribe brings claims against two institutional defendants—SITLA and DNR. Both of these defendants argue that they are arms of the state and therefore have sovereign immunity under the Eleventh Amendment.[44] This amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[45] It is "a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."[46] "State entities, agencies, and officials are likewise provided immunity as 'an arm of the state.'"[47] However, Eleventh Amendment immunity does not extend "to counties, municipalities, or other local government entities."[48]

To determine whether an entity constitutes an arm of the state, courts must analyze the four factors set out by the Tenth Circuit in *Steadfast Insurance Co. v. Agricultural Insurance Co.*: "(1) state law characterization of the entity, (2) the entity's autonomy from the state, (3) the entity's finances and financial independence from the state, and (4) whether the entity addresses matters of local or state-wide concern."[49] "[T]he burden falls on the entity asserting it is an arm of the state" to demonstrate that it qualifies for this immunity.[50]

---

[44] SITLA MTD 6; DNR MTD 25.
[45] U.S. Const. amend. XI.
[46] *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) (citing *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252–53 (10th Cir. 2007)).
[47] *Reyes v. First Jud. Dist. Attorney's Off.*, 497 F. Supp. 3d 994, 999 (D.N.M. 2020) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).
[48] *Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 527 (10th Cir. 2022) (citing *Steadfast*, 507 F.3d at 1253) (also citing *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000)).
[49] *Id.* at 526 (citing *Steadfast*, 507 F.3d at 1253).
[50] *Id.* at 529–530 (citing *Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)) (also citing *Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 61 (1st Cir. 2003)).

DNR argues that it is an arm of the state, as it is an agency of Utah that was established by Utah statutes.[51] The department was created by Utah Code § 79-2-201(1), which states that the department comprises several state-wide divisions, such as the Board of Water Resources and Board of Oil, Gas, and Mining.[52] Its executive director is appointed by the Governor and confirmed by the Utah Senate and may be removed at will by the governor.[53] DNR argues that it "has no autonomy, is concerned with statewide affairs, and receives a budget from the State."[54]

The Tribe does not dispute that DNR is an arm of the state, but alleges that DNR "is one of the state's largest agencies, with eight divisions and two offices tasked with the duty to manage and protect the state's natural resources."[55] The Tribe also alleges that DNR required financing from the State to purchase Tabby Mountain and that state legislators were unwilling to provide this funding, so its bid failed.[56]

The *Steadfast* factors favor DNR's undisputed position that it is an arm of the state. First, DNR was created by state law and comprises several divisions, boards, and other offices that deal with Utah's natural resources.[57] Second, it is not autonomous from the state. DNR is governed by an executive director that is appointed by the governor who may be removed at will and must report to the governor on the department's activities.[58] Third, DNR is not financially independent from the state. It is required to submit a budget to the Utah Legislature, which funds

---

[51] DNR MTD 12.
[52] Utah Code Ann. § 79-2-201.
[53] Utah Code Ann. § 79-2-202.
[54] DNR MTD 27 (citing Utah Code Ann. § 79-2-202; S.B. 5, Utah Leg., 2025 Gen. Sess., available at https://le.utah.gov/~2025/static/SB0005.html).
[55] DNR MTD Opp. 11; FAC ¶ 12.
[56] FAC ¶ 79.
[57] Utah Code Ann. § 79-2-201 (2).
[58] Utah Code Ann. § 79-2-202.

its operations.[59] Although DNR may charge fees for its services, these fees cannot be charged without approval of the Legislature.[60] Fourth, DNR addresses state-wide concerns, as it coordinates the activities of state-wide programs and manages Utah's natural resources.[61]

Each of the *Steadfast* factors favors a finding that DNR is an arm of the state. Therefore, it is entitled to claim immunity from suit in federal court under the Eleventh Amendment, and the court lacks jurisdiction over the claims the Tribe brings against it.

The Tribe's claims against SITLA fail for the same reason. In the previous Order, the court found that SITLA is an arm of the state under the *Steadfast* factors and dismissed the Tribe's federal claims against the trust.[62] The Tribe has not added allegations to its complaint that might change the court's analysis[63] and does not address SITLA's argument that it is an arm of the state.[64] The Tribe offers no new facts or legal basis to alter the court's previous finding that SITLA is an arm of the state and that the federal claims brought against it should be dismissed. Therefore, based on the allegations in the amended complaint, the court does not have jurisdiction over the Tribe's claims against DNR and SITLA, and the claims brought against these institutional defendants are dismissed.

---

[59] Utah Code Ann. § 79-2-301.
[60] Utah Code Ann. § 79-2-302.
[61] Utah Code Ann. § 79-2-201 (2).
[62] Order 22; 42.
[63] *Compare* Complaint ¶ 10 ("SITLA is an independent administrative agency charged with managing school and institutional trust lands for the purpose of maximizing revenue for funding Utah's public schools."); FAC ¶ 9 ("SITLA is an independent administrative agency charged with managing school and institutional trust lands for the purpose of maximizing revenue for funding Utah's public schools.").
[64] SITLA MTD 6; SITLA MTD Opp. (stating that "the Tribe preserves all of its arguments as to why SITLA is a proper Defendant in this lawsuit").

### B.    Individual Defendants

The Tribe also brings federal claims against each of the individual defendants—Mr. Ure, Ms. McConkie, Mr. Styler, Mr. Ferry, and Governor Cox.[65] It brings claims against Mr. Ure and Mr. Styler in both their official and individual capacities, while its claims against the other individuals are only in their official capacities.

Like with the claims against the state entities, claims brought against the individual defendants must comply with the Eleventh Amendment, which bars any "suit for damages 'against a state official in his or her official capacity [because it] is not a suit against the official but rather is a suit against the official's office.'"[66] However, under *Ex parte Young*, plaintiffs "may seek injunctive relief against a state officer, acting in his official capacity."[67] "[A] suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment because, under such circumstances, the officials are stripped of their representative character."[68] This exception is "narrow" and "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies."[69]

Individual-capacity defendants, on the other hand, may be sued only for money damages, as they come to court as individuals.[70] "The Eleventh Amendment does not bar such a suit

---

[65] FAC ¶ 10–15.

[66] *K. A. v. Barnes*, 134 F.4th 1067, 1074 (10th Cir. 2025) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

[67] *Drown v. Utah State Off. of Educ.*, 767 F. App'x 679, 685 (10th Cir. 2019) (unpublished) (citing *Ex parte Young*, 209 U.S. 123, 159 (1908)).

[68] *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1234 (10th Cir. 2010).

[69] *Id.* (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

[70] *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)).

because state officers may be personally liable for their unconstitutional acts."[71] However, individual-capacity defendants cannot be sued for injunctive relief.[72]

In the amended complaint the Tribe requests a declaration that SITLA's decision to not sell it Tabby Mountain was unjust, an order that SITLA sell the property to the Tribe, actual and punitive damages in an amount to be determined at trial, an award of costs and fees, and "other and further relief."[73] Therefore, the court evaluates the claims brought against the official-capacity defendants based on the Tribe's requested injunctive relief—that the court order SITLA to sell Tabby Mountain to the Tribe—and the claims against the individual-capacity defendants based on the Tribe's request for damages.

However, the court cannot grant the Tribe's request for declaratory relief,[74] as "*Ex parte Young* does not cover declarations that a state official's past conduct violated a plaintiff's rights."[75] The Tribe seeks a declaration that it would have purchased Tabby Mountain "but for all of the Defendants' unlawful discrimination and unlawful conspiracy."[76] Its requested relief is clearly a declaration that Defendants' past conduct violated the Tribe's rights and is the kind of retroactive declaration the court cannot issue.[77] Therefore, the Tribe's request for declaratory relief is denied.

---

[71] *Duncan v. Gunter*, 15 F.3d 989, 991–92 (10th Cir. 1994) (citing *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir.1991)).

[72] *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)).

[73] FAC 32–33.

[74] The Amended Complaint adds "Declaratory and Injunctive Relief" as a cause of action. *See* FAC 32. However, declaratory or injunctive relief are remedies, not separate causes of action. *See Hoverman v. CitiMortgage, Inc.*, No. 2:11-CV-00118-DAK, 2011 WL 3421406, at *10 (D. Utah Aug. 4, 2011) (citations omitted).

[75] *Est. of Schultz v. Brown*, 846 F. App'x 689, 692 (10th Cir. 2021) (unpublished) (citing *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

[76] FAC ¶ 198.

[77] The Tribe cites *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178 (10th Cir. 1998) to argue that it may seek a prospective declaratory injunction. *See* SITLA MTD Opp. 9. However, *ANR Pipeline* states that "federal courts may not invoke *Ex parte Young* in order to consider claims for retrospective relief or claims that seek an adjudication of

1.    **Official Capacity**

    i.    **Governor Cox**

The Amended Complaint brings claims against Governor Cox in his official capacity.[78] Like with the original complaint, the Amended Complaint describes Governor Cox individually just once, stating that he is "responsible for implementing state laws and overseeing the operation of the state's executive branch."[79] Governor Cox argues that the Amended Complaint contains no new allegations that connect him with the Tabby Mountain dispute, so the claims brought against him should be dismissed.[80] The Tribe does not offer any new arguments to support its claims against Governor Cox, but refers to its previous briefing "for purposes of any necessary appeal."[81]

"When a defendant asserts complex claims against multiple defendants, it is 'particularly important' to 'make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations.'"[82] In § 1983 cases it is "particularly important. . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."[83]

---

the legality of past state conduct." *ANR Pipeline*, 150 F.3d at 1191. The Tribe requests declaratory relief that the Defendants violated the law, which is clearly a retroactive declaration.

[78] FAC ¶ 15.

[79] FAC ¶ 15; Order 33.

[80] DNR MTD 19–20.

[81] DNR MTD Opp. 2.

[82] *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

[83] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 592 (2007)).

The single reference to Governor Cox in the Amended Complaint does not adequately allege that Governor Cox had any involvement with the alleged effort to stop the Tribe from purchasing Tabby Mountain, that he purposefully discriminated against the Tribe, or that he had any involvement with the actions that form the basis for the Tribe's claims beyond being Governor of Utah at the time. The Tribe has offered no new allegations about Governor Cox or argument as to why the claims against him should not again be dismissed. Accordingly, the claims brought against Governor Cox in his official capacity are dismissed.

### ii.    Mr. Ure and Mr. Styler

Next, Mr. Ure and Mr. Styler argue that the claims brought against them in their official capacities should be dismissed because they are no longer state officials and cannot provide the injunctive relief the Tribe requests.[84] The Tribe alleges that Mr. Ure is the former director of SITLA, having left the position in March 2022.[85] It also alleges that Mr. Styler was the director of DNR from January 2005 to June 2019.[86]

"[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office.'"[87] The official-capacity "exception applies only if the official has 'a particular duty to enforce the statute in question and a demonstrated willingness to

---

[84] Ure MTD 14; DNR MTD 23.
[85] FAC ¶ 10.
[86] FAC ¶ 13.
[87] *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

exercise that duty.'"[88] "A plaintiff's official capacity suit against a public official can't proceed against a former officeholder as defendant."[89]

The Tribe cannot maintain its official-capacity claims against Mr. Ure and Mr. Styler because they no longer are officials. Even if the Tribe were ultimately successful in its claims, injunctive relief against them would not remedy the injury. Accordingly, the official-capacity claims against Mr. Ure and Mr. Styler are dismissed.

### iii.    Mr. Ferry

Mr. Ferry, the current director of DNR,[90] raises another redressability issue, arguing that the Tribe does not have standing to seek injunctive relief against him in his official capacity. He argues that as the director of DNR, he is unable to provide any of the injunctive relief the Tribe requests, as DNR does not own Tabby Mountain and cannot be ordered to sell a property it does not own.[91] The Tribe responds that Mr. Ferry is a proper defendant because he is "the successor to Defendant Styler."[92]

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

---

[88] *Williams v. Gordon*, No. 24-8067, 2025 WL 1637732, at *2 (10th Cir. June 10, 2025) (quoting *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024)).
[89] *Swearingen v. Pleasanton Unified Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1162 (D. Kan. 2022) (citing *Wakat v. Montgomery Cnty.*, 471 F. Supp. 2d 759, 767 (S.D. Tex.), *aff'd sub nom.*, *Wakat v. Montgomery Cnty. Tex.*, 246 F. App'x 265 (5th Cir. 2007)).
[90] FAC ¶ 14.
[91] DNR MTD 21.
[92] DNR MTD Opp. 12. The Tribe also argues that DNR and Mr. Ferry are taking efforts to purchase Tabby Mountain from SITLA. *See* DNR MTD Opp. 13. The Tribe does not make this allegation in its complaint, and the Tribe may not amend its complaint by adding allegations in response to a motion to dismiss. *See Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003) ("plaintiff may not rely on the allegations in his reply brief to supplement his complaint); *Seymore v. Tulsa Tech. Ctr., Sch. Dist.*, No. 22-CV-0549-CVE-SH, 2025 WL 875363, at *2 (N.D. Okla. Mar. 20, 2025) ("The law is clear that a plaintiff may not amend her complaint simply by including new allegations in response to a motion to dismiss.") (citations omitted).

defendant; and (iii) that the injury would likely be redressed by judicial relief."[93] "[T]he requirement of redressability ensures that the injury can likely be ameliorated by a favorable decision."[94] "Plaintiffs have the burden to demonstrate standing for each form of relief sought."[95]

The Tribe seeks an injunction ordering SITLA, which allegedly owns the surface rights for Tabby Mountain, to sell it the property.[96] Mr. Ferry, as the director of a separate entity that does not own Tabby Mountain, cannot provide the relief the Tribe is seeking in this case.[97] The Tribe does not explain how Mr. Ferry, as DNR's director, would be able to redress its injuries if it is ultimately successful in its claims. Accordingly, the Tribe has not demonstrated it has standing to sue Mr. Ferry in his official capacity.

The Tribe argues that Mr. Ferry, in his official capacity, is a proper defendant because DNR has unconstitutionally conspired with SITLA to prevent the sale of Tabby Mountain.[98] It contends that the court may grant affirmative relief to prevent the Tribe's rights from being violated and argues that the court should order Mr. Ferry, in his official capacity, to stop

---

[93] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

[94] *S. Utah Wilderness All. v. Off. of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010) (citing *Lujan*, 504 U.S. at 560).

[95] *Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006)).

[96] FAC ¶ 199.

[97] *See Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012) (redressability "turns on the scope of authority of the defendants" and depends on whether a defendant, if enjoined as plaintiff requests, can provide the requested relief); *Mulder v. Lundberg*, 154 F. App'x 52, 54 (10th Cir. 2005) (unpublished) (holding that plaintiffs lacked standing to enjoin defendants from taking action regarding parcels of land they do not own); *Hargreaves (Doanld A.) v. United States*, No. 87-4224-R, 1989 WL 118851, at *3 (D. Kan. Sept. 21, 1989) ("The court cannot issue a mandatory injunction requiring defendant to sell or lease land which it does not own.").

[98] DNR MTD Opp. 13.

conspiring to violate its rights.[99] This is not proper injunctive relief.[100] Accordingly, the claims brought against Mr. Ferry in his official capacity are dismissed.

### iv.    Ms. McConkie

Ms. McConkie is the current director of SITLA and is sued in her official capacity.[101] She argues that the Tribe's request for injunctive relief is retrospective and violates Utah's sovereign immunity.[102] Ms. McConkie contends that the *Ex parte Young* exception cannot be used to obtain retroactive relief, such as specific performance of a state's contract, so the Tribe's claims against her violate the state's sovereign immunity.[103] The Tribe responds that it is seeking prospective injunctive relief, as Ms. McConkie's failure to sell Tabby Mountain to the Tribe is an ongoing violation of its constitutional rights.[104]

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[105] "*Ex parte Young* cannot be used to obtain an injunction requiring the payment

---

[99] DNR MTD. Opp. 13.
[100] *N.L.R.B. v. U.S. Postal Serv.*, 486 F.3d 683, 691 (10th Cir. 2007) (Tymkovich, J., concurring) ("Injunctions that broadly order the enjoined party simply to obey the law and not violate [a] statute are generally impermissible.") (citations omitted); *Haney v. United of Omaha Life Ins. Co.*, No. 21-CV-02566-RMR-KLM, 2022 WL 2158985, at *7 (D. Colo. June 15, 2022), *report and recommendation adopted*, No. 21-CV-2566-RMR-KLM, 2022 WL 3099201 (D. Colo. July 1, 2022) (citations omitted) (plaintiff's request "ultimately amounts to a vague request that Defendant 'follow the law,' which is too broad and indeterminate" to be enjoined).
[101] FAC ¶ 11.
[102] SITLA MTD 7.
[103] *Id.* at 6–11.
[104] SITLA MTD Opp. 8.
[105] *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

16

of funds from the State's treasury, or an order for specific performance of a State's contract."[106] And "*Ex parte Young* does not cover declarations that a state official's past conduct violated a plaintiff's rights."[107] "The 'overriding question' is not whether the relief will require the payment of state funds, but whether the relief will 'remedy future rather than past wrongs.'"[108]

The Tribe first argues that it has pled prospective, ongoing violations of its constitutional rights under the continuing violation doctrine.[109] This doctrine, first recognized in the employment context, allows plaintiffs to pursue claims outside the relevant statute of limitations if an act that is part of a continuing course of conduct occurred within the limitations period.[110] Ms. McConkie has not advanced a statute of limitations defense, but argues that the relief the Tribe is seeking is retrospective.[111] Whether or not the Tribe may equitably toll the statute of limitations under the continuing violation doctrine has no bearing on whether the relief it seeks is forward-looking or remedial.[112]

Next, the Tribe argues that it is seeking prospective relief because Ms. McConkie is preventing the Tribe from purchasing Tabby Mountain for discriminatory reasons and that the

---

[106] *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256–57 (2011) (citing *Edelman v. Jordan*, 415 U.S. 651, 666–667 (1974); *In re Ayers*, 123 U.S. 443 (1887)).

[107] *Est. of Schultz v. Brown*, 846 F. App'x 689, 692 (10th Cir. 2021) (unpublished) (citing *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

[108] *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 611 (10th Cir. 1998) (quoting *Coeur d'Alene Tribe of Idaho v. State of Idaho*, 42 F.3d 1244, 1252 (9th Cir. 1994), *rev'd in part sub nom. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)).

[109] SITLA MTD Opp. 4.

[110] *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)).

[111] Reply in Support of the Motion to Dismiss the First Amended Complaint ("SITLA Reply") 3, ECF No. 89, filed June 19, 2025.

[112] In its briefing, the Tribe relies on the Tenth Circuit's decision in *Tiberi v. Cigna Corp.*, 89 F.3d 1423 (10th Cir. 1996), to argue that it is suffering from a continuing violation. In *Tiberi*, the court discussed how the continuing wrong doctrine affects a statute of limitations defense. *Id.* at 1430–31. It does not stand for the proposition that a state entity offering land for sale, and then canceling that sale, establishes the kind of ongoing harm required for a prospective injunction.

"only remedy for this ongoing wrong is for the Tribe to be able to consummate the purchase of Tabby Mountain."[113] Ms. McConkie contends that this relief would be an impermissible retrospective injunction.[114]

As noted earlier, the *Ex parte Young* exception "does not apply to retrospective relief aimed at remedying past wrongs."[115] When a complaint "is merely seeking to address alleged past harms rather than prevent prospective violations of federal law, we can only reasonably categorize such relief as retrospective."[116] "To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."[117]

Here, the relief the Tribe seeks is retrospective. It alleges that it was harmed in 2019 when SITLA did not accept its bid to buy Tabby Mountain, and that this failure continues to harm it because its members cannot use and enjoy the property.[118] This alleged past wrong may continue to harm the Tribe, but it is not seeking to prevent any future violation of federal law.[119]

---

[113] SITLA MTD Opp. 9.

[114] SITLA Reply 8.

[115] *Est. of Schultz v. Brown*, 846 F. App'x 689, 692 (10th Cir. 2021) (unpublished) (citing *Hill v. Kemp*, 478 F.3d 1236, 1254–55 (10th Cir. 2007)).

[116] *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012).

[117] *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 107 n.8 (1983)).

[118] FAC ¶ 146.

[119] *See Hakeem v. Kansas Dep't of Hum. Servs., Child Support Enf't Div.*, No. 22-3144, 2022 WL 16642268, at *5 (10th Cir. Nov. 3, 2022) (unpublished) (plaintiff sought impermissible retroactive relief where he sought "return of funds that were previously taken from him."); *Drown v. Utah State Off. of Educ.*, 767 F. App'x 679, 685 (10th Cir. 2019) (unpublished) (request to remove letter that resulted from discrimination from employee file did not allow for application of the *Ex parte Young* exception); *Fuller v. Davis*, 594 F. App'x 935, 940 (10th Cir. 2014) (unpublished) (plaintiffs complaint that they "were tricked long ago into agreeing to an unenforceable no-contact order" sought to address alleged past harms and was properly characterized as retrospective); *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1233 (10th Cir. 2010) (causes of action seeking return of seized property or, in the alternative, their monetary value, "undoubtedly bring into issue the past liability of [the state officials], and thus seek retrospective relief."); *Opala v. Watt*, 454 F.3d 1154, 1160 (10th Cir. 2006) (court could not order that plaintiff should be reinstated in previous position, as this was "precisely the type of retroactive equitable relief prohibited under the *Ex parte Young* doctrine.").

Any alleged violation of federal law was complete when SITLA did not sell the property to the Tribe in 2019; therefore, the injury to the Tribe is not ongoing.[120] The injunction the Tribe seeks in this case would address its alleged past harms, not prevent a possible future injury. Accordingly, the Tribe is seeking impermissible retroactive relief against Ms. McConkie, and the Eleventh Amendment bars its claims against her. The Tribe's claims against Ms. McConkie in her official capacity do not fit within the *Ex parte Young* exception and must be dismissed.

### 2.    Individual Capacity

The Tribe also brings its §§ 1981, 1982, 1983, and 1985 claims against Mr. Ure and Mr. Styler in their individual capacities. Both defendants argue that they are entitled to qualified immunity for any claims brought against them in their individual capacity.[121]

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a

---

[120] The cases the Tribe relies on to support the proposition that it is seeking prospective relief are distinguishable, as the plaintiffs in those cases sought prospective compliance with federal law and did not seek an injunction to remedy a past injury. *See* SITLA MTD Opp. 8 (citing *Lewis v. New Mexico Dep't of Health*, 94 F. Supp. 2d 1217, 1231 (D.N.M. 2000), *aff'd*, 261 F.3d 970 (10th Cir. 2001) (plaintiffs sought to remedy future wrongs by "enjoining state officials from impermissibly delaying the provision of waiver services."); *Columbian Fin. Corp. v. Stork*, 702 F. App'x 717, 721 (10th Cir. 2017) (unpublished) (holding that an injunction ordering a hearing qualifies as prospective relief)); SITLA MTD Opp. 9 (citing *Hutto v. Finney*, 437 U.S. 678, 690 (1978) (courts may enforce injunctions when exercising their prospective powers under *Ex parte Young*); *Harris v. Owens*, 264 F.3d 1282, 1286 (10th Cir. 2001) (plaintiff sought prospective relief when seeking portion of comprehensive tobacco settlement from the state, as the appropriation had yet to take place); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178 (10th Cir. 1998) (holding that *Ex parte Young* exception did not apply to claims that state defendants wrongfully valued property or needed to recertify past tax assessments); *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 912–13 (10th Cir. 2008) (declaration that laws were unconstitutional and injunction prohibiting their enforcement was clearly prospective)).
[121] Ure MTD 15; DNR MTD 24.

reasonable person would have known.'"[122] "The doctrine of qualified immunity 'affords protection to all but the plainly incompetent or those who knowingly violate the law.'"[123]

When a government official "defendant asserts qualified immunity, this affirmative defense creates a presumption that [the defendant is] immune from suit.'"[124] To overcome this presumption of immunity, "the plaintiff bears the burden to establish that (1) the defendant violated his or her constitutional or statutory rights, and (2) 'that the right was clearly established at the time of the defendant's conduct.'"[125] "Courts have discretion to decide the order in which to engage these two prongs."[126]

The Tribe first argues that Mr. Ure and Mr. Styler cannot assert qualified immunity because it is seeking injunctive relief rather than damages.[127] "This argument misunderstands applicable law. Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief."[128] Mr. Ure and Mr. Styler may raise a qualified immunity defense to the claims brought against them in their individual capacities.

The Tribe next argues that Mr. Ure and Mr. Styler's actions violated clearly established law.[129] Mr. Ure and Mr. Styler respond that the Tribe has failed to overcome the presumption of

---

[122] *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[123] *Bird v. Regents of New Mexico State Univ.*, 619 F. App'x 733, 743 (10th Cir. 2015) (unpublished) (quoting *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1183 (10th Cir. 2009)).
[124] *Andersen v. DelCore*, 79 F.4th 1153, 1162 (10th Cir. 2023) (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)).
[125] *Id.* (quoting *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022)).
[126] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Pearson*, 555 U.S. at 236).
[127] Response in Opposition to Defendant David Ure's Motion to Dismiss the First Amended Complaint ("Ure MTD Opp.") 5, ECF No. 85, filed May 22, 2025; DNR MTD Opp. 4.
[128] *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) (citing *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988)).
[129] Ure MTD Opp. 8; DNR MTD Opp. 7.

qualified immunity because it has not demonstrated that the law clearly establishes that they violated the Tribe's rights.[130]

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[131] "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right."[132] "The precedent is considered on point if it involves 'materially similar conduct' or applies 'with obvious clarity' to the conduct at issue."[133]

Normally, "existing precedent must have placed the statutory or constitutional question beyond debate."[134] "However, 'if the text of a statute clearly establishes the contours of a right, the statute alone is sufficient to put an objectively reasonable official on notice that conduct within the plain text of the statute violates that right for purposes of qualified immunity.'"[135] "Thus, in the absence of case law interpreting the statute, a statutorily-created right is clearly established when the statute is subject to no other reasonable interpretation."[136]

The Tribe brings claims under §§ 1981, 1982, and 1983 as separate causes of action in its First Amended Complaint and relies on §§ 1981 and 1982 to form the basis of its § 1983 claim.[137] Sections 1981 and 1982 do not provide an implicit cause of action, but are enforceable

---

[130] Reply Memorandum in Support of Defendant David Ure's Motion to Dismiss First Amended Complaint 10, ECF No. 90, filed June 19, 2025; DNR MTD 15.
[131] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted).
[132] *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quotations omitted).
[133] *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964–65 (10th Cir. 2016)) (emphasis omitted).
[134] *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix*, 577 U.S. at 11–12).
[135] *Tri-State Contractors, Inc. v. Fagnant*, 393 F. App'x 580, 585 (10th Cir. 2010) (unpublished) (quoting *Robbins v. Wilkie*, 433 F.3d 755, 771 (10th Cir.2006), *reversed on other grounds, Wilkie v. Robbins,* 551 U.S. 537, 127 (2007)).
[136] *Id.*
[137] FAC ¶ 154 ("Section 1983 provides a remedy for the deprivation of any rights, privileges, or immunities secured by Sections 1981 and 1982 when such deprivation occurs under color of state law.").

through §1983, which is controlling in the context of damages actions brought against state actors in their individual capacities.[138] Accordingly, the Tribe's claims asserted under §§ 1981 and 1982 as separate causes of action must be dismissed, but the Tribe's § 1983 claim may be evaluated based upon the alleged violations of §§ 1981 and 1982.[139]

Section 1981 "guarantees the right of all persons to 'make and enforce' contracts."[140] "[O]n its face [§ 1981] relates primarily to racial discrimination in the making of contracts."[141] "Section 1981 has been held to 'prohibit[], when based on race, the refusal to enter in a contract with someone."[142] The right to be free from racial discrimination when making a contract is clearly established by the text of § 1981 itself, which puts officials on notice that they may not refuse to contract on the basis of race.

When Defendants assert qualified immunity at the motion to dismiss stage, they face a greater challenge than they might at summary judgment because the court must assume the truth of all well-pled fact allegations in the complaint.[143] Regarding Mr. Ure, the First Amended Complaint alleges that he refused to sell Tabby Mountain to the Tribe based on its members' race. Specifically, the First Amended Complaint alleges that when Mr. Ure learned "that the

---

[138] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989); *see also Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 883 (10th Cir. 2020) (Section 1981 claims must be brought under Section 1983).

[139] *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006) (§ 1981 does not provide a private cause of action, but claims for violation of § 1981 may be brought under § 1983).

[140] *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002) (quoting 42 U.S.C. § 1981 (a)).

[141] *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975).

[142] *Black Educ. Network, Inc. v. AT & T Broadband, LLC*, 154 F. App'x 33, 39 (10th Cir. 2005) (unpublished) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 176–77 (1989), *superseded by statute on other grounds as stated in Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)).

[143] *See Apodaca v. Raemisch*, 864 F.3d 1071, 1075 (10th Cir. 2017) (citing *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)) ("Because qualified immunity arises here on a motion to dismiss, we must credit all of the plaintiffs' well-pleaded allegations. Thus, our decision regarding qualified immunity does not hinge on any factual disputes.").

Tribe had submitted the high bid . . . [he] did not want to sell the land to Indians, and [he] immediately began working behind the scenes to try to figure out a way to stop the sale to Indians."[144] After the Tribe submitted a higher bid than DNR and concerns were expressed about how the land would be used, Mr. Ure allegedly "responded that the decision had been made not to contact the Tribe."[145] DNR then was given 24 hours to counter the Tribe's bid, which it did. But the Tribe was not given an opportunity to increase its bid "and Director Ure postponed the sale indefinitely."[146] SITLA then issued a press release indicating that it would "temporarily suspend proceedings on a proposed sale." Mr. Ure next sent a letter to the Tribe "falsely stating that the reason for the suspension was for SITLA to address . . . concerns regarding the accuracy of the appraisal and the length of time that the property was advertised."[147] But SITLA did not commission a new appraisal, advertise the property further, or take any other steps to sell the property. Years later, the then Director of the Utah Land Trust Protection and Advocacy Office "filed a formal complaint alleging that the bid sale was rigged from the beginning to prevent the Tribe from acquiring Tabby Mountain."[148] The "temporarily suspended" sale proceedings remain suspended more than six years later.

In short, the Tribe plausibly alleges that the property was not sold to it because Mr. Ure did not want to contract with the Tribe's members, denying them "the same right as is enjoyed by non-Indians to purchase and hold real property and to make and enforce contracts."[149] Based on the allegations in the First Amended Complaint, which the court must take as true, the Tribe has

---

[144] FAC ¶ 2.
[145] *Id.* at ¶ 78.
[146] *Id.* at ¶ 93.
[147] *Id.* at ¶ 94.
[148] *Id.* at ¶ 106.

overcome Mr. Ure's assertion of qualified immunity on this claim. Accordingly, Mr. Ure's motion to dismiss is denied as to the Tribe's § 1983 claim insofar as it arises from § 1981.

As to Mr. Styler, he was the former director of the DNR. He was not in a position to contract with the Tribe with regard to Tabby Mountain, and the First Amended Complaint does not allege otherwise. The Tribe does not explain how Mr. Styler "refus[ed] to enter in a contract with someone" because of their race.[150] Accordingly, it has not overcome Mr. Styler's assertion of qualified immunity regarding its § 1981 claim.

The analysis is similar for the Tribe's § 1982 claim. In *Jones v. Alfred H. Mayer*, the Supreme Court found that "[i]n plain and unambiguous terms, § 1982 grants to all citizens, without regard to race or color, 'the same right' to purchase and lease property 'as is enjoyed by white citizens.'"[151] This right is secured "against interference from any source whatever, whether governmental or private."[152] "[B]y its plain meaning section 1982 encompasses 'every racially motivated refusal to sell or rent.'"[153]

Any reasonable public official would have understood at the time, based on the plain text of the statute and decisions such as *Jones*, that § 1982 makes it unlawful to refuse to sell land on the basis of race. And as noted above, the Tribe plausibly alleges that Mr. Ure refused to sell it Tabby Mountain due to its members' race or ethnicity. Accordingly, Mr. Ure's motion to dismiss based on qualified immunity is also denied for the Tribe's § 1983 claim arising from § 1982.

---

[150] *Black Educ. Network, Inc. v. AT & T Broadband, LLC*, 154 F. App'x 33, 39 (10th Cir. 2005) (unpublished) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 176–77 (1989), *superseded by statute on other grounds as stated in Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)).
[151] 392 U.S. 409, 420 (1968) (quoting 42 U.S.C. § 1982).
[152] *Id.* at 424.
[153] *Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 822 (10th Cir. 1981) (quoting *Jones*, 392 U.S. at 421–22).

Regarding Mr. Styler, the First Amended Complaint does not allege he had the authority or made any effort to sell Tabby Mountain. Instead, he represented the agency competing with the Tribe to purchase it. As such, the Tribe has not plausibly alleged that Mr. Styler could have violated its members' rights under § 1982. Mr. Styler's motion to dismiss that claim is granted.

Like § 1983, § 1985 does not establish any rights, but provides a private right of action for conspiracies made for the purpose of denying another their civil rights.[154] "To state a claim under § 1985(3), a plaintiff must show: (1) a conspiracy, motivated by racially-discriminatory animus; (2) to deprive plaintiff of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom."[155]

Defendants in § 1985 actions are entitled to claim qualified immunity, which plaintiffs may overcome by showing that a defendant violated their clearly established rights.[156] "The question with respect to the § 1985(3) claim is whether a reasonable officer in [Defendants'] position would have known the alleged conduct was an unlawful conspiracy."[157] "If this standard is met, the defendant would be either plainly incompetent or a knowing violator of the law" and the defendant is not entitled to qualified immunity.[158]

Unlike its claims brought under § 1983, the Tribe has not met its burden to demonstrate

---

[154] 42 U.S.C. § 1985 (3) ("if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."); *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1447 (10th Cir. 1990) ("Although neither § 1983 nor § 1985(3) create any substantive rights, a § 1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another equal protection of the laws or equal privileges and immunities under the laws.").

[155] *Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004) (unpublished) (citing *Tilton*, 6 F.3d at 686).

[156] *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994).

[157] *Ziglar v. Abbasi*, 582 U.S. 120, 155 (2017).

[158] *Lowe v. Raemisch*, 864 F.3d 1205, 1212 (10th Cir. 2017).

that Mr. Ure plausibly violated its members' clearly established rights under § 1985. The Tribe does not identify §§ 1981 or 1982 as the basis for this civil rights claim in its pleading.[159]

The Tribe cites only one Tenth Circuit decision, *Tilton v. Richardson*, to support its § 1985 claim.[160] There, the Tenth Circuit found the plaintiff had failed to state a § 1985 cause of action for private interference with his right to freedom of religion.[161] The case would not put a state official on notice that they would violate § 1985 by declining to sell land, as the Tribe has alleged here. The Tribe does not reference any other decision that could have put Mr. Ure and Mr. Styler on notice that their actions would violate the Tribe's clearly established rights. As the party to seeking to overcome qualified immunity, it was the Tribe's burden to do so. Accordingly, the Tribe has failed to overcome Mr. Ure's and Mr. Styler's qualified immunity on its § 1985 claim.

## II.    State Law Claims

Finally, the Tribe has again brought its state law claims for breach of trust, fraud and conspiracy to commit fraud, and breach of contract/estoppel/equitable conversion.[162] These state law claims were dismissed without prejudice in the previous Order, as the Tribe did not file a notice of claim as required by the Governmental Immunity Act of Utah (the "GIAU") and had not shown that a contract could have been formed.[163]

---

[159] FAC ¶ 156–159. The Tribe also does not explain whether these statutory provisions could serve as a basis for a § 1985 claim. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 731 (1989)("Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981); *Brown v. Keystone Learning Services*, 804 Fed. Appx 873, 883 (10th Cir. 2020) (§1983 is the "exclusive federal remedy" for § 1981 actions against state actors).

[160] Ure MTD Opp. 11; DNR MTD Opp. 9.

[161] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

[162] FAC 26–30.

[163] Order 42.

Defendants argue that the Tribe's renewed state law claims should be dismissed for the same reasons as before.[164] The Tribe does not allege that it has filed a notice as required by the GIAU or add any allegations to its Amended Complaint that could change the court's previous analysis.[165] And the Tribe does not respond to Defendant's arguments that these claims should again be dismissed beyond stating that it purports to incorporate the arguments made in its previous briefing.[166]

Based on this record, the court has no basis to reach a different result. The Tribe has not supplemented the allegations in the Amended Complaint and does not offer any new arguments about why these claims should not be dismissed. Accordingly, the Tribe's state law claims are dismissed.

In sum, the Tribe has failed to state a claim against any of the Defendants in their official capacities. It cannot bring its claims against DNR and SITLA because they are arms of the state that have sovereign immunity. It has failed to plausibly allege that Governor Cox had any involvement with the Tabby Mountain dispute. It has not shown that it has standing to seek an injunction against Mr. Ferry or that it may seek an injunction ordering Ms. McConkie to sell it the property. Next, the Tribe has not overcome Mr. Ure and Mr. Styler's qualified immunity defense for its § 1985 claim. However, its §§ 1981 and 1982 claims brought under § 1983 may proceed against Mr. Ure. Finally, the Tribe has not plausibly alleged any of its state law claims.

---

[164] Ure MTD 27-28; SITLA MTD 5; DNR MTD 35.
[165] *See* Redline 31–32, ECF 78-1, filed Jan. 17, 2025.
[166] Ure MTD Opp. 2; SITLA MTD Opp. 2. DNR MTD Opp. 2.

**ORDER**

Defendants' motions to dismiss the Amended Complaint are GRANTED in part and DENIED in part.

- Defendant David Ure's Motion to Dismiss[167] is DENIED as to the § 1983 claim brought against him in his individual capacity. It is otherwise GRANTED.

- Defendants SITLA and Michelle McConkie's Motion to Dismiss[168] is GRANTED.

- Defendants DNR, Spencer Cox, Michael Styler, and Joel Ferry's Motion to Dismiss is GRANTED.[169]

Signed August 8, 2025.

BY THE COURT

_____
David Barlow
United States District Judge

---

[167] ECF No. 77.
[168] ECF No. 78.
[169] ECF No. 79.